FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

Attorneys for Plaintiff

[Additional Counsel Appear On Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR18 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-17 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-15 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-16 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR19 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-18 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-20 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-19 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2007-1 TRUST, THE WELLS FARGO ALTERNATIVE LOAN 2007-PA1 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2007-2 TRUST, THE WELLS FARGO MORTGAGE BACKED SECURITIES 2007-AR3 TRUST, THE WELLS | CASE NO.  CV 09 1376 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR JURY TRIAL** |

[Caption Continued On Next Page]

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1   FARGO MORTGAGE BACKED SECURITIES )
    2007-4 TRUST, THE WELLS FARGO )
2   MORTGAGE BACKED SECURITIES 2007-3 )
    TRUST, THE WELLS FARGO MORTGAGE )
3   BACKED SECURITIES 2007-5 TRUST, THE )
    WELLS FARGO MORTGAGE BACKED )
4   SECURITIES 2007-6 TRUST, THE WELLS )
    FARGO MORTGAGE BACKED SECURITIES )
5   2007-7 TRUST, THE WELLS FARGO )
    MORTGAGE BACKED SECURITIES 2007-8 )
6   TRUST, THE WELLS FARGO MORTGAGE )
    BACKED SECURITIES 2007-9 TRUST, THE )
7   WELLS FARGO MORTGAGE BACKED )
    SECURITIES 2007-10 TRUST, THE WELLS )
8   FARGO MORTGAGE BACKED SECURITIES )
    2007-11 TRUST, THE WELLS FARGO )
9   MORTGAGE BACKED SECURITIES 2007-12 )
    TRUST, WELLS FARGO ASSET SECURITIES )
10  CORPORATION, WELLS FARGO BANK, )
    N.A., DAVID MOSKOWITZ, FRANKLIN )
11  CODEL, THOMAS NEARY, DOUGLAS K. )
    JOHNSON, GOLDMAN, SACHS & CO., )
12  JPMORGAN CHASE, INC., *as successor-in-* )
    *interest to* BEAR, STEARNS & CO., INC., )
13  HSBC SECURITIES (USA), INC., DEUTSCHE )
    BANK SECURITIES, INC., )
14  UBS SECURITIES, LLC, CITIGROUP )
    GLOBAL MARKETS, INC., GREENWICH )
15  CAPITAL MARKETS, INC., BARCLAYS )
    CAPITAL, INC., BANC OF AMERICA )
16  SECURITIES, LLC, BANK OF AMERICA )
    CORPORATION *as successor-in-interest to* )
17  MERRILL LYNCH, PIERCE, FENNER & )
    SMITH, INC., MOODY'S INVESTOR )
18  SERVICES, INC., THE MCGRAW-HILL )
    COMPANIES AND FITCH RATINGS, INC., )
19
                                           )
20          Defendants.                    )
                                           )
21  ─────────────────────────────────────────

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff, General Retirement System of the City of Detroit, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Wells Fargo Asset Securities Corporation ("WFASC") and the following Wells Fargo Mortgage Backed Securities Trusts: 2006-AR18, 2006-17, 2006-15, 2006-16, 2006-AR19, 2006-18, 2006-20, 2006-19, 2007-1, 2007-2, 2007-AR3, 2007-4, 2007-3, 2007-5, 2007-6, 2007-7, 2007-8, 2007-9, 2007-10, 2007-11, 2007-12 and Wells Fargo Alternative Loan 2007-PA1 (collectively, the "Defendant Issuers" or the "WFMBS Trusts"), as well as regulatory filings and reports and advisories about WFASC and the WFMBS Trusts, press releases and other public statements issued by ratings agencies about WFASC and the WFMBS Trusts, and their own internal investigation. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after reasonable opportunity for discovery. The claims asserted herein do not sound in or arise from allegations of fraud.

## NATURE OF THE ACTION

1.     This is a class action brought by General Retirement System of the City of Detroit alleging violations of Sections 11, 12 and 15 of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ("Securities Act"), on behalf of purchasers of the WFMBS Pass-Through Certificates, Series 2006-AR18, 2006-17, 2006-15, 2006-16, 2006-AR19, 2006-18, 2006-20, 2006-19, 2007-1, 2007-PA1, 2007-2, 2007-AR3, 2007-4, 2007-3, 2007-5, 2007-6, 2007-7, 2007-8, 2007-9, 2007-10, 2007-11, 2007-12 (the "Certificates" or the "WFMBS Certificates") who purchased the Certificates, backed by pools of mortgage loans, pursuant to or traceable to the following offerings (collectively, the "Offerings"):

| Deal | Deal Date | Underwriters | Amount | Additional Information |
|------|-----------|--------------|--------|------------------------|
| The Wells Fargo Mortgage Backed Securities 2006-AR18 Trust | 10/23/2006 | UBS Securities LLC | $1,195,150,100 | supplement to prospectus of 10/23/2006 |
| The Wells Fargo Mortgage Backed Securities 2006-17 Trust | 10/24/2006 | UBS Securities LLC | $325,008,681 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2006-15 Trust | 10/26/2006 | Citigroup Global Markets Inc. | $3,233,940,146 | supplement to prospectus of 10/23/06 |

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

| | | | | |
|---|---|---|---|---|
| The Wells Fargo Mortgage Backed Securities 2006-16 Trust | 10/26/2006 | UBS Securities LLC/Barclays Capital Inc. | $1,500,335,664 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2006-AR19 Trust | 11/16/2006 | Deutsche Bank Securities, Inc. | $796,542,900 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2006-18 Trust | 11/21/2006 | Citigroup Global Markets, Inc./UBS Securities LLC | $2,487,782,970 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2006-20 Trust | 11/27/2006 | Merrill Lynch, Pierce, Fenner & Smith, Inc./Banc of America Securities LLC | $199,659,047 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2006-19 Trust | 11/22/2006 | Bear, Stearns & Co. Inc./Banc of America Securities LLC | $274,342,646 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Mortgage Backed Securities 2007-1 Trust | 1/25/2007 | Greenwich Capital Markets, Inc./Citigroup Global Markets, Inc. | $597,986,428 | supplement to prospectus of 10/23/06 |
| The Wells Fargo Alternative Loan 2007-PA1 Trust | 2/26/2007 | Merrill Lynch, Pierce, Fenner & Smith, Inc. | $715,199,739 | supplement to prospectus of 2/26/2007 |
| The Wells Fargo Mortgage Backed Securities 2007-2 Trust | 2/26/2007 | Bear, Stearns & Co. Inc./Citigroup Global Markets Inc./Lehman Brothers Inc. | $1,504,581,600 | supplement to prospectus of 2/26/2007. Subsequently amended on 3/12/2007. |
| The Wells Fargo Mortgage Backed Securities 2007-AR3 Trust | 3/19/2007 | UBS Securities LLC | $485,863,100 | supplement to prospectus of 2/26/07 |
| The Wells Fargo Mortgage Backed Securities 2007-4 Trust | 3/26/2007 | Greenwich Capital Markets, Inc./Citigroup Global Markets, Inc. | $1,791,060,422 | supplement to prospectus of 2/26/07 |
| The Wells Fargo Mortgage Backed Securities 2007-3 Trust | 3/27/2007 | Lehman Brothers Inc./Banc of America Securities LLC/UBS Securities LLC | $1,348,185,173 | supplement to prospectus of 2/26/07 |

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

| | | | | |
|---|---|---|---|---|
| The Wells Fargo Mortgage Backed Securities 2007-5 Trust | 4/25/2007 | Citigroup Global Markets Inc./Banc of America Securities LLC | $459,897,307 | supplement to prospectus of 4/25/07 |
| The Wells Fargo Mortgage Backed Securities 2007-6 Trust | 4/25/2007 | Bear, Stearns & Co. Inc. | $696,811,198 | supplement to prospectus of 4/25/07 |
| The Wells Fargo Mortgage Backed Securities 2007-7 Trust | 5/25/2007 | Bear, Stearns & Co. Inc. | $5,074,621,629 | supplement to prospectus of 5/25/07 |
| The Wells Fargo Mortgage Backed Securities 2007-8 Trust | 6/27/2007 | HSBC Securities (USA) Inc. | $2,736,274,839 | supplement to prospectus of 6/25/07. Subsequently amended on 6/28/2007. |
| The Wells Fargo Mortgage Backed Securities 2007-9 Trust | 6/25/2007 | Countrywide Securities Corporation/UBS Securities LLC | $749,586,914 | supplement to prospectus of 6/25/07 |
| The Wells Fargo Mortgage Backed Securities 2007-10 Trust | 6/28/2007 | UBS Securities LLC | $1,692,241,638 | supplement to prospectus of 6/25/07 |
| The Wells Fargo Mortgage Backed Securities 2007-11 Trust | 7/26/2007 | Goldman, Sachs & Co./Lehman Brothers Inc. | $3,935,034,689 | supplement to prospectus of 7/26/2007 |
| The Wells Fargo Mortgage Backed Securities 2007-12 Trust | 8/27/2007 | Barclays Capital Inc. | $365,570,818 | supplement to prospectus of 8/27/2007 |

2. The Certificates were issued pursuant to a Form S-3 registration statement filed with the SEC on or about September 27, 2006 (SEC File No. 333-137620). The initial registration statement was thereafter amended by the filing of a supplemental Form S-3/A on October 11, 2006 (collectively, the "Registration Statement"), and a prospectus supplement was issued in connection with each of the Offerings ("Prospectuses"), pursuant to which the WFMBS Certificates were issued. The Offerings occurred in this venue. The Certificates herein are mortgage-backed pass-through certificates ("MPTC") collateralized by mortgages originated in substantial part by Wells Fargo Bank ("WFB" or the "Originator"), which, at all relevant times, was a commercial and residential lender. The mortgages and liens on the mortgaged properties

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

constituting the Certificates' collateral were, as set forth in the Registration Statement and Prospectuses (collectively, the "Offering Documents"), to be the principal source by which Certificate purchasers were to obtain repayment of their investment plus interest. As also set forth in the Offering Documents, the Certificate collateral was purportedly originated by WFB pursuant to specific underwriting procedures and guidelines.

      3.     The underwriters of the Offerings were:

          a.     Defendant Goldman, Sachs & Co. ("GSC") for the 2007-11 Offering;

          b.     Defendant JPMorgan Chase, Inc. ("JPM"), as *successor-in-interest* to Defendant Bear, Stearns & Co., Inc., ("BSC") for the 2006-19, 2007-2, 2007-6 and 2007-7 Offerings;

          c.     Defendant HSBC Securities (USA), Inc. ("HSBCS") for the 2007-8 Offering;

          d.     Defendant Deutsche Bank Securities, Inc. ("DBS") for the 2006-AR19 Offering;

          e.     Defendant UBS Securities, LLC ("UBS") for the 2006-AR18, 2006-17, 2006-16, 2006-18, 2007-AR3, 2007-3, 2007-9 and 2007-10 Offerings;

          f.     Defendants Citigroup Global Markets, Inc. ("CITI") for the 2006-15, 2006-18, 2007-1, 2007-2, 2007-4 and 2007-5 Offerings;

          g.     Defendant Greenwich Capital Markets, Inc. ("RBS") for the 2007-1 and 2007-4 Offerings;

          h.     Defendant Barclays Capital, Inc. ("BC") for the 2006-16 and 2007-12 Offerings;

          i.     Defendant Banc of America Securities, LLC ("BAS") for the 2006-20, 2006-19, 2007-3 and 2007-5 Offerings; and

          j.     Bank of America Corporation, *as successor-in-interest to* Merrill Lynch, Pierce, Fenner & Smith, Inc., ("BofA") for the 2006-20 and 2007-PA1 Offerings.

      4.     Defendants GSC, JPM, BSC, HSBCS, DBS, UBS, CITI, RBS, BC, BAS and BofA

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1  are collectively referred to herein as the "Underwriter Defendants" or the "Underwriters."

2       5.    The Underwriters were obligated to conduct meaningful due diligence to ensure
3  that the Offering Documents contained no material misstatements or omissions, including the
4  stated manner in which the mortgages had been originated. The Underwriters received massive
5  fees for their work in connection with the Offerings. Based on, *inter alia*, the Underwriters'
6  purported due diligence, the representations in the Offering Documents relating to the
7  underwriting of the Certificate collateral, and their own investigation, rating agencies such as
8  Moody's Investors Service, Inc. ("Moody's"), Standard & Poor's ("S&P") and Fitch Ratings, Inc.
9  ("Fitch") (collectively, the "Underwriter Ratings Agencies" and are included in the term
10 "Underwriter Defendants") assigned the Certificates among the highest ratings applicable to such
11 debt issues. The ratings purportedly reflected the likelihood of receipt by holders of the
12 Certificates of timely payment of interest and principal.

13      6.    Following the issuance of the Certificates, information began to emerge revealing
14 that WFB routinely disregarded the underwriting guidelines set forth in the WFB mortgage loan
15 origination documents. The veracity of this information was subsequently confirmed by the
16 disclosure of substantially higher rates of delinquencies and foreclosures on collateral for such
17 highly-rated debt issues. These disclosures, and the poor performance of the collateral, forced the
18 Underwriter Rating Agencies to review and revise downward the ratings assigned to the
19 Certificates due to the fact that the true nature of the collateral had not been properly assessed at
20 the time of the Offerings and the ratings assigned by the Underwriter Rating Agencies did not
21 accurately reflect expected delinquencies. The Underwriter Rating Agencies downgraded the
22 Certificates in August 2008, causing a substantial decline in the value of the Certificates.

23                                     **JURISDICTION AND VENUE**

24      7.    The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15
25 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.

26      8.    This Court has jurisdiction over the subject matter of this action pursuant to Section
27 22 of the Securities Act, 15 U.S.C. § 77v.

28      9.    Venue is proper in this District pursuant to Section 22 of the Securities Act.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Defendant Wells Fargo Bank, N.A. ("WFBNA") is headquartered in this District.

**PARTIES**

10. Plaintiff acquired the Certificates pursuant to the Offering Documents, which contained material misstatements and omissions of facts necessary to make the facts stated therein not misleading. Those members of the Class who acquired the Certificates after the issuance of any annual report relied upon the untrue statements in the Offering Documents or relied on the Offering Documents and did not know of such omissions and have been damaged thereby.

11. Defendants WFMBS Trusts were the issuing entities for the corresponding WFMBS Certificates. Per their filings with the SEC, the WFMBS Trusts listed 7430 New Technology Way, Frederick, MD 21703 as their principal office location. Defendant WFMBS Trusts are common-law trusts formed under the laws of the State of New York.

12. Defendant WFASC is the Depositor for the Offerings, and the parent company of the issuers. WFASC is a direct and wholly owned subsidiary of Wells Fargo Bank, N.A. ("WFBNA"). According to its SEC filings, WFASC maintains its principal offices at 7430 New Technology Way, Frederick, Maryland 21703.

13. Defendant WFBNA is the parent and at all times the controlling entity of the Depositor, Defendant WFASC. Defendant WFBNA is also the originator of the loans which serve as the underlying assets to the Certificates described herein. According to its SEC filings, WFBNA maintains its principal offices at 420 Montgomery Street, San Francisco, California 94163.

14. Defendant David Moskowitz ("Moskowitz") was, during the relevant period, a Director, the President, Chief Executive Officer (Principal Executive Officer), and Secretary of WFASC. Moskowitz signed the September 27, 2006 WFASC Registration Statement Form S-3 and the October 11, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

15. Defendant Franklin Codel ("Codel") was, during the relevant period, the Executive Vice President, Chief Financial Officer (Principal Financial Officer) and Chief Accounting Officer of WFASC. Codel signed the September 27, 2006 WFASC Registration Statement Form S-3 and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the October 11, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

16.     Defendant Douglas K. Johnson ("Johnson") was, during the relevant period, a Director of WFASC. Johnson signed the September 27, 2006 WFASC Registration Statement Form S-3 and the October 11, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

17.     Defendant Thomas Neary ("Neary") was, at all times during the relevant period, a Director and an Executive Vice President of WFASC. Neary signed the September 27, 2006 WFASC Registration Statement Form S-3 and the October 11, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered on behalf of himself and as the authorized Attorney-In-Fact.

18.     Defendants Moskowitz, Codel, Johnson and Neary are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with WFASC, possessed the power and authority to control the contents of WFASC's filings with the SEC and market and drafted and edited the Offering Documents. The Individual Defendants all conducted business and had business residency at 7430 New Technology Way, Frederick, Maryland 21703.

19.     The Individual Defendants were officers and/or directors of WFASC at the times the Offering Documents for the Offerings became effective, and with their consent, were identified as such in the Registration Statement. In addition, they each signed one or more of the relevant Registration Statements or authorized them to be signed on their behalf.

20.     The Individual Defendants, as officers and/or directors each had a duty to promptly disseminate accurate and truthful information with respect to WFASC and the WFMBS Trusts, and to correct any previously issued statements issued by, or on behalf of WFASC and/or the WFMBS Trusts that had become materially misleading.    The Individual Defendants' misrepresentations and omissions in the Prospectuses violated these specific requirements and

1  obligations.  The Individual Defendants were signatories to the Registration Statement filed with

2  the SEC and incorporated by reference in the Prospectuses.

3      21.    Defendant GSC is an investment banking firm principally located at 85 Broad

4  Street, New York, New York 10004.

5      22.    Defendant BSC is an investment banking firm formerly located at 383 Madison

6  Avenue, New York, New York 10179.  BSC was a wholly owned subsidiary of The Bear Stearns

7  Companies, Inc. ("BSCI").  Pursuant to a Merger Agreement effective May 30, 2008, BSCI

8  merged with BSC Merger Corporation, a wholly owned subsidiary of Defendant JPM, upon which

9  BSCI became a wholly owned subsidiary of JPM.

10      23.    Defendant JPM is an investment banking holding company principally located at

11  270 Park Avenue, New York, New York 10017.  Pursuant to the merger between BSCI and the

12  wholly owned subsidiary of JPM, Defendant BSC became a wholly owned non-bank operating

13  subsidiary of JPM, BSC's successor-in-interest.

14      24.    Defendant HSBCS is an investment banking firm principally located at 452 Fifth

15  Avenue, New York, New York 10018.

16      25.    Defendant DBS is an investment banking firm principally located at 60 Wall Street,

17  New York, New York 10005.

18      26.    Defendant UBS is an investment banking firm principally located at 1285 Avenue

19  of the Americas, 19th Floor, New York, New York 10019.

20      27.    Defendant CITI maintains its principal executive offices in New York, New York.

21  CITI is a global diversified financial services holding company whose businesses provide a broad

22  range of financial services to consumers and corporate customers.

23      28.    Defendant RBS is an investment banking firm principally located at 600 Steamboat

24  Road, Greenwich Connecticut 06830.

25      29.    Defendant BC is an investment banking firm with its headquarters located at 200

26  Park Avenue, New York, New York 10166.

27      30.    Defendant BAS is an investment banking firm with its headquarters located at 100

28  North Tryon Street, 25th Floor, Charlotte, North Carolina 28255.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 8 -

31.     Defendant BofA is a Delaware corporation, a bank holding company and a financial holding company under the Gramm-Leach-Bliley Act. Its principal executive offices are located in the Bank of America Corporate Center, Charlotte, North Carolina 28255.

32.     Each of the Underwriters was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the underwriting practices employed in originating the underlying subprime mortgage loans. Each of the aforementioned defendants is one of the leading underwriters of mortgage- and asset-backed securities in the United States.

33.     Defendant Moody's Investors Services ("Moody's") is a credit rating agency with its principal offices located at 7 World Trade Center at 250 Greenwich Street, New York, New York 10007. Moody's performs financial research and analysis for commercial and governmental entities and holds a 40 percent share of the world's credit ratings market. As a condition to the issuance of the Certificates, Moody's purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates. Moody's was an "Underwriter" of the Certificates within the meaning of the Securities Act.

34.     Defendant The McGraw-Hill Companies, Inc., through its business division Standard & Poor's Ratings Services ("S&P" shall refer to The McGraw-Hill Companies and its business division Standard & Poor's Ratings Services), is a credit rating agency with its headquarters located at 55 Water Street, New York, New York 10041. S&P performs financial research and analysis for commercial and governmental entities and holds a 40 percent share of the world's credit ratings market. As a condition to the issuance of the Certificates, S&P purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates. S&P was an "Underwriter" of the Certificates within the meaning of the Securities Act.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

35.     Defendant Fitch Ratings, Inc. ("Fitch") is a credit rating agency with its principal offices located at One State Street Plaza, New York, New York 10004. Fitch performs financial research and analysis for commercial and governmental entities and holds a 10 percent share of the world's credit ratings market. As a condition to the issuance of the Certificates, Fitch purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned appropriate credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates. Fitch was an "Underwriter" of the Certificates within the meaning of the Securities Act.

36.     As set forth above, Moody's, S&P and Fitch are collectively referred to herein as the "Underwriter Rating Agencies" and are included in the term "Underwriter Defendants."

37.     The Defendants are all liable, jointly and severally, as participants in the issuance of the WFMBS Certificates, including issuing, causing, or making materially misleading statements in the Prospectus and omitting material facts necessary to make the statements contained therein not misleading.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action alleging violations of Sections 11, 12 and 15 of the Securities Act, on behalf of a class consisting of all persons who purchased or acquired the Certificates (the "Class") pursuant and/or traceable to the Offering Documents in connection with the Offerings from the effective date through the date of the filing of this action. Excluded from the Class are Defendants, their respective officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through appropriate discovery, Plaintiff reasonably believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Defendants and/or the trustee for the Certificates and

1 | may be notified of the pendency of this action by mail, the internet or publication using the form
2 | of notice similar to that customarily used in securities class actions.

3 |     40.    Plaintiff's claims are typical of the claims of the members of the Class as all
4 | members of the Class are similarly affected by Defendants' wrongful conduct in violation of the
5 | Securities Act as complained of herein.

6 |     41.    Plaintiff will fairly and adequately protect the interests of the members of the Class
7 | and has retained Kohn, Swift & Graf, P.C. and Wolf Haldenstein Adler Freeman & Herz LLP,
8 | counsel competent and experienced in class and securities litigation.

9 |     42.    Common questions of law and fact exist as to all members of the Class and
10 | predominate over any questions solely affecting individual members of the Class. Among the
11 | questions of law and fact common to the Class are:

12 |           a.    whether the Offering Documents contained materially untrue statements or
13 |                 omitted statements of material fact;
14 |           b.    whether the provisions of the Securities Act of 1933 were violated by the
15 |                 Defendants as alleged herein; and
16 |           c.    to what extent the members of the Class have sustained damages pursuant
17 |                 to the statutory measure of damages.

18 |     43.    A class action is superior to all other available methods for the fair and efficient
19 | adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
20 | damages suffered by individual Class members may be relatively small, the expense and burden of
21 | individual litigation make it impossible for members of the Class to individually redress the
22 | wrongs done to them.  There will be no difficulty in the management of this action as
23 | a class action.

24 | **SUBSTANTIVE ALLEGATIONS**

25 |     44.    The United States is experiencing a financial crisis due to trillions of dollars of debt
26 | securities "collateralized" or securitized by underlying mortgages which were recklessly
27 | underwritten and originated. The Plaintiff and Class, as purchasers of the Certificates, are the
28 | victims of such practices, having purchased the Certificates pursuant to the Offering Documents

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

that contained misstatements and omissions concerning the mortgage collateral securitizing the Certificates. The WFMBS Trusts and other entities related to the Offering, *i.e.*, the Depositor and Underwriter Defendants, had enormous financial incentive to consummate the Offerings of the Certificates as quickly as possible since they were paid, upon completion, a percentage of the total dollar amount of the Offerings sold to investors. Since the risk of the underlying collateral failing was not assumed by WFASC, the WFMBS Trusts or the Underwriters, there was also enormous incentive not to conduct full, complete and meaningful due diligence of the statements in the Offering Documents, including those relating to the underlying mortgage collateral.

**Background**

45.     Prior to the current financial malaise, consumers wishing to finance the purchase of a home obtained a fixed rate mortgage loan or a conventional adjustable rate mortgage loan through a mortgage lender that would profit by servicing the loans and collecting interest payments over the life of the mortgages. Consequently, the lender (or loan originator) maintained an interest in making sure that borrowers were able to repay their loans and that loans were adequately collateralized in the case of default.

46.     To increase available funds for borrowers, the U.S. government chartered Government Sponsored Enterprises ("GSEs"), such as the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The GSEs were empowered to buy mortgage loans (*i.e.*, the rights to repayment of the loans) from loan originators, thus developing a secondary market for mortgage loans. Once purchased, the loans were pooled together, securitized and sold to investors as "mortgage backed securities," or "MBS." The money that a lender earned from the loan sales was then used to finance new mortgages, thereby increasing the lender's revenues.

47.     Investors who purchased MBS would (typically) receive monthly payments over the lifetime of the underlying loans, in accordance with the borrowers' payments of principal and interest.   To protect MBS investors, the GSEs only purchased loans that met approved underwriting standards.   In addition, the prices of the MBS were discounted to account for an assumed rate of default or non-payment of a certain percentage of loans.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

48.     Between 1995 and 2005, the U.S. experienced a dramatic rise in home ownership. Banks and other financial entities became active in and profited from the lucrative secondary market for mortgage loans.  Unlike GSEs, investment banks were not constrained by the same strict conditions and restrictions when purchasing loans from loan originators.  As the secondary market for loans originated with less stringent underwriting standards expanded, loan originators were increasingly able to lend to borrowers with higher credit-risk profiles without absorbing the increased risk.  In exchange for the increased risk of default and/or delinquencies, the loan originators provided the loans at higher interest rates – *i.e.*, subprime loans.  This also presented an opportunity for investors in the secondary market (such as Defendants) to achieve higher rates of return due to the higher interest percentage charged to the borrowers.

49.     In recent years, as loan originators increased the amount of loans sold rather than held and serviced, they became less vigilant in guarding against the risk of defaults and delinquencies because they were able to quickly transfer the risk to purchasers in the secondary market.  Loan fees and sales revenue became the lender's primary profit mechanism, making the sheer quantity of loans issued more important than the quality of any particular loan.  To facilitate more loans, lenders began to offer more aggressive loan products such as subprime mortgages, hybrid loans and negative amortization "option ARM" loans, with little or no documentation.  In addition, it is now known that loan originators abandoned their stated underwriting and appraisal standards, and other methods of risk assessment, in order to increase loan origination quantities. The end result was a shift where loan originators allowed consumers to borrow more money than they could afford to repay.

**The Offerings**

50.     The structure of each Offering was generally identical: WFASC filed a Registration Statement with the SEC on September 27, 2006, followed by a supplemental Form S-3/A Registration Statement filed on October 11, 2006, in connection with the issuance of various series and classes of debt securities which would be governed by the Registration Statement.

51.     At some time at or subsequent to each Offering, an "Issuing Entity" Trust was then formed under the laws of the State of New York, *i.e.,* WFMBS 2007-11 Trust. A Prospectus was

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1    subsequently filed on behalf of such Trust, as the entity responsible for issuing the Certificates.

2        52.    The mortgage loans are almost universally originated by the Sponsor, in this case

3    WFBNA, who then disposes of its loans primarily by selling them to third parties. The Sponsor

4    works with the Underwriters and the rating agencies to select the pool of mortgage loans and

5    structure the securitization transaction. The Sponsor or subsidiary thereof also services the

6    mortgage loans. On the closing date of any given Offering, the Sponsor conveys the initial

7    mortgage loans and the related mortgage insurance policies to the Depositor, who in turn conveys

8    the initial mortgage loans and the related mortgage insurance policies to the Trust, by way of the

9    trustee. The Certificates are backed by the Issuer, and consist of, *inter alia*, the mortgage loans;

10   collections of principal and interest on the mortgage loans; and the amounts on deposit in the

11   collection account, including the payment account in which amounts are deposited prior to

12   payment to the certificate holders. On the payment date, the certificate holders receive payments

13   from the trustee based on the particular tranche purchased. Typically, available funds for each

14   distribution date will equal the amount received by the trustee and available in the payment

15   account on that distribution date, including interest which differs depending upon the tranche held.

16       53.    In connection with the Offerings, WFASC, the Trusts and the various Underwriter

17   Defendants prepared and disseminated the Offering Documents that contained material

18   misstatements of fact and omitted facts necessary to make the facts stated therein not misleading.

19   Those members of the Class who acquired the Certificates after the issuance of any annual report

20   relied upon the untrue statements in the Offering Documents or relied on the Offering Documents

21   and did not know of such omissions and have been damaged thereby.

22   **The Offering Documents Contained**
     **Material Misstatements and Omissions of Fact**
23

24       54.    The Offering Documents represented that all of the loans which made up the pool

25   of mortgages used to support the Certificates were subject to certain underwriting guidelines

26   which assessed the borrower's creditworthiness, including multi-level reviews of loan applications

27   and appraisals with only "case by case" exceptions to guidelines.

28

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 14 -

55.     The Registration Statement disclosed that the underlying loans were originated and/or acquired by WFB. The Registration Statement represented that all the underlying loans depended largely on factors such as creditworthiness to determine the borrower's "Mortgage Score", inputted into a computerized system in order to determine whether or not the borrower was approved for the loan as follows:

General Standards

Wells Fargo Bank's underwriting standards are applied by or on behalf of Wells Fargo Bank to evaluate the applicant's credit standing and ability to repay the loan, as well as the value and adequacy of the mortgaged property as collateral. The underwriting standards that guide the determination represent a balancing of several factors that may affect the ultimate recovery of the loan amount, including, among others, the amount of the loan, the ratio of the loan amount to the property value (i.e., the lower of the appraised value of the mortgaged property and the purchase price), the borrower's means of support and the borrower's credit history. Wells Fargo Bank's guidelines for underwriting may vary according to the nature of the borrower or the type of loan, since differing characteristics may be perceived as presenting different levels of risk. With respect to certain Mortgage Loans, the originators of such loans may have contracted with unaffiliated third parties to perform the underwriting process. Except as described below, the Mortgage Loans will be underwritten by or on behalf of Wells Fargo Bank generally in accordance with the standards and procedures described herein.

Wells Fargo Bank supplements the mortgage loan underwriting process with either its own proprietary scoring system or scoring systems developed by third parties such as Freddie Mac's Loan Prospector, Fannie Mae's Desktop Underwriter or scoring systems developed by private mortgage insurance companies. These scoring systems assist Wells Fargo Bank in the mortgage loan approval process by providing consistent, objective measures of borrower credit and certain loan attributes. Such objective measures are then used to evaluate loan applications and assign each application a "Mortgage Score."

The portion of the Mortgage Score related to borrower credit history is generally based on computer models developed by a third party. These models evaluate information available from three major credit reporting bureaus regarding historical patterns of consumer credit behavior in relation to default experience for similar types of borrower profiles. A particular borrower's credit patterns are then considered in order to derive a "FICO Score" which indicates a level of default probability over a two-year period.

WFASC Form S-3 Registration Statement, September 27, 2006, p. 33.

56.     The statements in the preceding paragraph contained misstatements and material omissions including statements made in connection with the underwriting of the collateral mortgages. As set forth below, a material portion of the underlying collateral for the Certificates originated by WFB *were not underwritten* in accordance with the stated standards set forth above,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 15 -

and in fact, were part of WFB's systematic practice of steering less creditworthy borrowers, *without the necessary loan documentation*, into mortgages based on inflated property values.

57.     In addition, although the Registration Statement represented that the credit review process varied in the levels of scrutiny depending on the borrower, the Offering Documents stressed homeowner credit-worthiness and represented that even alternative valuation methods were considered "full documentation" loans:

> The Mortgage Score is used to determine the type of underwriting process and which level of underwriter will review the loan file. For transactions which are determined to be low-risk transactions, based upon the Mortgage Score and other parameters (including the mortgage loan production source), the lowest underwriting authority is generally required. For moderate and higher risk transactions, higher level underwriters and a full review of the mortgage file are generally required. Borrowers who have a satisfactory Mortgage Score (based upon the mortgage loan production source) are generally subject to streamlined credit review (which relies on the scoring process for various elements of the underwriting assessments). Such borrowers may also be eligible for a reduced documentation program and are generally permitted a greater latitude in the application of borrower debt-to-income ratios.

> \*\*\*

> Loans underwritten using alternative verification methods are considered by Wells Fargo Bank to have been underwritten with "full documentation."

*See* WFASC Form S-3 Registration Statement, September 27, 2006, p. 33 - 34.

58.     The statements in the preceding paragraph contained misstatements and material omissions. As set forth below, a material portion of the underlying collateral for the WFMBS Certificates originated by WFB were *not* in accordance with the stated standards.

59.     Specifically, the Registration Statement disclosed WFB's expansion of the *Underwriter Discretion* policy in mid-2005. The result of WFB's expansion of this policy was a massive increase in the number of sub-prime and alt-A loans underwritten by WFB and its affiliates, furthering WFB's systematic practice of steering less creditworthy borrowers, without the necessary loan documentation, into mortgage loans based on inflated property values.

Underwriter Discretion

> During the second calendar quarter of 2005, Wells Fargo Bank initiated a program designed to encourage its mortgage loan underwriting staff to prudently, but more aggressively, utilize the underwriting discretion already granted to them under Wells Fargo Bank's underwriting guidelines and policies.  This initiative was viewed by management as necessary and desirable to make prudent loans available to customers where such loans may have been denied in the past because of

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

underwriter hesitancy to maximize the use of their ability to consider compensating factors as permitted by the underwriting guidelines.

WFASC Form S-3 Registration Statement, September 27, 2006, p. 36-37.

60.  The statements in the preceding paragraph contained misstatements and material omissions, including that both credit risk and quality control were materially disregarded, whether manually or via modifying the criteria of the automated system, in favor of generating sufficient loan volume to complete the massive Certificate securitizations, as alleged herein and as set forth below.  In fact, the Originator was not making prudent loans, and completely disregarded Wells Fargo Bank's underwriting guidelines and policies.

61.  The statements in the preceding paragraphs were incorporated into each of the supplemental Offering Documents.

**The Prospectus Stated That The Price of The Bonds Were Tied To Credit Ratings**

62.  The Certificates were rated by the Underwriter Rating Agencies, which purported to take into account, *inter alia*, the underwriting standards used in originating the underlying mortgages to address the likelihood of the receipt of all distributions on the mortgage loans by the Certificateholders:

> It is a condition to the issuance of the Offered Certificates that each such class will have received at least the rating set forth in the table on page S-5 from Fitch Ratings ("Fitch") and Moody's Investors Service Inc. ("Moody's," and together with Fitch, the "Rating Agencies"). A security rating is not a recommendation to buy, sell or hold securities and may be subject to revision or withdrawal at any time by the assigning rating agency. Each security rating should be evaluated independently of any other security rating.
>
> The ratings of Fitch on mortgage pass-through certificates address the likelihood of the receipt by certificateholders of all distributions to which such certificateholders are entitled. Fitch's rating opinions address the structural and legal aspects associated with the certificates, including the nature of the underlying mortgage loans. Fitch's ratings on mortgage pass-through certificates do not represent any assessment of the likelihood or rate of principal prepayments and consequently any adverse effect the timing of such prepayments could have on an investor's anticipated yield.
>
> The ratings of Moody's on mortgage pass-through certificates address the likelihood of the receipt by certificateholders of all distributions of principal and interest to which such certificateholders are entitled. Moody's rating opinions address the structural, legal and issuer aspects associated with the certificates, including the nature of the underlying mortgage loans and the credit quality of the credit support provider, if any. Moody's ratings on mortgage pass-through certificates do not represent any assessment of the likelihood that principal prepayments may differ from those originally anticipated and consequently any

adverse effect the timing of such prepayments could have on an investor's anticipated yield.

The ratings of Fitch and Moody's on a Class of Principal Only Certificates only address the return of the Principal Balance of such Class.

The Depositor has not requested a rating on the Offered Certificates of any Class by any rating agency other than Fitch and Moody's, although data with respect to the Mortgage Loans may have been provided to other rating agencies solely for their informational purposes. There can be no assurance that any rating assigned by any other rating agency to the Offered Certificates will be as high as those assigned by Fitch and Moody's. In addition, the Rating Agencies will monitor the initial ratings of the Offered Certificates for so long as they remain outstanding.

WFMBS 2006-19 Trust Prospectus Supplement, Nov. 22, 2006, p. S-51. *See also* WFMBS 2007-5 Trust Prospectus Supplement, April 25, 2007, pps. S-64-65 (concerning S&P).

63.     Each Trust Prospectus set forth the initial ratings of the Certificates. *E.g.,* 2006-19 Trust Prospectus Supplement, Nov. 22, 2006, p. S-5.

64.     The statements contained the preceding paragraphs, and the initial ratings themselves, constituted material misstatements of fact and omitted facts necessary to make the statements not misleading since the Rating Agencies issued the ratings based on an outdated credit rating methodology designed in or about 2002 and because the Rating Agencies presumed that the loans were of high credit quality issued in compliance with the stated underwriting guidelines when, in fact, WFB had systematically disregarded its stated Underwriting Guidelines, as set forth herein.

**Disclosures Relating To WFB's Lending Practices**

65.     WFB is a wholly owned subsidiary of Wells Fargo & Company ("WFC"). WFB is one of the top U.S. lenders and it offers home loans throughout the country through itself and its affiliate underwriters. WFB operated as one of the nation's largest and most successful mortgage finance companies until its massive exposure to subprime and alt-A mortgage loans placed the company in the midst of the growing crisis in United States mortgage lending in 2007 and 2008.

66.     As the domestic real estate market softened and interest rates increased, rather than join the frenzy of subprime and alt-A loan underwriting in the early part of this decade, WFB did not expose itself in that risky lending market, and instead chose to undertake a more financially stable less risky mortgage portfolio. But, WFB saw its profits shrinking and its market-share

1   slipping away to competitors, WFB abandoned its strategy of less-risky underwriting and sought
2   to make up the ground it had lost. Beginning in 2005, WFB expanded its program of
3   "discretionary underwriting" providing incentives to employees for more aggressive underwriting,
4   resulting in the underwriting of significantly more risky mortgage loans in spite of Wells Fargo
5   Bank's stated underwriting guidelines.  Throughout 2005-2007, WFB continued pushing ever-
6   increasing subprime mortgage loan volume through its system by loosening the Company's
7   underwriting practices and introducing a growing percentage of higher risk mortgage products,
8   including adjustable-rate, interest-only loans and "stated income" loans, where even W-2 wage
9   earners did not have to bother verifying their stated income levels.  The Offering Documents failed
10  to disclose the true nature of these practices and failed to disclose that loan originators did not
11  adhere to Wells Fargo Bank's stated underwriting guidelines.

12          67.     Since the Offerings were consummated, the truth about WFB's deficient lending
13  practices has come to light.

14  **Disclosures of True Nature of Certificate Collateral Lead To Downgrades**

15          68.     As set forth above, by the end of 2008 WFB's true underwriting practices became
16  known to the public. During this time, the Company was forced to take significant write-downs
17  due to its massive exposure to the subprime market.  In mid-2008, Moody's began its review of
18  Jumbo Mortgage Loans -- WFC was one of the largest holders of Jumbo Mortgage Loans.  In
19  October 2008, WFC received a $25 billion subsidy from the Federal Government as part of the
20  Federal Emergency Economic Stabilization Act.

21          69.     Over these concerns, Moody's, S&P and/or Fitch, have revised their ratings on a
22  significant portion of WFMBS Certificate classes due to the massive write-downs and exposure to
23  subprime mortgage markets, and the now exposed true nature of the underwriting of WFB's
24  mortgage loans used as collateral for the Certificates.

25          70.     As a result of these disclosures and the Rating Agencies' reassessment of the
26  appropriate ratings to be assigned to the Certificates, the value of the Certificates has collapsed.

27
28

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**COUNT 1**
**Violations of §11 of the Securities Act of 1933**
**Against All Defendants**

71.    Plaintiff repeats and realleges each and every allegation contained above.

72.    This claim is brought by Plaintiff pursuant to Section 11 of the Securities Act and asserted on behalf of all other members of the Class who purchased or acquired WFMBS Certificates on or traceable to the Offerings.

73.    Defendant WFASC is the registrant for the Offerings and filed the Offering Documents as the issuer of the WFMBS Certificates, as defined in Section 11(a)(1) of the Securities Act.

74.    The Individual Defendants were officers and/or directors of WFASC at the time the Registration Statement filed in connection with the Offerings became effective, and at the time of the issuance of the Prospectuses, and with their consent were identified as such therein. The Individual Defendants are liable for the misstatements and omissions in the Registration Statement alleged herein under Section 11(a)(1) of the Securities Act.

75.    Defendants GSC, JPM, BSC, HSBCS, DBS, UBS, CITI, RBS, BC, BAS, BofA, Moody's, S&P and Fitch served as the Underwriters for the Offerings and each qualifies as such according to the definition in Section 2(a)(11) of the Securities Act, 15 U.S.C. § 77b(a)(11). As such, the Underwriter Defendants participated in the solicitation, offering, and sale of the WFMBS Certificates to the investing public pursuant to the Offering Documents.

76.    The Offering Documents, at the time they became effective, contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading, as set forth above. The facts misstated and omitted would have been material to a reasonable person reviewing the Offering Documents.

77.    The Defendants did not make a reasonable investigation or perform due diligence and did not possess reasonable grounds for believing that the statements contained in the Offering Documents were true, did not omit any material fact, and were not materially misleading.

78.    Plaintiff and the other Class members did not know, and in the exercise of reasonable diligence, could not have known of the misstatements and omissions contained in the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1     Offering Documents.

2        79.     Plaintiff and other Class members sustained damages as a result of misstatements

3     and omissions in the Offering Documents, for which they are entitled to compensation.

4        80.     Those members of the Class who acquired the Certificates after the issuance of any

5     annual report relied upon the untrue statements in the Offering Documents or relied on the

6     Offering Documents and did not know of such omissions and have been damaged thereby.

7        81.     Plaintiff brought this action within one year after the discovery of the untrue

8     statements and omissions, and within three years after the Offerings.

9                                **COUNT II**

             **Violation of § 12(a)(2) of the Securities Act**

10                     **(Against All Defendants)**

11        82.     Plaintiff repeats and realleges each and every allegation contained above.

12        83.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf

13     of the Class, against all Defendants.

14        84.     By means of the Offering Documents, and by using means and instruments of

15     transportation and communication in interstate commerce and of the mails, the Defendants

16     through the Offerings sold WFMBS Certificates to Plaintiff and other members of the Class.

17        85.     Defendants WFASC, the WFMBS Trusts, the Individual Defendants and the

18     Underwriter Defendants each successfully solicited these purchases, motivated at least in part by

19     their own financial interest. The Defendants each reviewed and participated in drafting the

20     Prospectuses. Through ensuring the successful completion of the Offerings, the Underwriter

21     Defendants obtained substantial underwriting fees.

22        86.     The Offering Documents, at the time they became effective, contained material

23     misstatements of fact and omitted facts necessary to make the facts stated therein not misleading,

24     as set forth above. The facts misstated and omitted would have been material to a reasonable

25     person reviewing the Registration Statement and the Prospectuses.

26        87.     Defendants as "sellers" owed to the purchasers of the WFMBS Certificates,

27     including Plaintiff and other Class members, the duty to perform due diligence and make a

28     reasonable and diligent investigation of the statements contained in the Offering Documents, to

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

ensure that such statements were true and that there was no omission of any material fact required to be stated in order to make the statements contained therein not misleading. Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the materials as set forth above.

88.   Plaintiff and other members of the Class purchased or otherwise acquired WFMBS Certificates pursuant to the Offering Documents.

89.   Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Offering Documents.

90.   Plaintiff, individually and representatively, hereby offers to tender to Defendants those securities which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their WFMBS Certificates are entitled to rescissory damages.

91.   By reason of the conduct alleged herein, these Defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold WFMBS Certificates purchased pursuant and/or traceable to the Offerings have the right to rescind and recover the consideration paid for their WFMBS Certificates and hereby elect to rescind and tender their WFMBS Certificates to the Defendants sued herein.

92.   Plaintiff and Class members who have sold their WFMBS Certificates are entitled to rescissory damages.

## COUNT III
### Violation of § 15 of The Securities Act
### (Against Defendants WFBNA, WFASC, the WFMBS Trusts and the Individual Defendants)

93.   Plaintiff repeats and realleges each and every allegation contained above.

94.   This claim is brought by Plaintiff pursuant to Section 15 of the Securities Act and asserted on behalf of all Class members who purchased or acquired WFMBS Certificates in the Offerings.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1      95.    The Individual Defendants at all relevant times participated in the operation and

2  management of WFASC and the WFMBS Trusts, and conducted and participated, directly and

3  indirectly, in the conduct of WFASC and the WFMBS Trusts' business affairs.

4      96.    As officers and/or directors of WFASC, the Individual Defendants had a duty to

5  disseminate accurate and truthful information in the Offering Documents.

6      97.    Defendant WFASC is the Parent Corporation and sole owner of the WFMBS

7  Trusts, and at all relevant times participated in the operation and management of the WFMBS

8  Trusts, and conducted and participated, directly and indirectly, in the conduct of the Trusts'

9  business affairs.

10      98.    Defendant WFBNA is the Parent Corporation and sole owner of the WFASC, and

11  at all relevant times participated in the operation and management of the WFASC, and conducted

12  and participated, directly and indirectly, in the conduct of the WFASC's and the WFMBS Trusts'

13  business affairs.

14      99.    As set forth above, it is alleged that the Offering Documents issued in connection

15  with the WFMBS Offerings contained material misstatements of fact, and omitted facts necessary

16  to make the facts contained therein not misleading, in violation of Sections 11 and 12 of the

17  Securities Act.

18      100.   Because of their positions of control and authority as senior officers and directors

19  of WFASC, the Individual Defendants were able to, and did, control the contents of the Offering

20  Documents which contained material misstatements of fact and omitted facts necessary to make

21  the facts stated therein not misleading. The Individual Defendants were therefore "controlling

22  persons" of WFASC within the meaning of Section 15 of the Securities Act.

23      101.   Because of its positions of control and authority as the parent company and 100%

24  owner of WFASC, the WFBNA was able to, and did, control the contents of the Offering

25  Documents which contained material misstatements of fact and omitted facts necessary to make

26  the facts stated therein not misleading. WFBNA was therefore a "controlling person" of WFASC

27  within the meaning of Section 15 of the Securities Act.

28      102.   In addition, because of its sole ownership of the WFMBS Trusts and its control and

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1  authority as Parent Corporation, Defendant WFASC was able to, and did, control the contents of

2  the Registration Statement and the Prospectuses which contained material misstatements of fact

3  and omitted facts necessary to make the facts stated therein not misleading. Defendant WFASC

4  was therefore a "controlling person" of the WFASC Trusts within the meaning of Section 15 of

5  the Securities Act.

6      103.    Plaintiff and other Class members purchased WFMBS Certificates issued pursuant

7  to the Offerings. The Offerings were conducted pursuant to the Offering Documents.

8      104.    The Offering Documents, at the time they became effective, contained material

9  misstatements of fact and omitted facts necessary to make the facts stated therein not misleading.

10  The facts misstated and omitted would have been material to a reasonable person reviewing the

11  Offering Documents.

12      105.    Plaintiff and the Class did not know, and in the exercise of reasonable diligence,

13  could not have known of the misstatements and omissions in the Offering Documents.

14      106.    Plaintiff and the Class have sustained damages as a result of the misstatements and

15  omissions of the Registration Statement and the Prospectuses, for which they are entitled to

16  compensation.

17      107.    Plaintiff brought this action within one year after the discovery of the untrue

18  statements and omissions, and within three years after the Offerings.

19  **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

20      A.      Determining that this action is a proper class action under Rule 23 of the Federal

21  Rules of Civil Procedure;

22      B.      Awarding compensatory damages in favor of Plaintiff and the other Class members

23  against all Defendants, jointly and severally, for all damages sustained as a result of Defendants'

24  wrongdoing, in an amount to be proven at trial, including interest thereon;

25      C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

26  this action, including counsel fees and expert fees; and

27      D.      Such other and further relief as the Court may deem just and proper.

28

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 24 -

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  March 27, 2009                    WOLF HALDENSTEIN ADLER
                                           FREEMAN & HERZ, LLP
                                          FRANCIS M. GREGOREK
                                          BETSY C. MANIFOLD
                                          RACHELE R. RICKERT


                                          _____
                                               FRANCIS M. GREGOREK

                                          750 B. Street, Suite 2770
                                          San Diego, California 92101
                                          Telephone:  619/239-4599
                                          Facsimile:  619/234-4599

                                          KOHN, SWIFT, & GRAF, P.C.
                                          JOSEPH C. KOHN
                                          DENIS F. SHEILS
                                          WILLIAM E. HOESE
                                          NEIL L. GLAZER
                                          One South Broad Street, Suite 2100
                                          Philadelphia, PA 19107
                                          Telephone: 215/238-1700
                                          Facsimile:  215/238-1968

                                          Attorneys for Plaintiff
                                          General Retirement System of the City of Detroit

WELLS FARGO:16708.CPT

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION OF THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT

I, Walter Stampor, Executive Secretary of the General Retirement System of the City of Detroit, hereby declare that:

1.    I am authorized to make certification on behalf of the General Retirement System of the City of Detroit.

2.    I have reviewed the complaint prepared by counsel and have authorized its filing.

3.    The General Retirement System of the City of Detroit did not purchase the securities that are the subject of this action at the direction of the plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

4.    The General Retirement System of the City of Detroit is willing to serve as representative party on behalf of a class, including providing testimony at deposition and trial if necessary.  The General Retirement System of the City of Detroit fully understands the duties and responsibilities of the Lead Plaintiff under the Private Securities Litigation Reform Act regarding its options as to selection and retention of counsel and overseeing the prosecution of the action for the class.

5.    During the proposed class period The General Retirement System of the City of Detroit executed the following transactions in the Wells Fargo pass-through securities that are the subject of this action:

51143_1

Transactions in Wells Fargo Mortgage Backed Securities 2007-11 Trust

| CUSIP No. | Transaction | Date | Face Amount | Price |
|-----------|-------------|------|-------------|-------|
| 94985WBM2 | Purchase | 8/21/07 | $1,160,000 | .9724 |
| 94985WBM2 | Purchase | 8/22/07 | $ 775,000 | .9716 |
| 94985WDR9 | Purchase | 3/07/08 | $1,000,000 | .9059 |

6.      The General Retirement System of the City of Detroit is currently serving as Lead

or Co-Lead Plaintiff in the following actions filed during the three years preceding the date of

this Certification:

> In re Medtronic, Inc. Securities Litigation, Case No.: 07-cv-4564 (D. Minn.)
>
> International Rectifier Securities Litigation, Case No.: 07-cv-2544 (C.D. Cal.)
>
> Merck and Co., Inc. Vytorin/Zetia Securities Litigation, Case No.: 08-cv-2177 (D.N.J.)

7.      During the past three years, The General Retirement System of the City of Detroit

has unsuccessfully sought to serve as Lead Plaintiff in the following actions:

> In re Amgen, Inc. Securities Litigation, Case No. 07-cv-2536 (C.D. Cal.)
>
> In re Aetna Inc. Securities Litigation, Case No. 07-cv-4451 (E.D. Pa.)
>
> In re UBS AG Securities Litigation, Case No. 07-cv-11225 (S.D.N.Y.)
>
> Rubin v. MF Global, Ltd. et al., Case No. 08-cv-2233 (S.D.N.Y.)
>
> In re American International Group, Inc. Securities Litigation, Case No. 08-cv-4772 (S.D.N.Y.)

In each of these cases an investor with a greater financial interest was chosen over The General

Retirement System of the City of Detroit to serve as Lead Plaintiff.

51143_1

8.    The General Retirement System of the City of Detroit will not accept any payment for serving as a representative party on behalf of a class beyond its pro-rata share of any recovery, except as ordered or approved by the court, including any reward to a representative plaintiff of reasonable costs and expenses, (including lost wages), directly related to representation of the class.

9.    I declare under penalty of perjury that the foregoing is true and correct. Executed this **26** day of March, 2009

*Walter Stampor*

Walter Stampor
Executive Secretary
General Retirement System
of the City of Detroit

51143_1