MARC T.G. DWORSKY (SBN 157413)
Marc.Dworsky@mto.com
KATHLEEN M. McDOWELL (SBN 115976)
Kathleen.McDowell@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 25th floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

DAVID H. FRY (SBN 189276)
David.Fry@mto.com
JENNY H. HONG (SBN 251751)
Jenny.Hong@mto.com
CAROLYN V. ZABRYCKI (SBN 263541)
Carolyn.Zabrycki@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street,  27th floor
San Francisco, CA 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendants
WELLS FARGO DEFENDANTS AND THE
INDIVIDUAL DEFENDANTS

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-01376 (LHK)<br><br>**CONSOLIDATED CLASS ACTION ECF**<br><br>**REPLY OF WELLS FARGO DEFENDANTS AND INDIVIDUAL DEFENDANTS IN SUPPORT OF MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT**<br><br>DATE:    September 7, 2010<br>TIME:    1:30 p.m.<br>CTRM:    4 (Hon. Lucy H. Koh) |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 3

    A. Plaintiffs Do Not Allege Standing Under Section 12 ........................................... 3

        1. For 12 of the 27 Wells Fargo Trusts, Plaintiffs offer no theory whatsoever of Section 12 standing............................................................. 3

        2. Plaintiffs fail to allege that they purchased securities in the other 15 trusts in the public offering ............................................................. 4

    B. Plaintiffs Fail to Allege That Wells Fargo and the Providers of Ratings and Appraisal Opinions Believed Those Opinions to Be False When Made ................ 6

        1. Credit ratings and appraisals are opinions ..................................................... 6

        2. Plaintiffs do not allege facts plausibly showing that either, much less both, Wells Fargo or the rating agencies knew the ratings were false when made ............................................................................................ 7

        3. Plaintiffs do not identity any allegations plausibly showing that either, much less both, Wells Fargo or the appraisers knew the appraisals were false when made ................................................................ 9

    C. Plaintiffs' Claims Are Time-Barred Because They Fail to Satisfy Their Burden of Pleading Compliance with the Statute of Limitations ........................ 10

    D. Plaintiffs' Claims About Third-Party Originators Fail Because Plaintiffs Do Not Allege That Wells Fargo Knew of Any Changes to These Originators' Guidelines and Do Not Identify Any Misleading Affirmative Statement About Those Guidelines...................................................................... 12

    E. Plaintiffs Did Not Suffer Any Economic Loss With Respect to Wells Fargo Trust 2006-AR16 ............................................................................................... 14

III. CONCLUSION.......................................................................................................... 15

## FEDERAL CASES

*Abud Dhabi Commercial Bank v. Morgan Stanley & Co.*,
 651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................. 6, 8

*Betz v. Trainer Wortham & Co., Inc.*,
 519 F.3d 863 (9th Cir. 2008) ............................................................................ 11

*Erickson v. Kiddie*,
 1986 WL 544 (N.D. Cal. Feb. 24, 1986) .......................................................... 11

*Hardy v. First Am. Bank, N.A.*,
 774 F. Supp. 1078 (M.D. Tenn. 1991) .............................................................. 11

*Hertzberg v. Dignity Partners, Inc.*,
 191 F.3d 1076 (9th Cir. 1999) ............................................................................ 4

*In re Broderbund/Learning Co. Sec. Litig.*,
 294 F. 3d 1201 (9th Cir. 2002) ......................................................................... 15

*In re Citigroup Inc. Bond Litig.*,
 __ F. Supp. 2d. __, 2010 WL 2772439 (S.D.N.Y. July 12, 2010) ..................... 5

*In re IndyMac Mortgage-Backed Sec.*,
 __ F. Supp. 2d __, 2010 WL 2473243 (S.D.N.Y. Jun. 21, 2010) .................. 4, 5

*In re Infonet Servs. Corp. Sec. Litig.*,
 310 F. Supp. 2d 1080 (C.D. Cal. 2003) .............................................................. 4

*In re Lehman Bros. Sec. & ERISA Litig.*,
 684 F. Supp. 2d 485 (S.D.N.Y. 2010) ........................................................ passim

*In re Levi Strauss & Co. Sec. Litig.*,
 527 F. Supp. 2d 965 (N.D. Cal. 2007) ................................................................ 4

*In re Stac Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) .............................................................................. 8

*In re Sterling Foster & Co. Sec. Litig.*,
 222 F. Supp. 2d. 216 (E.D.N.Y. 2002) ............................................................... 5

*In re TFT-LCD (Flat Panel) Anti-Trust Litig.*,
 599 F. Supp. 2d 1179 (N.D. Cal. 2009) .............................................................. 1

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ............................................. passim

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ............................................. 2, 6, 7

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
 __ F. Supp. 2d. __, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) .............. passim

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
 658 F. Supp. 2d 299 (D. Mass. 2009) ................................................................. 3

*Randall v. Loftsgaarden*,
 478 U.S. 647 (1986) .......................................................................................... 15

*Rubke v. Capitol Bancorp Ltd.*,
 551 F.3d 1156 (9th Cir. 2009) ............................................................................ 7

*Schneider v. Cal. Dept. of Corr.*,
 151 F.3d 1194 (9th Cir. 1998) ............................................................................ 8

*Sound Appraisal v. Wells Fargo Bank, N.A.*,
  __ F. Supp. 2d __, 2010 WL 2404396 (N.D. Cal. June 14, 2009) .......................................... 10

*Toombs v. Leone*,
  777 F.2d 465 (9th Cir. 1985) ............................................................................................... 2, 11

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  692 F. Supp. 2d 387 (S.D.N.Y. 2010) ................................................................................ passim

**FEDERAL STATUTES**

15 U.S.C.
  § 77k(e) .................................................................................................................................... 14
  § 77l(b) ..................................................................................................................................... 14

**FEDERAL REGULATIONS**

17 C.F.R. § 229.1110(b) ................................................................................................................ 13

17 C.F.R. § 229.1111(a)(3) ............................................................................................................ 13

## I. INTRODUCTION

Rather than explaining how the Amended Consolidated Complaint ("ACC") alleges the facts necessary to state each of their claims (which they could not do), Plaintiffs' Opposition attempts to dodge those requirements through unsupported challenges to well-established law. These include, for example, Plaintiffs' meritless arguments that Section 12(a)(2) standing does not require a purchase in the public offering, that reducing or eliminating underwriting guidelines is not a "change" of the guidelines for purposes of Regulation AB, and that the application of the statute of limitations is controlled by 1934 Act cases, rather than the Ninth Circuit's 1933 Act precedents.

Plaintiffs seek to distract from the merits of the motion to dismiss by asserting that it "is really a disguised motion for reconsideration" subject to the "requirements of Civil Local Rule 7-9." Opp. at 3:8-9. That contention is both legally and factually incorrect. As a legal matter, a motion to dismiss an amended complaint is not a motion for reconsideration of the decision on an earlier-decided motion to dismiss. *See In re TFT-LCD (Flat Panel) Anti-Trust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) (treating a second motion to dismiss an amended complaint as a motion to dismiss rather than a motion for reconsideration). As a factual matter, the only arguments asserted here that have been made before are that Plaintiffs lack standing under Section 12(a)(2) and that the claims are barred by the statute of limitations. The Court *granted* the original motion to dismiss with respect to the standing issue—a pleading defect Plaintiffs have not cured—and the Court *expressly permitted* Defendants to renew the statute of limitations argument. May 18, 2010 Order (Dkt. No. 202).

Setting aside these diversions and focusing on the merits of the arguments, the ACC must be dismissed. *First,* Plaintiffs simply failed to follow the Court's express instruction to allege, if they could, that their purchases were "part of the initial offering[s]," as is required to establish standing under Section 12(a)(2). As to 12 trusts, Plaintiffs say *nothing at all* to support their claim of standing. As to the remaining 15 trusts, Plaintiffs contend that, despite the Court's unambiguous direction, they do not need to allege a purchase in the offering but need only allege that they purchased "from the issuer." In a complete non sequitur, they then assert that they have

1  satisfied that requirement by alleging that they purchased "*from the underwriter*." There may be
2  no practical difference between purchasing in the offering or purchasing from the issuer. But
3  because underwriters trade in the secondary market, purchasing from the underwriter does not
4  mean purchasing in the initial offering and fails to satisfy either the Court's order or the
5  controlling authority. Tellingly, Plaintiffs do not argue that this failure resulted from a mere
6  oversight or poor word choice and do not assure the Court that they did in fact purchase these
7  Certificates in the initial public offering.

8  *Second,* Plaintiffs argue that the appraisals and credit ratings were "facts," not
9  opinions, because they cannot meet the pleading standard applicable to opinions, *i.e.*, that Wells
10 Fargo knew the appraisals and ratings were false and that the appraisers and rating agencies knew
11 their opinions were false. But Plaintiffs fail to cite a single case treating an appraisal or a credit
12 rating as a fact rather than an opinion. Plaintiffs simply ignore the string of recent decisions
13 uniformly dismissing these very same allegations for failure to allege subjective falsity. *See, e.g.,*
14 *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 393-95
15 (S.D.N.Y. 2010); *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*, No. 08
16 Civ. 5653 (PAC), 2010 WL 1473288, at *7-8 (S.D.N.Y. Mar. 29, 2010); *New Jersey Carpenters*
17 *Vacation Fund v. Royal Bank of Scotland Group, PLC*, __ F. Supp. 2d. __, No. 08 CV
18 5093(HB), 2010 WL 1172694, at *14 (S.D.N.Y. Mar. 26, 2010); *New Jersey Carpenters Health*
19 *Fund v. Residential Capital, LLC*, No. 08 CV 8781(HB), 2010 WL 1257528, at *6 (S.D.N.Y.
20 Mar. 31, 2010); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 494-95 (S.D.N.Y.
21 2010).

22 *Third,* Plaintiffs continue to assert that Defendants bear the burden with respect to
23 the one-year statute of limitations, citing inapplicable Section 10(b) cases under the 1934 Act.
24 Plaintiffs deride Defendants' reliance on *Toombs v. Leone*, 777 F.2d 465 (9th Cir. 1985), but
25 *Toombs* is the controlling Ninth Circuit authority on the application of the statute in 1933 Act
26 cases. Plaintiffs have not met their burden of pleading the circumstances of their discovery and
27 why they could not have discovered their claims earlier. Rather, they simply contend that the day
28 one Certificate (out of literally hundreds at issue in the case) was downgraded below investment

11530640.1 - 2 - REPLY ISO MOTION TO DISMISS OF WELLS FARGO
DEFS AND INDIVIDUAL DEFS
CASE NO. 09-01376-LHK

1    grade is "plausibly" the day Plaintiffs were put on notice. Opp. at 21:18. Plaintiffs do not and

2    cannot explain why this downgrade, as opposed to previous downgrades, notified Plaintiffs of

3    their claims regarding credit ratings or how any rating downgrade put them on notice of allegedly

4    inflated appraisals or supposed underwriting deficiencies.

5    *Fourth*, Plaintiffs do not even contend that Wells Fargo knew about other

6    originators' alleged deviation from their guidelines. Instead, Plaintiffs apply an absurdly cramped

7    interpretation of Section 1111 of Regulation AB—that reducing or eliminating the underwriting

8    standards is conceptually different for purposes of the Regulation from "changing" those

9    standards. In the alternative, Plaintiffs assert that their claim regarding other originators'

10   underwriting guidelines rests on an "affirmative misstatement" in the offering materials, rather

11   than an omission. The Opposition glaringly fails to identify what that alleged misstatement is.

12   *Last*, because Plaintiffs do not deny that MissPERS profited from its purchase of

13   Certificates from the 2006-AR16 trust, that trust must be dismissed from the ACC.

## II. ARGUMENT

### A. Plaintiffs Do Not Allege Standing Under Section 12.

#### 1. For 12 of the 27 Wells Fargo Trusts, Plaintiffs offer no theory whatsoever of Section 12 standing.

For 12 of the trusts at issue in the ACC, Plaintiffs offer no theory under which they have standing to assert claims under Section 12(a)(2). In fact, the ACC retains the exact language already rejected by the Court: that Plaintiffs "acquired Wells Fargo Certificates pursuant and/or traceable to the Offering Documents . . . ." ACC ¶¶ 11-14, 16-20; *Slip op.* at 8 (Dkt. No. 198). As the Court held, while Section 11 permits actions by plaintiffs who have purchased a security that is "traceable to" the challenged offering documents, "Section 12(a)(2) requires a plaintiff to plead and prove that it purchased a security directly from the issuer as part of the initial offering, rather than in the secondary market." *Slip op.* at 8 (Dkt. No. 198). Courts facing similar mortgage-backed securities complaints have uniformly rejected this waffling "pursuant and/or traceable to" language. *See, e.g.*, *DLJ*, 2010 WL 1473288, at *4; *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 305 (D. Mass. 2009). Because

11530640.1 - 3 - REPLY ISO MOTION TO DISMISS OF WELLS FARGO
DEFS AND INDIVIDUAL DEFS
CASE NO. 09-01376-LHK

1  Plaintiffs have done nothing to fix the precise deficiency identified by the Court, their Section
2  12(a)(2) claims for Wells Fargo Trusts 2006-AR2, 2006-AR4, 2006-AR6, 2006-7, 2006-10,
3  2006-AR16, 2006-AR19, 2006-18, 2006-20, 2007-PA1, 2007-10 and 2007-AR4 must be
4  dismissed.

### 2. Plaintiffs fail to allege that they purchased securities in the other 15 trusts in the public offering.

With respect to the remaining 15 trusts, Plaintiffs' Opposition plays a semantic game to avoid the Court's unambiguous direction that Plaintiffs must allege a purchase in the initial public offering. *See Slip. op*. at 8 (Dkt. No. 198). Rather than follow the Court's instruction and say that they purchased the Certificates in the public offering (presumably because they cannot), Plaintiffs seek to minimize their failure by characterizing that instruction as requiring a "rote" phrase. Opp. at 2:16. But this phrase is "rote" only in the sense that courts uniformly require plaintiffs to allege a purchase in the public offering to state a Section 12 claim. *See, e.g., In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 982 (N.D. Cal. 2007); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003); *see also Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999). Plaintiffs do not cite a single case extending Section 12(a)(2) standing to purchases in the secondary market. To the contrary, every case Plaintiffs cite notes that Section 12 plaintiffs must allege a purchase in the public offering. *See Levi Strauss*, 527 F. Supp. 2d at 982 (Section 12 "is limited to transactions purchased pursuant to a public offering and, therefore, does not extend to *any* after market transactions."); *In re IndyMac Mortgage-Backed Sec.*, __ F. Supp. 2d __, No. 09-cv-04583-LAK, 2010 WL 2473243, at *3 (S.D.N.Y. Jun. 21, 2010) (holding that plaintiffs have standing against a "statutory seller" who is one who, "in an initial public offering, either transferred title to the purchaser or successfully solicited it for financial gain"); *Hertzberg*, 191 F.3d at 1080 (citing *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) for the notion that "a suit under Section 12 may only be maintained by a person who purchased the stock in the offering").

Plaintiffs contend that listing the underwriter from whom they purchased and the purchase dates suffices. But this argument ignores the market reality that underwriters, unlike

1 issuers, sell these Certificates in both public offerings and the secondary market. Neither the
2 purchase date nor the identity of the underwriter reveals whether the listed purchase occurred in
3 the public offering or the secondary market. Courts have accordingly rejected such allegations as
4 insufficient to allege Section 12 standing. *See, e.g., In re Sterling Foster & Co. Sec. Litig.*, 222 F.
5 Supp. 2d 216, 244-45 (E.D.N.Y. 2002) (dismissing Section 12 claims because plaintiffs, despite
6 listing purchase dates within two days of the initial offering, failed to specify whether they
7 purchased these securities in the public offering or the secondary market); *In re Citigroup Inc.*
8 *Bond Litig.*, __ F. Supp. 2d. __, No. 08-Civ-9522 (SHS), 2010 WL 2772439, at *15 (S.D.N.Y.
9 July 12, 2010) (rejecting plaintiffs' Section 12 standing argument because they "fail to expressly
10 state which plaintiffs purchased securities in which offerings" and "even a cursory review of the
11 information provided makes clear that many of the listed purchases must have been made in the
12 secondary market because they were not made on dates on which any initial offering was being
13 made").

14       This is particularly true when, as here, the purchase dates Plaintiffs identify do not
15 correspond to the initial offering dates. Plaintiffs' naked conclusion that the purchase dates
16 "make clear" which purchases were in the initial offering is utterly unexplained. Opp. at 10:12-
17 13. In fact, an examination of those purchase dates reveals that many of the dates do not match
18 the initial public offering. Not only are some of the purchase dates one or two days off, which the
19 court in *Sterling Foster & Co.* found failed to support standing, but several are weeks and months
20 after the initial public offering. ACC ¶ 15; *see Sterling Foster & Co.*, 222 F. Supp. 2d at 244-45.
21 In one notable case, Plaintiffs purchased the Certificates more than a year and a half after the
22 initial public offering. ACC ¶ 15. This distinguishes this case from *IndyMac,* on which Plaintiffs
23 rely, because that court depended on the matching dates to justify its holding. *See In re IndyMac*
24 2010 WL 2473242 at *3.

25                       \* \* \*

26       The grounds for dismissal of the Section 12(a)(2) claims are straightforward: The
27 Court instructed Plaintiffs to allege that they purchased the Certificates in the initial public
28 offering rather than the secondary market, and Plaintiffs failed to do so. Nor do they contend that

they could truthfully make the amendment directed. Accordingly, the Court now should dismiss all of the Section 12(a)(2) claims with prejudice.

### B. Plaintiffs Fail to Allege That Wells Fargo and the Providers of Ratings and Appraisal Opinions Believed Those Opinions to Be False When Made.

Plaintiffs' claims concerning credit ratings and appraisals fail because the ACC does not plead that Wells Fargo and the providers of those opinions believed them to be false when made. In a bid to avoid any substantive consideration of this argument, Plaintiffs contend it was previously made and rejected by the Court—specifically suggesting that the initial motion relied on *Virginia Bankshares, Inc. v. Sandberg* when this opinion was not even cited in Wells Fargo's previous motion to dismiss.

#### 1. Credit ratings and appraisals are opinions.

Plaintiffs make a token pass at arguing that appraisals and credit ratings are not opinions. But courts have uniformly held that appraisals and ratings are opinions for which plaintiffs must allege both objective and subjective falsity. *See, e.g., Tsereteli,* 692 F. Supp. 2d at 393-95; *DLJ*, 2010 WL 1473288, at *7-8; *Royal Bank of Scotland Group*, 2010 WL 1172694, at *14; *Residential Capital,* 2010 WL 1257528, at *6; *Lehman Bros.*, 684 F. Supp. 2d at 494-95. Plaintiffs do not offer a single case holding that either an appraisal or a credit rating is a factual assertion. To the contrary, the one case Plaintiffs do cite, *Abud Dhabi Commercial Bank v. Morgan Stanley & Co.*, required plaintiffs to allege subjective falsity because credit ratings are opinions. 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009).

Plaintiffs alternatively try to recast their claim about inflated appraisals as one for noncompliance with the USPAP standards. This semantic shift in focus does not alter the fact that Plaintiffs' claim is that the appraisals were inflated. As the Court described it, Plaintiffs' claim is "that the Offering documents falsely stated *the appraisal value* of the underlying mortgage properties" and that "*appraisal values* were inflated to hide the fact that the value of the mortgages often exceeded the true value of the properties." *Slip op.* at 3 (Dkt. No. 198) (emphases added). Plaintiffs themselves characterized their original complaint as about "overinflated appraisals," "inflated valuations and appraisals," and allegations that Wells Fargo

11530640.1    - 6 -    REPLY ISO MOTION TO DISMISS OF WELLS FARGO DEFS AND INDIVIDUAL DEFS CASE NO. 09-01376-LHK

they could truthfully make the amendment directed. Accordingly, the Court now should dismiss all of the Section 12(a)(2) claims with prejudice.

### B. Plaintiffs Fail to Allege That Wells Fargo and the Providers of Ratings and Appraisal Opinions Believed Those Opinions to Be False When Made.

Plaintiffs' claims concerning credit ratings and appraisals fail because the ACC does not plead that Wells Fargo and the providers of those opinions believed them to be false when made. In a bid to avoid any substantive consideration of this argument, Plaintiffs contend it was previously made and rejected by the Court—specifically suggesting that the initial motion relied on *Virginia Bankshares, Inc. v. Sandberg* when this opinion was not even cited in Wells Fargo's previous motion to dismiss.

#### 1. Credit ratings and appraisals are opinions.

Plaintiffs make a token pass at arguing that appraisals and credit ratings are not opinions. But courts have uniformly held that appraisals and ratings are opinions for which plaintiffs must allege both objective and subjective falsity. *See, e.g., Tsereteli,* 692 F. Supp. 2d at 393-95; *DLJ*, 2010 WL 1473288, at *7-8; *Royal Bank of Scotland Group*, 2010 WL 1172694, at *14; *Residential Capital,* 2010 WL 1257528, at *6; *Lehman Bros.*, 684 F. Supp. 2d at 494-95. Plaintiffs do not offer a single case holding that either an appraisal or a credit rating is a factual assertion. To the contrary, the one case Plaintiffs do cite, *Abud Dhabi Commercial Bank v. Morgan Stanley & Co.*, required plaintiffs to allege subjective falsity because credit ratings are opinions. 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009).

Plaintiffs alternatively try to recast their claim about inflated appraisals as one for noncompliance with the USPAP standards. This semantic shift in focus does not alter the fact that Plaintiffs' claim is that the appraisals were inflated. As the Court described it, Plaintiffs' claim is "that the Offering documents falsely stated *the appraisal value* of the underlying mortgage properties" and that "*appraisal values* were inflated to hide the fact that the value of the mortgages often exceeded the true value of the properties." *Slip op.* at 3 (Dkt. No. 198) (emphases added). Plaintiffs themselves characterized their original complaint as about "overinflated appraisals," "inflated valuations and appraisals," and allegations that Wells Fargo

"misrepresented the value of the underlying real estate." Opposition to Motion to Dismiss the Original Complaint at 16:15-16, 26, 17:16. The ACC, moreover, identifies the allegedly omitted fact as that "[t]he underlying mortgages were based on appraisals that overstated the value of the underlying properties." ACC ¶ 6.

Most important, however, is that the ACC does not support the semantic gloss now proffered, which only highlights its makeweight quality. The ACC does not identify any alleged "misstatement" in the Offering Documents about the USPAP, but instead identifies as the alleged misstatement the "appraisal value[]." ACC ¶ 91. Plaintiffs' Opposition asserts that "the Offering Documents contained statements that . . . appraisals were conducted in conformity with USPAP." Opp. at 18:14-15. But this misstates both the ACC and the Offering Documents. *Neither the ACC nor the Offering Documents contain a statement asserting that appraisals were conducted in conformity with the USPAP.* S*ee, e.g.,* RJN Ex. 49. In short, Plaintiffs here challenge the appraisals themselves, and those appraisals are opinions requiring Plaintiffs to allege both objective and subjective falsity.[1]

### 2. Plaintiffs do not allege facts plausibly showing that either, much less both, Wells Fargo or the rating agencies knew the ratings were false when made.

Plaintiffs do not contest that, to state a claim for a false opinion, they must allege facts plausibly showing that both Wells Fargo and the rating agencies subjectively knew that the ratings were false at the time the Offering Documents were issued. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009). Plaintiffs instead argue that this case is an "exact" match *not* for the five cookie-cutter mortgage-backed securities cases in which courts have said that the ratings were opinions, but for one case arising in a very different context. *Compare Tsereteli,* 692 F. Supp. 2d at 393-95; *DLJ*, 2010 WL 1473288, at *7-8; *Royal Bank of Scotland Group*, 2010 WL 1172694, at *14; *Residential Capital,* 2010 WL 1257528, at *6; *Lehman Bros.*,

---

[1] Plaintiffs suggest that they are not challenging each of the appraisals. Opp. at 19:18. Given that they contend that the loan-to-value ("LTV") ratios disclosed in the offering materials were understated due to inflated appraisals, it is difficult to imagine how they could be doing otherwise. It appears that Plaintiffs wish to characterize the disclosures as misleading without actually having to do the hard work necessary to prove that claim.

11530640.1 - 7 - REPLY ISO MOTION TO DISMISS OF WELLS FARGO DEFS AND INDIVIDUAL DEFS CASE NO. 09-01376-LHK

1   684 F. Supp. 2d at 494-95 *with Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F.
2   Supp. 2d 155, 176 (S.D.N.Y. 2009).  Not only does *Abu Dhabi* not involve mortgage-backed
3   securities, but the defendant in that case hired the rating agency to structure the security in a
4   private placement and paid the rating agency a fee three times the normal rate contingent on the
5   agency providing the requested rating—allegations that are not made here.  *Id.* at 167.

6      Nor do the "factual allegations" listed in the Opposition establish subjective
7   knowledge of falsity by either the rating agencies or Wells Fargo.  Even taking at face value the
8   conclusory accusation that Wells Fargo provided "inaccurate loan information," that claim does
9   not amount to an assertion that Wells Fargo knew that the information was inaccurate and,
10  therefore, that the ratings were misleading.  Indeed, because they wish to avoid the specificity
11  requirements of Rule 9(b), Plaintiffs explicitly disclaim any allegation that Wells Fargo
12  knowingly supplied false information in its Offering Documents.  ACC ¶ 2 (asserting that the
13  ACC "does not allege fraud on the part of any Defendant"); *see also In re Stac Elecs. Sec. Litig.*,
14  89 F.3d 1399, 1404-05 (9th Cir. 1996) (holding that Rule 9(b) applies to Section 11 and Section
15  12(a)(2) claims "grounded in fraud").  In opposing a motion to dismiss, Plaintiffs cannot adopt a
16  position contrary to its allegations to avoid a deficiency in that same complaint.  *See Schneider v.*
17  *Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding that the district court cannot
18  consider new facts alleged in opposition papers).  The law does not permit Plaintiffs to avoid the
19  heightened pleading standard by disclaiming any allegation that Wells Fargo acted with intent
20  and, at the same time, contend that they have adequately alleged that same intent to avoid
21  dismissal for failure to allege subjective falsity.

22     Moreover, none of the remaining alleged facts—the supposedly "predetermined
23  ratings," the rating agency executives' quotes, and the loss in market value—establishes
24  subjective falsity.  The allegations concerning "predetermined ratings" are simply that Wells
25  Fargo said it would not issue the securities unless they received a particular rating.  ACC ¶ 103.
26  That says nothing about whether the ratings were correct or not.  The remaining "facts" do not
27  relate to Wells Fargo's knowledge at all.  If Plaintiffs contend that the comments from the rating
28  agency executives or the loss in market value notified Wells Fargo about problems with the

11530640.1  - 8 -  REPLY ISO MOTION TO DISMISS OF WELLS FARGO
DEFS AND INDIVIDUAL DEFS
CASE NO. 09-01376-LHK

1   ratings, then these publicly available facts equally notified Plaintiffs (which would defeat any
2   claim of materiality, due to truth on the market, and would have triggered the one-year statute of
3   limitations).  Nor, in any case, do these facts establish the rating agencies' knowledge at the time
4   of the rating because the quotes reflect the executives' post-hoc evaluations in 2008.  Courts
5   consistently hold that after-the-fact assessments, including virtually identical quotes from rating
6   agency executives, do not plausibly establish subjective falsity.  *See, e.g., Lehman Bros.*, 684 F.
7   Supp. 2d at 495; *Tsereteli*, 692 F. Supp. 2d. at 395.

8   　　　　Appreciating that their allegations fail to address the subjective falsity problem,
9   Plaintiffs resort to quoting repeatedly snippets out of context from the Court's April 22 Order to
10  suggest that the rating executives admitted more than they actually did.  Opp. at 5:24-27, 16:4-7;
11  *Slip op.* at 17-18 (Dkt. No. 198).  But the Court was not addressing whether the rating agencies
12  knew the ratings were false at the time they provided them, but rather whether these statements,
13  combined with other allegations, suggested a misstatement.  *Id.*  As other courts have held, the
14  rating executives' statements concern *not* what they knew at the time the ratings were issued, but
15  what they knew in 2008 with the benefit of hindsight.  ACC ¶ 112-114; *Lehman Bros.*, 684 F.
16  Supp. 2d at 495 (dismissing claim and holding that quotes by Moody's and S&P executives from
17  2008 "are insufficient to support an inference that the rating agencies did not actually hold the
18  opinion about the sufficiency of the credit enhancements to justify each rating at the time each
19  rating was issued"); *Tsereteli*, 692 F. Supp. 2d at 395 (dismissing claim because "[a]t best, [the
20  statements] support an inference that some people believed or now believe that a different set of
21  models, based on a different set of assumptions, might have resulted in different rating").

22  　　　　**3.　Plaintiffs do not identity any allegations plausibly showing that either, much less both, Wells Fargo or the appraisers knew the appraisals were false when made.**
23

24  　　　　Because the ACC lacks any factual allegations establishing that Wells Fargo and
25  the appraisers knew the appraisals were false, Plaintiffs stretch their actual allegations past the
26  point of accuracy.  Plaintiffs misstate their own pleadings when they assert that "the Amended
27  Complaint details that appraisers and individuals at Wells Fargo were aware of 'do-not-use' lists
28  and pressured appraisers to 'cooperate, alter their appraisal, and provide a higher valuation.'"

11530640.1　　　　　　　　　　　　　　　　　　　- 9 -　　　　　　　　REPLY ISO MOTION TO DISMISS OF WELLS FARGO
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DEFS AND INDIVIDUAL DEFS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CASE NO. 09-01376-LHK

1  Opp. at 19:19-21 (citing ACC ¶¶ 94-95). These paragraphs of the ACC do no more than quote a

2  2007 survey and 2008 Senate testimony about the general industry and do not allege that *Wells

3  Fargo* used the described practices. Indeed, the cited paragraphs say nothing about Wells Fargo,

4  its appraisers, or prime mortgages. In fact, the only allegations tied to Wells Fargo are vague

5  allegations by only three confidential witnesses that some unspecified appraisals for some

6  unspecified loans were "inflated" at some unspecified time. ACC ¶¶ 93, 97. But these witnesses

7  notably do not say that any appraiser lied, nor that Wells Fargo knew at the time that the

8  appraisals were false. Moreover, none of these confidential witnesses is identified as an

9  appraiser, an employee interacting with appraisers, or even anyone with expertise about appraised

10 property values. Conspicuously, Plaintiffs again do not distinguish (or even mention) the recent

11 decisions dismissing the same allegations (including allegations about the USPAP) for failure to

12 allege subjective falsity. *See Tsereteli*, 692 F. Supp. 2d at 393-94; *DLJ Mortgage Capital*, 2010

13 WL 1473288, at *8.

14  Finally, Plaintiffs again stretch the truth by asserting that Wells Fargo is "the

15 subject of investigation" related to appraisals. Opp. at 19:2-5. While Plaintiffs' characterization

16 implies an ongoing *government* investigation, the only "investigation" concerning Wells Fargo's

17 appraisals referenced in the ACC is whatever research other plaintiffs' counsel did in bringing a

18 separate lawsuit (*Sound Appraisal)* against Wells Fargo. ACC ¶ 96. As it is, Judge Wilken has

19 dismissed that lawsuit *with prejudice* for failure to state a claim. *Sound Appraisal v. Wells Fargo

20 Bank, N.A.*, __ F. Supp. 2d __, No. C09-01630-CW, 2010 WL 2404396 (N.D. Cal. June 14,

21 2009). That Plaintiffs even attempt to rely on this dismissed lawsuit as a "fact" showing

22 subjective falsity further highlights the lack of any actual, relevant factual allegations in their

23 ACC.

24  **C.  Plaintiffs' Claims Are Time-Barred Because They Fail to Satisfy Their
       Burden of Pleading Compliance with the Statute of Limitations.**

25  Plaintiffs' mischaracterization of this motion to dismiss as a motion for

26 reconsideration fails to acknowledge that the Court expressly permitted Wells Fargo to renew this

27 argument. After the Court applied the Section 10(b) standard rather than the 1933 Act standard

28

11530640.1     - 10 -     REPLY ISO MOTION TO DISMISS OF WELLS FARGO
DEFS AND INDIVIDUAL DEFS
CASE NO. 09-01376-LHK

1    for pleading compliance with the statute of limitations, Wells Fargo filed a motion for leave to
2    file a motion for reconsideration or, in the alternative, for clarification.  The Court denied the
3    motion for leave to file a motion for reconsideration but granted the request for clarification:
4    "Plaintiffs' Amended Complaint is presently due on May 28, 2010.  Should defendants wish to
5    renew their statute of limitations arguments in a motion to dismiss the Amended Complaint or at
6    a later point in the litigation, they will be permitted to do so."  May 18, 2010 Order at 1:22-24.

7           As on the initial motion to dismiss, Plaintiffs again attempt to avoid their burden to
8    plead facts showing compliance with the one-year statute of limitations by quoting inapplicable
9    Section 10(b) cases dealing with fraud rather than 1933 Act cases dealing with false statements
10   *simpliciter*.  They criticize Wells Fargo for "ignoring" *Betz v. Trainer Wortham & Co., Inc.*, 519
11   F.3d 863 (9th Cir. 2008), a Section 10(b) case decided at summary judgment that has been
12   vacated by the Supreme Court, and for relying on *Toombs v. Leone*, the controlling Ninth Circuit
13   authority on pleading motions for 1933 Act claims.  *Toombs*, not *Betz*, applies to this case, and
14   *Toombs* and its progeny require Plaintiffs to allege facts showing compliance with the statute of
15   limitations.  *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985); *Erickson v. Kiddie*, No. C-85-
16   4798-MHP, 1986 WL 544, at *6 (N.D. Cal. Feb. 24, 1986).  Plaintiffs' citations to cases outside
17   this circuit are similarly irrelevant.

18          Plaintiffs fail to meet their pleading burden as imposed by *Toombs*.  The ACC
19   does not plead the circumstances of their discovery that the statements at issue were false (again,
20   their references to discovery of *fraud* are inapt), the reasons Plaintiffs could not have discovered
21   their claims earlier, and facts demonstrating the required diligence.  Plaintiffs instead identify a
22   paragraph which they claim alleges the date, May 20, 2008, when they contend they "plausibly"
23   could have been put on notice.  Opp. at 21:18.

24          As an initial matter, saying when they "could" have been put on notice, rather than
25   when they were put on notice, is insufficient.  *Erickson*, 1986 WL 544, at *6; *see also Hardy v.
26   First Am. Bank, N.A.*, 774 F. Supp. 1078, 1082 (M.D. Tenn. 1991).  Moreover, the passage of the
27   ACC they cite says only that an unidentified Certificate originally rated "A" was first
28   downgraded to below investment grade on May 20, 2008.  ACC ¶ 104.  Plaintiffs cannot explain

1 the significance of this downgrade compared to the previous downgrades in December 2007 and
2 January 2008, particularly when the rating agencies downgraded AAA, investment-grade
3 certificates in January 2008 and Plaintiffs did not even purchase any "A" rated certificates. Supp
4 RJN Ex. 89.

Plaintiffs also do not and cannot explain why a rating downgrade would have caused them to discover misstatements related to underwriting guidelines and appraisals. Indeed, Plaintiffs have previously argued that a rating downgrade is insufficient to put them on notice about allegedly deficient underwriting practices or inflated appraisals. Opposition to Motion to Dismiss the Original Complaint at 22 ("It is well settled that poor financial performance, standing alone does not necessarily suggest securities fraud . . . .") (citations omitted).

Finally, Plaintiffs choose the May 20, 2008 downgrade without explaining how this particular downgrade, of a Certificate tranche for which Plaintiffs do not even allege a purchase, would have caused them to discover misstatements concerning hundreds of other securities in dozens of different offerings with different ratings.

The bottom line is that Plaintiffs have not met their burden to plead compliance with the statute of limitations. Rather, they rely on inapposite legal authority and the naked conclusion that Plaintiffs "brought [the action] within one year after the discovery" and "could not have reasonably discovered the untrue statements and omissions . . . at an earlier time." ACC ¶¶ 136, 145. Under Ninth Circuit law, this does not suffice, and the ACC must be dismissed as untimely for failure to allege compliance with the one-year statute of limitations.[2]

**D. Plaintiffs' Claims About Third-Party Originators Fail Because Plaintiffs Do Not Allege That Wells Fargo Knew of Any Changes to These Originators' Guidelines and Do Not Identify Any Misleading Affirmative Statement About Those Guidelines.**

Section 1111 of Regulation AB requires the offering documents to disclose, *to the extent known*, "any changes" to other originators' underwriting guidelines and "the extent to

---

[2] The Underwriter Defendants have responded separately to Plaintiffs' arguments concerning the application of the statute of limitations to newly added plaintiffs. Rather than repeat those arguments here, Wells Fargo adopts the arguments of the Underwriter Defendants.

1    which [such guidelines] are or could be overridden."[3] 17 C.F.R. § 229.1111(a)(3) (emphasis

2    added). Plaintiffs have not alleged that Wells Fargo knew about other originators' supposed

3    deviations from their own underwriting guidelines. In seeking to avoid the implications of this

4    pleading deficit, Plaintiffs argue that "systematic deviations" from the guidelines constitute

5    neither a "change [to]" nor an "overrid[ing of]" the guidelines and thus are not the subject of the

6    regulation. This argument defies common sense and ignores the allegations of the ACC, which

7    are that the other originators "greatly reduced and/or eliminated its underwriting standards . . . ."

8    Opp. at 14:17-18. Moreover, Plaintiffs' construction of the regulation leads to the absurd result

9    that the regulation would not apply to *de facto* changes to the guidelines, even those—as is

10    alleged here—to have been so extreme as to constitute "systematic deviations" from the

11    guidelines. This construction turns the rule on its head.

12           Moreover, even if Plaintiffs' reading of the regulation were correct, Wells Fargo

13    would not be liable for failing to disclose other originators' "disregard" for their guidelines.[4]

14    Either Section 1111 applies, in which case Plaintiffs must allege that Wells Fargo knew of the

15    alleged deviations, or Section 1111 does not apply, in which case Wells Fargo had no obligation

16    to disclose the allegedly omitted information. Not only does Plaintiffs' argument not make sense

17    under the regulation's language, but it makes no sense under the theory of liability they in fact

18    have advanced against Wells Fargo.

19           As a fallback argument, Plaintiffs contend that their claim rests not on omitting a

20    required disclosure but on an affirmative misstatement about other originators' guidelines. But

---

[3] Under Section 1110 of Regulation AB, Wells Fargo had no obligation to describe other originators' underwriting guidelines at all, much less any unknown deviation from those guidelines. 17 C.F.R. § 229.1110(b). That section requires a description of the underwriting criteria only if the third-party originator originated 20% or more of the loans underlying the trust; none of these trusts contain sufficient loans originated by another entity to trigger that requirement.

[4] Plaintiffs apparently still do not understand the certificates about which they have filed suit. They distinguish between "correspondent lenders" and "third-party originators" without realizing that these terms are synonyms. As the offering documents describe, correspondent lenders are "other unaffiliated originators" from whom Wells Fargo acquires already-originated mortgage loans. RJN Ex. 49 at 31. Based on that misapprehension, Plaintiffs assert that only four of the trusts at issue contain loans originated by another originator. In fact, nearly all of the trusts contain loans originated by other banks and such loans make up nearly half of the loans in some of those trusts.

this argument requires Plaintiffs to identify an incorrect statement by Wells Fargo in the Offering Documents about the other originators' guidelines. Plaintiffs identify no such statement. Instead, the ACC quotes a warning in the Offering Documents that the other originators' standards differ from Wells Fargo's standards:

> These underwriting standards may differ significantly from the Underwriting Standards and are less stringent that the Underwriting Standards in areas including reserve requirements, number of financed properties, cash-out limits, property type, escrow holdbacks, bankruptcy or foreclosure requirements, temporary buydowns and documentation requirements.

ACC ¶ 82.

That the Offering Documents lack any affirmative description of the other originators' underwriting guidelines distinguishes this case from those cited by Plaintiffs. *See Royal Bank of Scotland*, 2010 WL 1172694 at * 11; *Lehman Bros.*, 684 F. Supp. 2d at 493-94 (noting that defendant's argument for dismissal because plaintiffs did not allege that defendant knew other originators' deviated from their guidelines would have merit if the offering documents did not contain an alleged affirmative misstatement describing the underwriting guidelines). In *Royal Bank of Scotland*, the offering documents described the other originators' underwriting guidelines—"the mortgage loan application is reviewed to determine that the stated income is reasonable for the borrower's employment and that the stated assets are consistent with the borrower's income"—and the court relied on this affirmative description to hold that plaintiffs adequately pleaded their claim. *See Royal Bank of Scotland,* 2010 WL 1172694 at *11. Here, by contrast, the Offering Documents do not describe the other originators' guidelines; therefore no affirmative representation capable of being a misstatement exists, and certainly is not identified in the ACC.

### E. **Plaintiffs Did Not Suffer Any Economic Loss With Respect to Wells Fargo Trust 2006-AR16.**

Plaintiffs do not dispute that MissPERS profited from its purchase of Certificates for the 2006-AR16 trust. Moreover, Plaintiffs do not dispute that Section 11 and Section 12(a)(2) preclude recovery when the misstatement did not cause any loss. 15 U.S.C. §§ 77k(e), 77l(b);

*Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986).  Rather than contest these determinative facts, Plaintiffs argue that damages are usually a question of fact not appropriate for a motion to dismiss and that MissPERS can still serve as a class representative despite suffering "different" damages.  Both these arguments miss the point.  The former ignores that this general rule does not apply when Plaintiffs affirmatively plead facts precluding recovery, and the latter ignores that this motion is not about class certification but stating a claim, and that MissPERS did not just suffer *different* damages but *no* damages.  *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F. 3d 1201, 1203 (9th Cir. 2002) (affirming dismissal of Section 11, 12, and 15 claims because the complaint alleged facts showing a gain rather than a loss).  MissPERS did not suffer any economic loss from its purchase of 2006-AR16 Certificates but instead earned a profit.  It therefore lacks standing under Section 11 and Section 12 for this one trust.[5]

## III. CONCLUSION

For the foregoing reasons, the Amended Consolidated Complaint should be dismissed in its entirety, this time with prejudice.

DATED: August 24, 2010

        MUNGER, TOLLES & OLSON LLP
        MARC T.G. DWORSKY
        KATHLEEN M. McDOWELL
        DAVID H. FRY
        JENNY H. HONG
        CAROLYN V. ZABRYCKI

By: */s/ David H. Fry*
      DAVID H. FRY

Attorneys for Defendants
WELLS FARGO DEFENDANTS AND THE INDIVIDUAL DEFENDANTS

---

[5] With respect to Plaintiff SEPTA, Plaintiffs have submitted additional information concerning its transactions.  While Wells Fargo's arguments were correct based on the information included in SEPTA's schedule attached to the ACC, dismissal at this point would simply lead to an amendment to modify that information in accordance with this additional information.  Wells Fargo therefore withdraws those arguments without prejudice to renewing any argument concerning SEPTA's purchases at a later stage in the litigation.

| | | |
|---|---|---|
| 1 | DATED: August 24, 2010 | WELLS FARGO & CO.<br>Office of General Counsel |
| 2 | | MAC A0194-266<br>45 Fremont Street, 26th floor |
| 3 | | San Francisco, CA  94105<br>Telephone:     (415) 396-4425 |
| 4 | | Facsimile:      (415) 975-7864<br>tojacob@wellsfargo.com |

By: */s/ Thomas O. Jacob*
          THOMAS O.  JACOB

Attorney for Defendants
WELLS FARGO DEFENDANTS