1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  (SBN 76342)
2  bruce.ericson@pillsburylaw.com
   ANDREW D. LANPHERE (SBN 191479)
3  andrew.lanphere@pillsburylaw.com
   50 Fremont Street
4  Post Office Box 7880
   San Francisco, California 94120-7880
5  Telephone:    (415) 983-1000
   Facsimile:    (415) 983-1200
6
   WILLIAM G. McGUINNESS (pro hac vice)
7  william.mcguinness@friedfrank.com
   STEPHANIE J. GOLDSTEIN (pro hac vice)
8  stephanie.goldstein@friedfrank.com
   SHAHZEB LARI (pro hac vice)
9  shahzeb.lari@friedfrank.com
   FRIED, FRANK, HARRIS, SHRIVER
10    & JACOBSON LLP
   One New York Plaza
11 New York, New York 10004
   Telephone:    (212) 859-8000
12 Facsimile:    (212) 859-4000

13 Attorneys for Defendants Goldman, Sachs & Co.,
   JP Morgan Securities, Inc. as successor-in-interest to Bear,
14 Stearns & Co., Inc. and Bear, Stearns & Co., Inc., Deutsche
   Bank Securities, Inc., UBS Securities, LLC, Credit Suisse
15 Securities (USA) LLC, RBS Securities, Inc., Banc of
   America Securities, LLC, Citigroup Global Markets, Inc.
16 and Merrill Lynch, Pierce, Fenner & Smith, Inc.

17                UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                     SAN JOSE DIVISION

| | |
|---|---|
| 20 IN RE WELLS FARGO MORTGAGE-<br>21 BACKED CERTIFICATES LITIGATION<br>22 | No.  C-09-1376-LHK<br><br>**CONSOLIDATED CLASS ACTION**<br>**ECF** |
| 23 | **PROOF OF SERVICE –**<br>**VIA U.S. MAIL** |
| 24 | Date:        Sept. 7, 2010<br>Time:        1:30 p.m. |
| 25 | Courtroom:   4<br>Judge:       Hon. Lucy H. Koh |

26

27

28

1    I, Deirdre Campino, the undersigned, hereby declare as follows:

2    1.    I am over the age of 18 years and am not a party to the within cause.  I am

3    employed by Pillsbury Winthrop Shaw Pittman LLP in the City of San Francisco,

4    California.

5    2.    My business address is 50 Fremont Street, San Francisco, CA 94105-2228.

6    My mailing address is 50 Fremont Street, P. O. Box 7880, San Francisco, CA  94120-7880.

7    3.    I am familiar with Pillsbury Winthrop Shaw Pittman LLP's practice for

8    collection and processing of correspondence for mailing with the United States Postal

9    Service; in the ordinary course of business, correspondence placed in interoffice mail is

10   deposited with the United States Postal Service with first class postage thereon fully

11   prepaid on the same day it is placed for collection and mailing.

12   4.    On October 1, 2010, at 50 Fremont Street, San Francisco, California, I

13   served a true copy of the attached document(s) titled exactly **STATEMENT OF RECENT**

14   **DECISION [Dkt. 286]** by placing it/them in an addressed, sealed envelope clearly labeled

15   to identify the person being served at the address shown below and placed in interoffice

16   mail for collection and deposit in the United States Postal Service on that date following

17   ordinary business practices:

18

                              **[See Attached Service List]**

19

20

21    I declare under penalty of perjury that the foregoing is true and correct.  Executed

      this 1st day of October, 2010, at San Francisco, California.

22

23

24                                            _Deirdre Campino_

25                                            Deirdre Campino

26

27

28

1

<u>**SERVICE LIST**</u>

2

3

4   James Regan
    Satterlee Stephen Burke & Burke LLP
5   230 Park Avenue
    New York, NY 10169
6

7   James J. Coster
    Satterlee Stephen Burke & Burke LLP
8   230 Park Avenue
    New York, NY 10169
9

10  Joshua M. Rubins
    Satterlee Stephen Burke & Burke LLP
11  230 Park Avenue
    New York, NY 10169
12

13  David Andrew Thorpe
    Bernstein Litwitz Berger & Grossmann LLP
14  12481 High Bluff Drive
    Suite 300
15  San Diego, CA  92130

16  Takeo A. Kellar
    Bernstein Litwitz Berger & Grossmann LLP
17  12481 High Bluff Drive
    Suite 300
18  San Diego, CA  92130

19

20

21

22

23

24

25

26

27

28

1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   BRUCE A. ERICSON  (SBN 76342)
2  bruce.ericson@pillsburylaw.com
   ANDREW D. LANPHERE (SBN 191479)
3  andrew.lanphere@pillsburylaw.com
   50 Fremont Street
4  Post Office Box 7880
   San Francisco, California 94120-7880
5  Telephone:    (415) 983-1000
   Facsimile:     (415) 983-1200
6
   William G. McGuinness (pro hac vice)
7  william.mcguinness@friedfrank.com
   Stephanie J. Goldstein (pro hac vice)
8  stephanie.goldstein@friedfrank.com
   Shahzeb Lari (pro hac vice)
9  shahzeb.lari@friedfrank.com
   FRIED, FRANK, HARRIS, SHRIVER
10   & JACOBSON LLP
   One New York Plaza
11 New York, New York 10004
   Telephone:    (212) 859-8000
12 Facsimile:     (212) 859-4000

13 Attorneys for Defendants Goldman, Sachs & Co., JP
   Morgan Securities, Inc. *as successor-in-interest to*
14 Bear, Stearns & Co., Inc., Bear, Stearns & Co., Inc.,
   Deutsche Bank Securities, Inc., UBS Securities, LLC,
15 Credit Suisse Securities (USA) LLC, RBS Securities,
   Inc., Banc of America Securities, LLC, Citigroup
16 Global Markets, Inc. and Merrill Lynch, Pierce, Fenner
   & Smith, Inc.

17

18                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
19                 SAN FRANCISCO DIVISION

20 ┌─────────────────────────────┐
   │ IN RE WELLS FARGO MORTGAGE-  │   Case No.  C-09-1376 (LHK)
21 │ BACKED CERTIFICATES LITIGATION│
   │                             │   **CONSOLIDATED CLASS ACTION**
22 │                             │   **ECF**
   │                             │
23 │                             │   **STATEMENT OF RECENT**
   │                             │   **DECISION**
24 │                             │
   │                             │   Date:          October 7, 2010
25 │                             │   Courtroom:   4
   └─────────────────────────────┘   Judge:        Hon. Lucy H. Koh
26

27

28

Pursuant to Civil L.R. 7-3(d), the Underwriter Defendants respectfully submit, as an attachment hereto, the following:

Exhibit A:  A true and correct copy of the September 28, 2010 memorandum opinion on the motion to dismiss claims under Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act") filed by certain of the defendants in the matter of *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series ARI* (No. 09-00037 MJP), pending in the United States District Court for the Western District of Washington before the Honorable Marsha J. Peckman.  The ruling has relevance to the arguments made by the Underwriter Defendants in their opposition papers to the motion to intervene filed by the General Retirement System of the City of Detroit (Doc. 263), as well as arguments made by the Defendants in their pending motions to dismiss the complaint (Docs. 237, 238, 240, 241).

Dated:  October 1, 2010

PILLSBURY WINTHROP SHAW
PITTMAN LLP

By:___/s/   Andrew D. Lanphere_____
    Bruce A. Ericson
    Andrew D. Lanphere

50 Fremont Street
San Francisco, California  94105-2228
Telephone:    (415) 983-1000
Facsimile:    (415) 983-1200
bruce.ericson@pillsbury.com
andrew.lanphere@pillsbury.com

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

Stephanie J. Goldstein
Shahzeb Lari
One New York Plaza
New York, New York  10004
Telephone:    (212) 859-8000
Facsimile:    (212) 859-4000
stephanie.goldstein@friedfrank.com
shahzeb.lari@friedfrank.com

*Attorneys for Underwriter Defendants*

2

# EXHIBIT A

The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF WASHINGTON
9                              AT SEATTLE

10   BOILERMAKERS NATIONAL ANNUITY
     TRUST FUND, on behalf of itself and all others        Case No. C09-00037MJP
11   similarly situated,
12                              Plaintiff,                 ORDER ON DEFENDANTS'
                                                           MOTIONS TO DISMISS
13                v.

14   WAMU MORTGAGE PASS TRHOUGH
     CERTIFICATES, SERIES AR1, et al.,
15
                                Defendants.
16

17

18          This matter is before the Court on Defendants' motions to dismiss Plaintiffs' second

19   amended consolidated complaint. (Dkt. Nos. 168, 170.) In addition filing responses to the

20   motions (Dkt. Nos. 177, 178), Plaintiffs have filed a motion to amend the complaint (Dkt. No.

21   179). Defendants have filed replies in support of their motions (Dkt. Nos. 184, 187), the Rating

22   Agency Defendants have filed a response to Plaintiffs' motion to amend (Dkt. No. 186), and

23   Plaintiffs have filed a reply in support of their motion to amend (Dkt. No. 190). For the reasons

24   set forth below, the Court GRANTS IN PART the WaMu Defendants' motion to dismiss,

25   GRANTS the Rating Agencies' motion to dismiss, and DENIES Plaintiffs' motion to amend.

26                                      **Background**

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 1            CASE NO. C09-00037MJP

1    I.      Procedural History

2            A total of six complaints have been filed in this matter.  On August 4, 2008, an action

3    was filed in King County Superior Court.  (C09-0134; Dkt. No. 1 (Notice of Removal).)  On

4    January 20, 2009, Plaintiff Boilermakers filed their complaint.  (C09-0037; Dkt. No. 1.)  The

5    Doral Bank complaint was filed on October 2009.  (C09-1557: Dkt. No. 1.)  Plaintiffs filed their

6    first consolidated complaint on November 23, 2009.  On December 31, 2009, Plaintiffs filed an

7    amended consolidated complaint.  Finally, the Second Amended Complaint ("SAC") was filed

8    on April 1, 2010.  (Dkt. No. 164.[1])  The proceedings were delayed by a statutorily-mandated stay

9    for claims against Washington Mutual Bank, Plaintiffs' error in providing adequate PSLRA

10   notices, and Plaintiffs' request for leave to amend their complaint in light of this Court's rulings

11   in the In re Washington Mutual Securities, ERISA, and Derivative Litigation, 08-md-1919 MJP.

12   II.     Allegations in Second Amended Complaint[2]

13           Lead Plaintiffs Doral Bank of Puerto Rico ("Doral Bank") and Policemen's Annuity and

14   Benefit Fund of the City of Chicago ("Chicago PABF") and Plaintiff Boilermakers National

15   Annuity Trust ("Boilermakers") bring this action on their own behalf and on behalf of a putative

16   class of individuals and entities who purchased interests in certain Washington Mutual Mortgage

17   Pass-Through Trusts ("Issuing Trusts").  (¶ 1.)  Plaintiffs purchased mortgage-backed securities

18   created by Washington Mutual Bank subsidiaries from 75,608 "mainly sub-prime first-lien

19   hybrid adjustable rate" mortgage loans.  (¶¶ 5-6.)  The securities entitled purchasers to the

20   proceeds of payments made on the underlying mortgages: "[a]s the original borrowers on each of

21   the underlying mortgage loans paid their mortgages, distributions were made to investors

22   through the Issuing Trusts in accordance with the terms of the Offering Documents governing

23   the issuance of the Certificates."  (¶ 7.)

24
         _____

25   [1] Unless otherwise noted, all references to the Complaint and all "¶" citations refer to the Second
     Amended Complaint

26   [2] The Court's summary of the Plaintiffs' allegations shall not be construed as an indication that any
     facts alleged have been established in fact.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 2                CASE NO. C09-00037MJP

1    Washington Mutual Bank ("WMB"), which is no longer a named Defendant in this

2    matter, either originated or acquired the mortgage loans underlying the Certificates. (¶ 23.)

3    Defendant Washington Mutual Asset Acceptance Corporation ("WMAAC"), a wholly-owned

4    subsidiary of Washington Mutual, Inc., purchased the mortgage loans from WMB and assigned

5    the mortgage loans to the trustee. (¶ 24.) WMAAC filed two Registration Statements pertinent

6    to the securities in this Complaint: (1) a December 2005 Form S-3, subsequently amended by a

7    January 2006 Form S-3/A (together "the 2006 Registration Statement") and (2) a March 2007

8    Form S-3, as subsequently amended by an April 2007 Form S-3/A (together "the 2007

9    Registration Statement"). (¶ 25.) Defendant WaMu Capital Corporation ("WCC"), another

10   wholly-owned subsidiary of Washington Mutual, Inc., underwrote the offerings and "assisted in

11   drafting and disseminating the Offering Documents for the Offerings of Certificates" issued

12   pursuant to the Registration Statements. (¶¶ 37-39.) Plaintiffs refer to WMB, WMAAC, and

13   WCC collectively as "WaMu." (¶ 5.)

14        Defendants David Beck, Diane Novak, Thomas Green, Rolland Jurgens, Richard

15   Careaga, Thoams, Lehmann, Stephen Fortunato, and Donald Wilhelm are officers of WMAAC

16   who signed the Registration Statements. (¶¶ 4, 27-36.) Plaintiffs name Moody's Investors

17   Services, Inc. ("Moody's") and McGraw Hill Companies, Inc. ("McGraw-Hill") (together

18   "Rating Agencies") as Defendants for their role in providing credit ratings to the certificates

19   which were published in the Prospectus Supplements. (¶¶ 4, 11, 42-43.)

20        Unlike dividends issued to holders of common stock, the cash flow from mortgage-

21   backed securities ("MBS") is distributed "in order of priority, based on the specific tranche held

22   by the MBS investor." (¶ 45.) Thus, "[t]he highest tranche . . . is first to receive its share of the

23   mortgage proceeds and is also the last to absorb any losses should mortgage borrowers become

24   delinquent or default on their mortgages." (Id.) Plaintiffs allege Defendants made a number of

25   misrepresentations with respect to certificates issued in 36 public offerings between January 26,

26   2006 and June 26, 2007. (¶ 2.) Defendants amended the Registration Statements with

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 3                    CASE NO. C09-00037MJP

1    Certificate-specific Prospectus Supplements, which describe the mortgage pool underlying each

2    trust. (¶¶ 61-62.)

3                                          Discussion

4    I.      Legal Standards

5           On a Rule 12(b)(6) motion to dismiss, the Court must assess the viability of the

6    Complaint. Dismissal is appropriate where a complaint fails to allege "enough facts to state a

7    claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

8    (2007). The Supreme Court has recently clarified that "[a] claim has facial plausibility when the

9    plaintiff plead factual content that allows the court to draw the reasonable inference that the

10   defendant is liable for the conduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see

11   also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a

12   complaint to survive a motion to dismiss, the non-conclusory 'factual content;' and reasonable

13   inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to

14   relief.") (citing Iqbal, 129 S. Ct. at 1949). The Court must accept Plaintiffs' factual allegations

15   as true, but need not accord the same deference to legal conclusions. Id. at 1949-150 (citing

16   Twombly, 550 U.S. at 555). To the extent documents referenced in a complaint contradict a

17   plaintiff's conclusory allegations, the Court is not required to accept those allegations as true.

18   Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

19          Under a facial challenge to jurisdiction under Rule 12(b)(1), the Court's analysis mirrors its

20   Rule 12(b)(6) inquiry. See James Wm. Moore, et al., Moore's Federal Practice § 12.30[4]; see

21   also Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2204) (distinguishing

22   between facial and factual challenges).

23   II.     Request for Judicial Notice

24          When deciding a motion to dismiss, the court "may generally consider only allegations

25   contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

26   judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). A court may

1    consider "a writing referenced in the complaint but not explicitly incorporated therein" if a claim

2    necessarily relies on the document and there is no dispute as to authenticity.  Id.  A court may

3    take judicial notice of public documents filed with the SEC.  Dreiling v. American Express Co.,

4    458 F.2d 942, 946 n.2 (9th Cir. 2006).

5         The WaMu Defendants seek judicial notice of (1) certain SEC filings (Dkt. No. 171

6    ("RJN"), Exs. 1-6, 21-22, 25), (2) the Mortgage Loan Purchase and Sale Agreement (id., Ex. 23),

7    (3) summaries and supporting data related to the delinquency rates of the loans (id., Exs. 7, 8),

8    and (4) a number of press releases, newspaper articles, and reports (id., Exs. 9-19).  Plaintiffs do

9    not distinguish among the exhibits and object the Court taking judicial notice of any document.

10   (Dkt. No. 177 at 14 n.5.)  The Court GRANTS the request as to the SEC filings, which are

11   referenced in the complaint, but DENIES the request as to the remainder of the documents,

12   which do not bear on the Court's analysis.

13   III.    Sections 11 and 12(a)(2)

14        a.    Standing under Section 11

15        The WaMu Defendants challenge Plaintiffs' standing to bring § 11 and § 12(a)(2) claims

16   with respect to a number of the certificates.  Because the standard for standing differs under each

17   statute, the Court analyzes standing as to these claims separately.  To establish standing under

18   § 11, a plaintiff must allege "they purchased shares either (1) directly in the public offering for

19   which the misleading registration statement was filed or (2) traceable to that public offering."

20   Guenther v. Cooper Life Sciences, Inc., 759 F. Supp. 1437, 1439 (N.D. Cal. 1990); see also 15

21   U.S.C. § 77k(a).  This Court has previously observed that named plaintiffs who purchased

22   certain types of notes lacked standing to pursue § 11 claims for other related notes which they

23   did not purchase.  See In re Washingon Mutual Securities Litig., 694 F. Supp. 2d 1192, 1220

24   (W.D. Wash. 2009); In re Wells Fargo Mortgage-Backed Certificates Litig., ___ F. Supp. 2d.

25   ___, 2010 WL 1661534, at *4 (N.D. Cal. April 22, 2010) (same); accord, Casey v. Lewis, 4 F.3d

26   1516, 1519 (9th Cir. 1993) ("At least one named plaintiff must satisfy the actual injury

Case5:09-cv-01376-LHK   Document287   Filed10/01/10   Page12 of 24
Case5:09-cv-01376-LHK   Document286-1   Filed10/01/10   Page7 of 19
Case 2:09-cv-00037-MJP   Document 195   Filed 09/28/10   Page 6 of 18

1  component of standing in order to seek relief on behalf of himself or the class.") (emphasis in

2  original).

3  　　Doral Bank alleges it purchased WaMu Mortgage-Pass Through Certificates, Series

4  2006-AR17, 2006-AR18, 2007-OA4, and 2007-OA5 and WMALT Series 2007-OA5. (¶ 20.)

5  Chicago PABF purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR5, 2006-

6  AR12, 2006-AR16, 2007-HY1, and 2006-HY1. (¶ 21.) Boilermakers purchased WaMu

7  Mortgage-Pass Through Certificates, Series 2006-AR7. (¶ 22.) Plaintiffs do not allege they

8  purchased any of the following certificates identified in the complaint: 2006-AR1, 2006-AR2,

9  2006-AR3, 2006-AR4, 2006-AR6, 2006-AR8, 2006-AR9, 2006-AR10, 2006-AR11, 2006-

10  AR13, 2006-AR14, 2006-AR15, 2006-AR19, 2006-HY2, 2006-HY3, 2006-HY4, 2006-HY5,

11  2006-HY6, 2006-HY7, 2006-OA6, WMALT 2007-OC1, WMALT 2007-OC2, WMALT 2007-1,

12  WMALT 2007-2, and WMALT 2007-3. (See ¶¶ 38-39; Dkt. No. 170, Appx. B.)

13  　　Plaintiffs, relying primarily on In re Countrywide Financial Corp. Sec. Litig., 588

14  F. Supp. 2d 1132, 1166 (C.D. Cal. 2008), argue they have standing to sue on behalf of the class

15  because all the certificates were issued pursuant to either the 2006 or 2007 Registration

16  Statements. (Dkt. No. 177 at 17; see also Dkt. No. 191 (notice of supplemental authority).) The

17  Court is not persuaded to adopt Plaintiffs' expansive view of standing. Unlike the scenario in

18  Countrywide, Plaintiffs here allege that certain statements in the supplemental prospectuses are

19  materially misleading. (See ¶ 61.) In instances where the misstatements extend beyond the shelf

20  registration materials, it is difficult to adopt the rationale that the common misstatements suffice

21  for standing. Plaintiffs lack standing to sue for losses related to the 25 certificates for which they

22  have failed to identify a purchaser.

23  　　Plaintiffs also urge the Court to defer ruling on the issue of standing because the issue is

24  "premature to raise on a motion to dismiss." (Dkt. No. 177 at 15.) Plaintiffs' argument and

25  selective quotation of authority invites this Court to commit error. The courts in Global Crossing

26  Ltd. Sec. Litig., 313 F. Supp. 2d 189, 204-05 (S.D.N.Y 2003), and Hevesi v. Citigroup, Inc., 366

1   F.3d 70, 82 (2d Cir. 2004), were contrasting the standing of the lead plaintiffs with that of the

2   named plaintiffs. Thus, those courts contemplated revisiting the issue of standing in the context

3   of a Rule 23 typicality and adequacy of representation analysis. See Global Crossing, 313 F.

4   Supp. 2d at 205 ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs

5   who have standing to represent the various potential subclasses of plaintiff who may be

6   determined, at the class certification stage, to have distinct interests or claims.") In this case,

7   Plaintiffs have not identified any named plaintiff who purchased 25 of the Certificates cited in

8   the Complaint. Without any purchaser who suffered a loss, plaintiffs cannot identify an injury in

9   fact traceable to the offering as required for Article III standing. See In re Lehman Brothers Sec.

10  and ERISA Litig., 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010). Because Plaintiffs have not

11  alleged an injury in fact for the purposes of those certificates, the issue is properly addressed on a

12  motion to dismiss.

13          b.      Standing under Section 12(a)(2)

14          Standing under Section 12(a)(2) is more restrictive than under Section 11. Section 12

15  "permits suit against a seller of a security by prospectus only by 'the person purchasing such

16  security from him,' thus specifying that a plaintiff must have purchased the security directly

17  from the issuer of the prospectus." Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1081 (9th

18  Cir. 1999). This Court has previously held that simply alleging a purchase was "traceable to" a

19  particular offering is insufficient to confer standing under Section 12. WaMu II, 694 F. Supp. 2d

20  at 1226; see also In re Scottish Re Group Sec. Litig., 524 F. Supp. 2d 370, 399 (S.D.N.Y. 2007)

21  (Plaintiffs' allegations that (1) underwriters sold securities as part of an offering and (2)

22  "plaintiffs acquired securities in the Offerings" were sufficient).

23          Plaintiffs allege they purchased certificates "pursuant to" the offending Registration

24  Statements and subsequent Prospectus Supplements. (¶¶ 20-22.) In their response brief,

25  Plaintiffs submit: "[t]he Complaint alleges that WCC sold the Certificates as part of the

26  Offerings, and that Plaintiffs acquired the Certificates sold as part of those Offerings." (Dkt. No.

1   177 at 19.)  However, an allegation that a plaintiff acquired certificates that had been—at some

2   point in time—sold in an Offering is different from an allegation a plaintiff purchased certificates

3   as part of an Offering.  As the Court in <u>Nomura</u> recognized, "[i]f plaintiffs did in fact purchase

4   the Certificates directly from the defendants, they should have said so." <u>Plumbers' Union Local</u>

5   <u>No. 12 Pension v. Nomura Asset Acceptance Corp.</u>, 658 F. Supp.2d 299, 305 (D. Mass. 2009).

6   Plaintiffs' § 12 claims are dismissed for lack of standing.

7         c.      <u>Misrepresentation</u>

8         Section 11 creates a private right of action for purchasers of a security when an issuer's

9   coordinate registration statement includes "an untrue statement of a material fact or omit[s] to

10  state a material fact required to be stated . . . to make the statements therein not misleading." 15

11  U.S.C. § 77k(a).  To prevail on a § 11 claim, "a plaintiff must prove '(1) that the registration

12  statement contained an omission or misrepresentation, and (2) that the omission or

13  misrepresentation was material, that is, it would have mislead a reasonable investor about the

14  nature of his or her investment.'" <u>Rubke v. Capitol Bancorp, Ltd.</u>, 551 F.3d 1156, 1161 (9th Cir.

15  2009) (quoting <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006, 1027 (9th Cir. 2005)).  Similarly, § 12(a)(2)

16  imposes liability "on parties who sell securities with a false or misleading prospectus." <u>In re</u>

17  <u>Worlds of Wonder Sec. Litig.</u>, 35 F.3d 1407, 1423 (9th Cir. 1994).  The standard for § 12

18  materiality is the same as under § 11. <u>Id.</u> at 1424.

19        "[W]hether a public statement is misleading, or whether adverse facts were adequately

20  disclosed is a mixed question to be decided by the trier of fact." <u>Fecht v. Price Co.</u>, 70 F.3d

21  1078, 1081 (9th Cir. 1995).  Thus, the court may only determine the issue of materiality as a

22  matter of law where "the statement is so obvious that reasonable minds could not differ." <u>Id.</u>

23  (internal quotations omitted).

24        Following a familiar refrain, Plaintiffs allege the offering documents were materially

25  misleading because (1) they misinformed investors about the nature of the mortgage loans'

26  underwriting guidelines (¶¶136-149); (2) they failed to disclose the risks associated with the

1  mortgage loan appraisals and misstated the loan-to-value ratios of the mortgages (¶¶ 150-159;

2  165-167), and (3) the prospectus supplements misstated the certificates' true credit ratings

3  (¶¶168-171).  The Court analyzes each in turn.

> 1.  <u>Underwriting Guidelines</u>

5      In <u>Wells Fargo</u>, the court denied dismissal of a complaint alleging improper deviations

6  from underwriting guidelines where "plaintiffs allege[d] that the Offering Documents were

7  misleading as to the extent to which Wells Fargo and the third-party originators deviated from

8  their guidelines." 2010 WL 1661534, at *11; <u>see also</u> <u>Tsereteli</u>, 692 F. Supp. 2d at 392-93

9  (declining to dismiss complaint where plaintiffs alleged (1) abandonment of underwriting

10  guidelines and (2) a dramatic rise in defaulting loans).  In contrast, the court in <u>Nomura</u>

11  dismissed a complaint based on deviations from underwriting standards in the issuance of MBS

12  certificates when a "fusillade of cautionary statements" muted plaintiffs' claim they were not on

13  notice of soft underwriting standards.  658 F. Supp. 2d at 307.

14      The Registration Statements provide:

15      The mortgage loan seller's underwriting standards are intended to evaluate a
       prospective mortgagor's credit standing and repayment ability, and the value and
16      adequacy of the proposed mortgage property as collateral.  In the loan application
       process, prospective mortgagors generally will be required to provide information
17      regarding such factors as their assets, liabilities, income, credit history,
       employment history and other related items....
18

19  (¶ 138.)  Plaintiffs allege such statements are misleading because WaMu pressured appraisers

20  into overstating the value of the properties, made no attempt to confirm underwriting standards

21  for third party issuers, and did not investigate the validity of appraisal values of a sufficient

22  number of loans prior to securitization.  (¶ 139.)  The Prospectus Supplements stated:

23      The sponsor's underwriting guidelines [and Washington Mutual Bank's
       underwriting guidelines] generally are intended to evaluate the prospective
24      borrower's credit standing and repayment ability and the value and adequacy of
       the mortgaged property as collateral.
25

26

1    (¶ 143.)  Plaintiffs allege these statements are misleading because WaMu failed to verify the

2    information contained in borrowers' mortgage loan applications, and ignored adverse

3    information about the borrowers.  (¶144.)  Defendants urge dismissal because the Prospectus

4    Supplements included warnings about a number of other documentation programs used to

5    evaluate mortgage loan applications.  (Dkt. No. 170 at 16; RJN, Ex. 3 at S-28.)  Even under these

6    alternative documentation programs, the Supplements indicated "exceptions to the sponsor's

7    loan program parameters may be made on a case-by-case basis if competing factors are present."

8    (RJN, Ex. 3 at S-30.)  The Prospectus Supplements identify the number of "full documentation"

9    and "reduced documentation" loans in each Certificate pool.  (RJN, Ex. 4 at S-111.)

10        Plaintiffs' underwriting allegations survive dismissal because the statements may be

11   misleading if they mask the extent to which the sponsor's underwriting guidelines were

12   disregarded.  In essence, Plaintiffs allege the underwriting guidelines ceased to exist.  If proven

13   true, the absence of underwriting standards could make the identified statements misleading.

14   The Court denies Defendants' motion to dismiss the underwriting guidelines.

15            2.      Appraisal/LTV ratio Allegations

16        In Tsereteli, the court dismissed allegations based on faulty appraisal practices reasoning

17   that "neither an appraisal nor a judgment that a property's value supports a particular loan

18   amount is a statement of fact."  692 F. Supp. 2d at 393 (Plaintiffs failed to allege the speaker did

19   not have the opinion at the time he made the statement appraisals were conducted "in accordance

20   with the Uniform Standards of Practice.").  In contrast, the Wells Fargo court denied dismissal of

21   appraisal and LTV allegations where Plaintiffs supported their claims with numerous statements

22   from confidential witnesses that included estimates about the degree to which LTV ratios were

23   inaccurate for the Wells Fargo.  2010 WL 1661534, at *11-12.

24        Plaintiffs have not alleged actionable misrepresentations based on appraisals or loan-to-

25   value ratios.  Plaintiffs allege the statement that appraisals were completed in accordance with

26   the Uniform Standards of Professional Appraisal Practice was misleading because LTV ratios

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 10              CASE NO. C09-00037MJP

1   were manipulated to meet certain targets.   (¶¶ 60-61.)  Plaintiffs' allegations on this issue are

2   simply too conclusory.  For instance, the near wholesale reliance on the New York Attorney

3   General's complaint against eAppraiseIT offers no nexus to the Certificates at issue here.  (¶¶

4   61-84.)  The Court is left to assume there is an identity between these loans and the ones at issue

5   in the eAppraiseIT complaint, even though the NYAG complaint focuses on events that post-date

6   the vast majority of these offerings.  (Dkt. No. 170 at 23.)  Though Plaintiffs offer some

7   appraisal values from reviews completed, they do not allege that the differences in valuation

8   have any connection with any loan underlying the securities here.  Thus, unlike the complaint in

9   Wells Fargo, Plaintiffs have not substantiated their conclusory allegations with facts suggesting a

10   viable claim.  The appraisal and coordinate LTV ratio allegations must be dismissed.

11          3.      Credit Ratings

12          Plaintiffs' credit ratings allegations are similarly insufficient.  Plaintiffs allege the

13   offering documents were misleading because the ratings were based on outdated models.  (¶¶ 15-

14   16, 105-113.)  However, Plaintiffs fail to allege facts that would make this a material omission.

15   Other courts have held that there is no duty to disclose the methods used by agencies in

16   developing a rating.  Tsereteli, 2010 WL 816623, at *5.  The mere fact that the ratings would

17   have been different under a different methodology is insufficient to state a claim.

18          Further, Plaintiffs allege that WaMu failed to disclose the Ratings Agencies' conflicts of

19   interests.  (¶¶ 91-97.)  However, "the risk that the rating agencies operated under a conflict of

20   interest because they were paid by the issuers had been known publicly for years."  In re Lehman

21   Bros Sec. and ERISA Litig., 684 F. Supp. 2d 485, 492 (S.D.N.Y. 2010).  Thus, because

22   reasonable investors knew that the rating agencies were paid by the issuers, the alleged

23   misstatement is immaterial.  Id.

24          The Court dismisses the credit ratings allegations.

25          4.      Purchase and Sale Agreements

26

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 11          CASE NO. C09-00037MJP

1    Defendants claim the Purchase and Sale agreements shield them from liability because it

2    provided that purchasers' sole remedy is the obligation to repurchase the certificates or substitute

3    the mortgage loans in the trust. (Dkt. No. 170 at 33; RJN, Ex. 25.)  In Lone Star Fund V

4    (U.S.) L.P. v. Barclays Bank PLC, the Fifth Circuit held plaintiffs could not advance

5    misrepresentation claims based on statement "that there were no delinquent loans in the BR2 and

6    BR3 trusts" when the prospectuses provided the defendant would substitute performing

7    mortgages in the trusts.  594 F.3d 383, 388-90 (5th Cir. 2010).  The Lone Star Court reasoned the

8    "repurchase or substitute clauses change[d] the nature of [defendant's] representation."  Id. at

9    390.

10    Unlike the scenario in Lone Star, Plaintiffs allegations are not simply based on a

11    representation about the absence of delinquent loans.  As set forth above, Plaintiffs allege

12    misstatements and omissions regarding underwriting guidelines.  The purchase and sale

13    agreements thus cannot shield Defendants from liability at the pleadings stage.

14         5.    Economic Loss

15    Defendants urge dismissal because Plaintiffs do not allege they have failed to receive an

16    income stream from the Certificates and, as such, have failed to allege an economic loss.  (Dkt.

17    No. 170 at 35.)  The Court declines to dismiss the Complaint on this basis.

18    Plaintiffs allege the "delinquency, foreclosure, repossession, and bankruptcy rates for all the

19    collateral underlying the Certificates—arising from defective collateral and faulty origination

20    practices—triggered unprecedented downgrades of the Certificates' credit ratings by the Rating

21    Agencies and attendant declines in the value of the Certificates." (¶¶ 191, 211.)  Section 11

22    allows damages for "the difference between the amount paid for the security . . . and . . . the

23    value thereof as of the time such suit was brought."  Here, Plaintiffs allegations of loss give rise

24    to the inference that the value of the security is much less than the purchase price.  The mere fact

25    that Plaintiffs may have difficulty substantiating the exact nature of their loss in an illiquid

26    market does not necessitate dismissal.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 12                    CASE NO. C09-00037MJP

### 6.   Risk Disclosures

Defendants argue all claims must be dismissed because the prospectus documents contained numerous risk disclosures.  The two cases on which Defendants rely, In re Convergent Techs. Sec. Litig., 948 F.2d 507 (9thCir. 1991), and Worlds of Wonder, 35 F.3d at 1420-21, affirmed rulings granting summary judgment based on the sufficiency of risk disclosures.  The Court declines to analyze the sufficiency of the disclosures at the pleadings stage.  As the Ninth Circuit cautioned in Fecht: "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact."  70 F.3d at 1081.

### d.   Control Persons—Section 15 Claims

The Court grants Defendants' motion to dismiss the Section 15 claims as to the Individual Defendants.  Section 15 of the Securities Act provides that "[e]very person who … controls any person liable under [Sections 11 or 12 of the Securities Act] shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 77o.  To state a claim for control person liability, a plaintiff must allege: (1) a primary violation of securities law; and (2) that the defendant exercised control over the primary violator.  See In re Washington Mutual Sec. Litig., 259 F.R.D. 490, 508-09 (W.D. Wash. 2009) (citing Howard v. Everex. Sys., 228 F.3d 1057, 1065 (9th Cir. 2000)).  Control means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405; see also Howard, 228 F.3d at 1065 n.9.

Plaintiffs simply allege the Individual Defendants were either officers or directors of WMAAC and that they signed the Registration Statements.  (¶¶ 27-34.)  Based on nothing more, Plaintiffs claim each of the Individual Defendants are control persons "by virtue of his or her control, ownership, offices, [or] directorship."  (¶ 205.)  Such allegations, alone, are insufficient to state a claim.  First, making blanket allegations about the Individual Defendants makes no

1   sense when the Defendants apparently held different positions. In other words, Plaintiffs should

2   have substantiated their allegations about the Individual Defendants with individualized facts.

3   Second, the allegations are entirely circular and couched as conclusions of law. Plaintiffs allege

4   the Individual Defendants are control persons "by virtue of his or her control." This offers no

5   factual content that would establish a plausible claim.

6       The Court also dismisses the Section 15 claims as to WCC. In opposition to Defendants'

7   motion on the issue, Plaintiffs cite paragraphs 55-60 and 82-84 from the Complaint. (Dkt. No.

8   177 at 35.) Tellingly, none of those paragraphs reference WCC. Instead, they refer to WMB or

9   WaMu (as a way of referencing WMB, WMAAC, and WCC). (See ¶ 5.) But Plaintiffs cannot

10  plead control person liability simply through the use of shorthand. Plaintiffs have not alleged

11  facts giving rise to WCC's status as a control person. The Section 15 claims must be dismissed.

12      e.   Inquiry Notice—Doral Bank Claims

13      Defendants claim Doral Bank's claims are barred by the statute of limitations because

14  Plaintiffs were on notice as of the August 20, 2008 complaint in In re WaMu. (Dkt. No. 170 at

15  40.) Under 15 U.S.C. § 77m, the statute of limitations for Securities Act claims is "one year

16  after the discovery of the untrue statement or the omissions, or after such discovery should have

17  been by the exercise of reasonable diligence." An amendment adding a plaintiff "relates back to

18  the date of the original pleading only when: 1) the original complaint gave defendant adequate

19  notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly

20  prejudice the defendant; and 3) there is an identity of interests between the original and newly

21  proposed plaintiff." In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996) (no relation

22  back where new plaintiffs bought securities at different values and after different disclosures);

23  see also In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09-civ-2137, 2010

24  U.S. Dist. LEXIS 84146, at *22 (S.D.N.Y Aug. 17, 2010) ("Inquiry notice exists where

25  sufficient facts would suggest to a plaintiff of normal intelligence that wrongdoing is

26  probable, not merely possible.").

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 14                    CASE NO. C09-00037MJP

1    The original complaint in this action was filed on August 1, 2008. Doral Bank filed its

2  complaint on October 30, 2009. (C09-1557; Dkt. No. 1.) Plaintiffs argue that the two cases

3  involved different securities and, thus, Doral could not have been on inquiry notice. (Dkt. No.

4  177 at 38.) Plaintiffs cannot, however, ignore their own allegations. Plaintiffs' allegations are

5  based on substantially identical statements in the Offering Documents and focus almost

6  exclusively on the shelf Registration documents. If these allegations are sufficient to state a

7  claim as to the earlier Certificates, they must also be sufficient to put other holders of WaMu

8  certificates on notice of underwriting and appraisal issues. (See Dkt. No. 187 at 22.) The Court

9  therefore dismisses claims to the extent they include the following Certificates: WaMu 2007-

10  OA4, WaMu 2007-OA5, and WMALT-OA5.

11        f.    Time Barred Appraisal Claims

12    The Court dismisses Plaintiffs appraisal allegations as to a number of the Certificates

13  because they are time barred. Plaintiffs' appraisal allegations are predicated upon the NY

14  Attorney General's complaint against First American and eAppraiseIT, which was filed on

15  November 1, 2007. (See ¶¶ 64-84.) A number of plaintiffs filed their appraisal allegations more

16  than a year after the NYAG's complaint. (See Dkt. No. 170 at 42 (Chicago PABF on March 16,

17  2009, Doral Bank on October 30, 2009, and Boilermakers on January 12, 2009).)

18    These claims were not equitably tolled by the filing of the New Orleans Action. In

19  American Pipe & Const. Co. v. Utah, the Supreme Court held that "the commencement of a class

20  action suspends the applicable statute of limitations as to all asserted members of the class who

21  would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538,

22  554 (1974). Courts since American Pipe have found that the statute of limitations does not toll

23  for putative class actions whose named plaintiff lacks standing to advance claims in the first

24  place. See Walters v. Edgar, 163 F.3d 430, 432 (7th Cir. 1998); Palmer v. Stassinos, 236 F.R.D.

25  46, 465-66 and n.6 (N.D. Cal. 2006) ("It is one thing to toll a period of limitations because of the

26  discretionary act of one judge seeking to manage his or her docket in an efficient manner, but it

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 15          CASE NO. C09-00037MJP

1   would be beyond the constitutional power of a federal court to toll a period of limitations based

2   on a claim that failed because the claimant had no power to bring it.")  Because there are no

3   allegations the New Orleans plaintiffs had standing to assert the appraisal claims on behalf of

4   Chicago PABF, Doral Bank, or Boilermakers, the only surviving certificates with coordinate

5   appraisal allegations are 2006-AR2, AR14, AR 16, AR18, 2007-HY2, HY4.  (See New Orleans

6   Complaint ¶¶ 16, 17.)

7   IV.    Rating Agencies' Motion

8          The Rating Agencies move for dismissal of the § 15 claims against them because (1)

9   Plaintiffs' failed to identify a primary violation by the Issuing Trusts, (2) Plaintiffs failed to set

10  forth sufficient allegations of "control" against the Agencies, and (3) Plaintiffs' claims are time-

11  barred. (Dkt. No. 168.)  In response, Plaintiffs concede that WMAAC—and not the Issuing

12  Trusts—should have been identified as the entity allegedly under the Rating Agencies' control.

13  (Dkt. No. 178 at 7.)  Plaintiffs seek leave to amend their complaint "for the sole purpose of

14  correcting their misidentification of the 'issuer' that was the controlled entity" and maintain

15  amendment is appropriate because "the core supporting factual allegations" about the Rating

16  Agencies' control remain unchanged. (Dkt. No. 190 at 2.)   Because amendment would be futile,

17  the Court DENIES the motion to amend and GRANTS the Rating Agency's motion to dismiss.

18         As set forth above, to sustain a Section 15 claim, a plaintiff must allege: (1) a primary

19  violation of securities law; and (2) that the defendant exercised control over the primary violator.

20  Whether an individual is a "control person" is "an intensely factual question, involving scrutiny

21  of the defendant's participation in the day-to-day affairs the corporation and the defendant's

22  power to control corporate actions."  Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994); see

23  also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162 (9th Cir. 1996)

24  ("As the definition suggests, our inquiry must revolve around the "management and policies" of

25  the corporation, not around discrete transactions.").  The Lehman Bros. court dismissed § 15

26  claims against rating agencies where plaintiffs alleged they "largely determined which loans

Case5:09-cv-01376-LHK   Document287   Filed10/01/10   Page23 of 24

Case5:09-cv-01376-LHK   Document286-1   Filed10/01/10   Page18 of 19
Case 2:09-cv-00037-MJP   Document 195   Filed 09/28/10   Page 17 of 18

1   were to be included in the securitization, the amount and form of credit enhancement for each

2   Certificate and the Certificate structure before they were actually engaged by Lehman. . . ." In

3   re Lehman Bros. Sec. and ERISA Litig., 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010).  That court

4   reasoned plaintiffs allegations fell "considerably short of anything that could justify a reasonable

5   trier of fact in concluding that the decision making power lay entirely with the Rating Agencies."

6   Id. at 501.

7        Plaintiffs allege the Rating Agencies "determined the structure and credit support for

8   each of the Issuing Trusts [or WMAAC] which purportedly justified the ratings." (¶¶ 11, 42,

9   43.)  Plaintiffs further cite to a 2009 report from a Congressional oversight panel that suggests

10  certain agencies enabled and validated the decision-making behind the flawed mortgage-backed

11  securities market.  (¶ 97.)  Plaintiffs describe the methods the Rating Agencies used to rate the

12  Certificates.  (¶¶ 124-129.)  Even if the Court were to allow Plaintiffs to substitute WMAAC for

13  the Issuing Trusts, Plaintiffs' allegations are insufficient for the purposes of control person

14  liability.  Plaintiffs' allegations simply do not implicate WMAAC's management or policies, nor

15  do they suggest the ability to be involved in any day-to-day activities.

16       Indeed, Plaintiffs' allegations regarding the Rating Agencies' "ratings shopping" plainly

17  contradict any claim that the Rating Agencies controlled WMAAC.  The complaint suggests it

18  was the arrangers who "pressured" the Rating Agencies to reduce credit enhancement levels.

19  (¶ 94.)  WaMu purportedly "leveraged" the Rating Agencies of one another in order "to obtain

20  the most profitable structure—to WaMu—on the Offerings." (¶¶ 114- 120.)  Read as a whole,

21  Plaintiffs' allegations regarding the Rating Agencies' control person liability simply fail to state

22  a claim.  Because Plaintiffs have failed to present a viable alternative Third Amended Complaint,

23  the Court's dismissal as to the Rating Agencies should be with prejudice.  In light of the

24  insufficiency of the allegations, the Court need not reach the question of whether the claims are

25  time-barred.

26  \\

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 17          CASE NO. C09-00037MJP

Case5:09-cv-01376-LHK   Document287   Filed10/01/10   Page24 of 24
Case5:09-cv-01376-LHK   Document286-1   Filed10/01/10   Page19 of 19
Case 2:09-cv-00037-MJP   Document 195   Filed 09/28/10   Page 18 of 18

Conclusion

First, Plaintiffs lack standing to sue for losses related to the 25 certificates for which they have failed to identify a purchaser. The Court GRANTS the motions to dismiss these claims. Second, the Court GRANTS the motions to dismiss Plaintiffs' § 12 claims for lack of standing. Third, the Court rules on Plaintiffs' § 11 claims as follows: (1) Plaintiffs' underwriting allegations survive dismissal and the Court DENIES the motions on this issue; (2) the Court GRANTS the motions to dismiss Plaintiffs' § 11 misrepresentations claims based on appraisals or loan-to-value ratios; and (3) the Court GRANTS the motions to dismiss Plaintiffs' § 11 credit ratings allegations. Fourth, the Court DENIES the motions to dismiss as to the arguments that the purchase and sale agreements shield Defendants from liability, that economic loss is not sufficiently alleged, and that the prospectuses contained numerous risk disclosures. Fifth, the Court GRANTS Defendants' motion to dismiss the Section 15 claims against the Individual Defendants and WCC. Sixth, the Court GRANTS Defendants' motions to dismiss Doral Banks' claims to the extent they include the following Certificates: WaMu 2007-OA4, WaMu 2007-OA5, and WMALT-OA5. Seventh, the Court GRANTS the motions to dismiss on statute of limitation grounds as to Plaintiffs' appraisal allegations, except as to certain certificates. Eighth, because amendment would be futile, the Court DENIES Plaintiffs' motion to amend, and GRANTS the Rating Agencies' motion to dismiss the Section 15 claims against them.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 28th day of September, 2010.

Marsha J. Pechman
United States District Judge