**E-Filed 10/05/2010**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In Re WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION

Case No.: 09-CV-01376-LHK

ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO DEFENDANTS' MOTION TO DISMISS

On September 7, 2010, the Court heard oral argument on the Motions to Dismiss brought by Wells Fargo.[1] Based on the parties' arguments and the papers submitted, the Court GRANTS-IN-PART and DENIES-IN-PART Wells Fargo's Motion.

**I.    BACKGROUND**

This putative class action was initially filed on March 27, 2009, in a complaint styled *General Retirement System of the City of Detroit v. The Wells Fargo Mortgage Backed Securities 2006-AR18 Trust, et al.*, No. 09-CV-1376 ("*Detroit*"). Another action bringing overlapping and related claims, titled *New Orleans Employees' Retirement System v. Wells Fargo Asset Securities Corp., et al.*, No. 09-CV-01620 ("*New Orleans*"), was filed April 13, 2009. Judge Illston (to whom this case was previously assigned) consolidated these two cases and granted lead plaintiff status to the Louisiana Sheriffs' Pension and Relief Fund, Alameda County Employees' Retirement

---

[1] Wells Fargo Bank, its parent company Wells Fargo & Co., and the individual Defendants.

1

Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Association, New Orleans Employees' Retirement System, and the Government of Guam Retirement Fund, on July 16, 2009. Lead Plaintiffs filed a Consolidated Complaint on August 31, 2009. Generally, the Consolidated Complaint alleged violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) based on sales of mortgage pass-through certificates ("Certificates") sold through fifty-four separate offerings ("Offerings"). Defendants moved to dismiss the Consolidated Complaint on a number of grounds. On April 22, 2010, Judge Illston granted-in-part and denied-in-part defendants' motions. The April 22, 2010 Order provides factual background on the nature of the claims brought in the Consolidated Complaint. The Court will not re-state this background here. *See* Dkt. No. 198 (April 22, 2010 Order) at 1-3.

Judge Illston found that the plaintiffs had stated claims under Sections 11 and 15 of the Securities Act of 1933. Plaintiffs' claims under Section 12(a)(2) of the Securities Act were dismissed, with leave to amend to meet Section 12's "require[ment that] a plaintiff . . . plead and prove that it purchased a security directly from the issuer as part of the initial offering, rather than in the secondary market." Dkt. No. 198 (April 22, 2010 Order) at 8; 15 U.S.C. § 77l(a)(2). On May, 28, 2010, Plaintiffs filed an Amended Consolidated Complaint (ACC). Dkt. No. 203. Wells Fargo moved to dismiss. *See* Dkt. No. 214 (Wells Fargo Defendants' Motion to Dismiss the Amended Consolidated Complaint, "Wells Fargo MTD").

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable

2

Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**III. DISCUSSION**

Wells Fargo moves to dismiss based in part on Plaintiffs' amended claims, and in part on grounds that could have been raised in the previous motions to dismiss (meaning, these arguments relate to and attempt to dismiss some of the claims that Judge Illston sustained, based on arguments not previously made).

### a. Standing Regarding 12(a)(2) Claims

In the Consolidated Complaint, plaintiffs attempted to state a claim for violation of Section 12(a)(2) by alleging that they "purchased or otherwise acquired Certificates pursuant and/or traceable to the defective Prospectuses." As noted above, Judge Illston dismissed these claims, finding that Section 12(a)(2) requires that a purchase be made directly from the issuer of the prospectus, and during the IPO. *See Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999) (noting, in distinguishing Section 11 claims, that Section 12 gives rise to claims against the "issuer of the prospectus" when the purchase is made "at the time of the original offer") (internal citations omitted). Plaintiffs were given leave to amend their pleadings to allege, if they could, that the Offerings were "purchased . . . directly from the issuer *as part of the initial offering*, rather than in the secondary market." Dkt. No. 198 (April 22, 2010 Order) at 8 (emphasis added).

In the ACC, Plaintiffs amended their allegations to say that they purchased certain Certificates "directly from the listed Underwriter." Dkt. No. 203 (ACC) ¶¶ 15, 19. However, Plaintiffs still fail to state that these purchases were made at the IPO. Plaintiffs argue that there is no requirement under Section 12(a)(2) that a purchase be made at the initial offering, so long as it is made from the issuer of a prospectus. However, Plaintiffs cite no authority in support of this contention. Contrary to Plaintiffs' argument, the Ninth Circuit has plainly distinguished claims under Section 11 and Section 12 based on Section 12's requirements that purchases be made both directly from the issuer and "at the time of the original offer." *Hertzberg*, 191 F.3d at 1081. In

3
Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

fact, cases that Plaintiffs rely upon elsewhere indicate that purchase in an IPO is required to state a Section 12(a)(2) claim. *See In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 454 (S.D.N.Y. 2005) (discussing dismissal of 12(b)(2) claims because "none of the named plaintiffs purchased shares of Flag in the company's IPO"). Plaintiffs argue that even if purchase in the IPO is a requirement, "the prospectus supplement dates and the purchase dates make clear which purchases were either in the initial offering, or directly from the Underwriter Defendant soon thereafter." In fact, few of the prospectus supplement dates coincide with the purchase dates. In some cases, the dates are a month or more apart. *See*, *e.g.*, ACC ¶ 15 (showing "Prospectus Supplement Date" of June 29, 2006, and a purchase date of October 23, 2006, for Certificates in the 2006-AR10 Offering).

Wells Fargo notes that the Underwriters can sell Certificates in the secondary market, so that purchase from an Underwriter does not necessarily imply purchase at an IPO. Plaintiffs presented no argument on this point in their written Opposition, and at the hearing simply contended that this is a factual dispute precluding dismissal. Plaintiffs were given leave to amend, with specific guidance regarding the required elements, and failed to comply. Given Judge Illston's clear instruction that plaintiffs were to allege purchases in the IPO, the Court declines to infer this element based on the dates referenced in the ACC. To the contrary, Plaintiffs' silence on this point suggests that they cannot allege purchases in the IPOs for the relevant Offerings. Accordingly, their 12(a)(2) claims are hereby DISMISSED WITH PREJUDICE.

### b. Failure to State a Claim Regarding Appraisals, Ratings, and LTV Ratios

The Plaintiffs claim that the Offering Documents contain material misstatements regarding the appraisal values and the loan-to-value (LTV) ratios of the properties mortgaged by the underlying loans, and the ratings given to the Certificates. Specifically, Plaintiffs claim that the appraised value of the properties was inflated, which in turn skewed the LTV ratios, and that the ratings were unjustifiably high and did not reflect the true risk of the investments. *See* ACC ¶¶ 86-117. Wells Fargo moves to eliminate these bases for Plaintiffs' claims on the basis that ratings, appraisals and loan-to-value (LTV) ratios are opinions, and as such, are actionable only if they are

4

1   alleged to be knowingly false. *Rubke v. Capitol Bancorp LTD*, 551 F.3d 1156, 1162 (9th Cir.

2   2009), *citing Virginia Bankshares*, *Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991). Because

3   Plaintiffs have not alleged that Wells Fargo, the appraisers or the rating agencies knew that these

4   opinions were false, Wells Fargo argues, Plaintiffs have failed to state a claim based on statements

5   about ratings, appraisals, or LTV ratios in the Offering Documents.

6         Plaintiffs' first response is that it has alleged purely factual misstatements regarding

7   appraisals, ratings, and LTV ratios, and that Wells Fargo is strictly liable for any such material

8   misstatements in the Offering Documents. *Herman & Maclean v. Huddleston*, 459 U.S. 375, 382

9   (U.S. 1983) ("Liability against the issuer of a security is virtually absolute, even for innocent

10  misstatements."). Due to this strict liability, Plaintiffs argue they should not be required to show

11  that Wells Fargo or anyone else knew these statements were false or misleading at the time they

12  were made.

13        Plaintiffs point to three purely factual alleged misstatements regarding appraisals, ratings

14  and LTV ratios. First, regarding ratings, Plaintiffs cite statements in the Offering Documents that

15  "ratings addressed the likelihood of the receipt . . . of principal and interest" and "the nature of the

16  underlying mortgage loans." Plaintiffs argue that the ratings did not actually address these things

17  because they were based on faulty information. Although Plaintiffs allege facts tending to show

18  that the ratings were not accurate in their assessment of the underlying loans, the statements

19  Plaintiffs identify do not describe the accuracy of these ratings. They simply state the ratings'

20  subject matter. Because Plaintiffs have not alleged facts to support that the ratings did not actually

21  address the likelihood of the receipt of principal and interest, or the nature of the underlying loans,

22  these cannot support a Section 11 claim based on inaccurate ratings.

23        Second, regarding appraisals, Plaintiffs argue that the Offering Documents "contained

24  statements that the originators evaluated the adequacy of the mortgage property as collateral."

25  However, this would qualify as a purely factual misstatement only if Plaintiffs alleged facts

26  showing that the originators made no evaluations at all. While Plaintiffs allege facts showing that

27  Wells Fargo pressured appraisers to inflate appraisal values, they do not allege that evaluations

28

5

Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    were completely foregone.  Therefore, like the statements regarding ratings, these allegations are

2    insufficient to state a claim under Section 11.

3          Third and finally, Plaintiffs argue that statements in the Offering Documents that

4    "appraisals were conducted in conformity with USPAP" are purely factual, material misstatements

5    sufficient to state a Section 11 claim.  The ACC, however, does not cite any mention of the USPAP

6    in the Offering Documents.  Therefore, this claim must fail as well.

7          Although Plaintiffs assert that appraisals, ratings and LTV ratios themselves are not

8    opinions, they do not provide support for this argument.  In the ACC, the Plaintiffs state that an

9    appraisal must be "independent and accurate" and that an accurate appraisal is "necessary to

10   determine the likely price at which the foreclosed property can be sold."  ACC ¶ 45.  They also

11   state that "[a]n accurate appraisal is also critical to calculating the [LTV] ratio, which is a financial

12   metric commonly used to evaluate the price and risk of MBS and mortgage pass-through

13   certificates."  ACC ¶ 46.  Regarding ratings, the Plaintiffs allege that they are "supposed to reflect

14   an unbiased assessment of risk associated with a particular investment instrument."  ACC ¶ 50.

15   According to Plaintiffs' own contentions, these metrics are meant to evaluate the present and future

16   value of a property or investment, based on an independent and unbiased assessment and

17   conclusion.  The Court concludes that appraisals, ratings and LTV ratios are statements of opinion.

18   A number of other courts have reached the same conclusion.  *See*, *e.g.*, *New Jersey Carpenters*

19   *Health Fund v. Residential Capital, LLC*, No. 08 Civ 5653(PAC), 2010 WL 1257528 at \*6

20   (S.D.N.Y. March 29, 2010); *Tsereteli v. Residential Asset Securitization Trust*, 692 F. Supp. 2d

21   387, 393 (S.D.N.Y. 2010).

22         Plaintiffs' second argument is that, even if appraisals, ratings and LTV ratios are opinions,

23   they are not subject to the "knowing falsity" standard set by *Rubke* and *Virginia Bankshares*.

24   Instead, Plaintiffs argue that opinions are actionable if "there is no reasonable basis" for the belief,

25   or "the speaker is aware of undisclosed facts tending to seriously undermine the accuracy of the

26   statement."  *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113-14 (9th Cir. 1989).  Plaintiffs

27   argue that the ACC adequately sets out facts showing that Wells Fargo had no reasonable basis to

28   believe that the appraisals, ratings and LTV ratios were accurate.  However, the *Virginia*

6

*Bankshares* and *Rubke* decisions post-date *Apple Computer*, and set a more stringent standard for statements of opinion. In *Rubke*, the Ninth Circuit held that "misleading opinions, not statements of fact . . . can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading." *Rubke*, 551 F.3d 1156 at 1162-62. The Court concludes that the appraisals, ratings and LTV ratios are statements of opinion, and as such, are subject to the *Virginia Bankshares/Rubke* pleading standard.

Plaintiffs have alleged some facts tending to show that Wells Fargo intentionally manipulated the appraisal process in order to inflate the appraisals, which in turn undermined the accuracy of the ratings and LTV ratios (because ratings and LTV ratios depend, in part, on appraisal information). However, Plaintiffs have failed to directly allege that Wells Fargo knew the appraisals, ratings, and LTV ratios were false or misleading. The Court rejects Wells Fargo's argument that Plaintiffs must allege that the appraisers and the rating agencies as well as Wells Fargo knew these opinions were incorrect. In light of the allegations that Wells Fargo manipulated the appraisal process, Plaintiffs need only adequately allege that Wells Fargo knew that these opinions were false or misleading to state a claim. *See Rubke*, 551 F.3d 1156 at 1162-62 (holding that the defendant that issued the registration statement, not necessarily the party whose opinion was quoted, must be alleged to have known the opinion was false or misleading to state a Section 11 claim).

Because Wells Fargo failed to raise this argument in its first Motion to Dismiss, the Court DISMISSES Plaintiffs' claims based on false or misleading appraisals, ratings, and LTV ratios and GRANTS Plaintiffs leave to amend to meet the *Rubke* standard.

    **c. One-Year Statute of Limitations**

Wells Fargo argues that Plaintiffs have failed to meet their burden to plead compliance with the one-year statute of limitations for Section 11 claims. The 1933 Act requires that suit must be brought "within one year of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. Defendants argue that the ACC "lacks any facts demonstrating compliance with the statute of limitations," and rely on *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985). Here, the Ninth Circuit held that a plaintiff

7
Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1  "must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the

2  statute of limitations." In *Toombs*, the plaintiff brought claims under Section 12(1), alleging that

3  the securities he purchased were improperly unregistered. *Toombs*, 777 F.2d at 468. He made no

4  allegations whatsoever about his diligence in discovering the basis for his claims. *Id*. Due to the

5  nature of his allegations, the basis for his cause of action would have been apparent from the

6  security documents themselves. *Id*. Therefore, it was assumed that he became aware of his cause

7  of action when the securities were delivered. Because he brought suit more than one year later, his

8  claims were found to be time-barred. *Id*. In a recent decision, the Ninth Circuit has expressed

9  doubt about *Toombs*. *See Johnson v. Aljian*, 490 F.3d 778, 783 (9th Cir. Cal. 2007) (describing the

10 discussion of the pleading requirement in *Toombs* as a "disapproved pleading rule" that "*may*

11 survive in this circuit with respect to Section 12.") (emphasis added).

12 Contrary to Wells Fargo's contention, and unlike the *Toombs* plaintiff, the Plaintiffs here

13 allege that they could not have known of their claims before May 20, 2008, when they say "those

14 Certificates initially rated 'A' or higher" first were downgraded to a rating below investment-level.

15 ACC ¶ 104. The first *Detroit* and *New Orleans* complaints were filed within a year of this date.

16 Therefore, the Court finds that the Plaintiffs have met their burden under *Toombs* to plead facts

17 "demonstrating conformity" with the statute of limitations.

18 In their first Motion to Dismiss, Wells Fargo argued the Plaintiffs should have known about

19 their claims prior to one year before the filing of the *Detroit* complaint, based on public

20 information. In rejecting this claim, Judge Illston relied on cases reviewing the notice standard for

21 both Section 10(b) claims and Section 11 claims. *See*, *e.g.*, *In re Charles Schwab Corp. Sec. Litig.*,

22 257 F.R.D. 534, 557 (N.D. Cal. 2009) (finding that Section 11 claims should only be dismissed on

23 statute of limitations grounds if notice to the plaintiff is the 'inference most naturally derived' from

24 the allegations in the complaint); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1209-10 (9th Cir. 1982)

25 (discussing difficulty of winning summary judgment on statute of limitations grounds, given the

26 fact-intensive nature of the inquiry). Wells Fargo subsequently moved for leave to seek

27 reconsideration on the ground that Judge Illston's Order applied an incorrect standard relating only

28 to Section 10(b), and urging that the Court follow the *Toombs* decision. *See* Dkt. No. 199. In light

8
Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

of the Ninth Circuit's later comments regarding *Toombs*, and the fact that the *Toombs* plaintiff pled *no* facts regarding diligence, the Court finds that *Toombs* does not change the analysis. Judge Illston previously found that "the parties' competing contentions [regarding when the Plaintiffs were or should have been on notice of their claims] present a factual dispute that must be resolved by the trier of fact." Wells Fargo has presented nothing to change this conclusion.[2] Accordingly, Wells Fargo's Motion to Dismiss all of Plaintiffs' claims for failure to plead compliance with the one-year statute of limitations is DENIED.

### d. Claims Based on American Home-Originated Loans in the 2006-3, 2006-4, 2007-10, and 2007-13 Trusts

In addition to claims that Wells Fargo misstated its own underwriting standards in the Offering Documents, Plaintiffs allege that the documents contain material misstatements regarding the underwriting practices of third party loan originators. *See* ACC ¶¶ 82-85. Wells Fargo contends that it should not be liable for any *omissions* regarding the underwriting practices of third parties, because Section 1111 of Regulation AB only requires that offering documents disclose "changes in the underwriting criteria and 'the extent to which such policies and criteria are or could be overridden,' and only 'to the extent known.'" Wells Fargo MTD at 11. Thus, Wells Fargo argues that it cannot be liable for omitting material information regarding the underwriting practices of third parties unless Plaintiffs allege that Wells Fargo knew the omitted information. *Id*. Defendants, however, are subject to strict liability for *misstatements* in the Offering

---

[2] At the hearing on the instant motion, Wells Fargo announced that it had filed, the same day, a Request for Judicial Notice of a complaint in another securities class action filed March 26, 2008 (Case No. 08-CV-01713, *Plumbers' & Pipefitters' Local #562 et al. v. J.P. Morgan Acceptance Corp. et al.* ("*J.P. Morgan*"). *See* Dkt. No. 256. Wells Fargo asked that the Court consider this complaint as evidence that the Plaintiffs knew or should have known of their claims more than one year before the *Detroit* complaint was filed. The Court grants the request for judicial notice, as the complaint is a public document. However, the certificates and offering documents at issue in the *J.P. Morgan* case were not issued by Wells Fargo, and are not the source of alleged misstatements and omissions in this case. The general allegations that Wells Fargo was becoming "increasingly aggressive in its mortgage lending practices in 2006," contained in two paragraphs of the *J.P. Morgan* complaint, add nothing to the extensive record of public information Wells Fargo previously submitted in support of its earlier Motion to Dismiss. *See*, *e.g.*, April 22, 2010 Order at 9. Judge Illston previously found that this information was insufficient to show, at the pleading stage, that Plaintiffs were or should have been on notice of their claims more than one year before the filing of the *Detroit* complaint. The Court finds that this additional information does not change the analysis.

9

Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Documents. *Herman & Maclean*, 459 U.S at 382 ("Liability against the issuer of a security is virtually absolute, even for innocent misstatements.").

As Judge Illston previously held, the Plaintiffs have alleged misstatements (not simply omissions) regarding the underwriting practices of both Wells Fargo and third party originators. April 22, 2010 Order at 15. For example, the ACC identifies the following from the Offering Documents:

> In order to qualify for participation in Wells Fargo Bank's mortgage loan purchase programs, lending institutions must . . . evaluate each loan offered to Wells Fargo Bank for consistency with Wells Fargo Bank's underwriting guidelines or the standards of a pool insurer and represent that each loan was underwritten in accordance with Wells Fargo Bank standards or the standards of a pool insurer . . . .
>
> [Certain percentages of the loans] were originated in conformity with the underwriting standards of certain third party originators. These underwriting standards may differ significantly from the Underwriting Standards and are less stringent than the Underwriting Standards in [certain] areas . . ."

ACC ¶¶ 64, 82.

As Judge Illston found, "Plaintiffs' allegation is that the Offering Documents failed to disclose that variance from the stated standards was essentially defendants' norm. In other words, plaintiffs allege that the Offering Documents were misleading as to the extent to which Wells Fargo and the third-party originators deviated from their guidelines." April 22, 2010 Order at 15.

Section 1111 does not alter Defendants' obligations under the 1933 Act, which imposes strict liability for material misstatements. The cases Defendants cite in support of their argument relate to failure to report "known trends," a requirement imposed by Item 303 of SEC Regulation S-K (not at issue here). These cases simply hold that plaintiffs must allege that the trends are known in order to state a claim based on omission of a known trend. Because these cases relate to omission of "known trends," rather than misstatements of material information, they miss the point. *Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F.Supp.2d 532, 545 (S.D.N.Y. 2009) (dismissing claims based on omissions of known trends because plaintiffs failed to allege that defendant knew of the trends); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008) (same).

As the Plaintiffs point out, other district courts have found allegations similar to the Plaintiffs' sufficient to state a Section 11 claim based on misstatements. These cases refute Wells Fargo's contention that Section 1111 alters Defendants' strict liability for misstatements in Offering Documents. *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 494 (S.D.N.Y. 2010) ("As this claim relies on Section 11 of the Securities Act, and not Section 10(b) of the Securities Exchange Act or Rule 10b-5, the Individual Defendants' knowledge is immaterial. They are strictly liable for any misstatements in the Offering Documents that they signed unless they can establish the due diligence defense, an issue inappropriate for consideration on a motion to dismiss.").

Taking Plaintiffs' allegations as true, as the Court must do at this stage, this Court agrees with Judge Illston's previous determination that Plaintiffs have adequately stated a claim based on misstatements in the Offering Documents regarding the underwriting practices of third party originators such as American Home. Accordingly, Defendants' motion to dismiss the claims based on such misstatements is DENIED.

### e. Failure to Show Cognizable Loss

Wells Fargo Defendants moved to dismiss two of the ten revived Offerings, the 2006-AR16 and the 2007-13 trusts, based on New Plaintiffs' failure to show that they suffered a loss by investing in those securities. In opposition, plaintiffs pointed out that as to the 2007-13 Trust, named Plaintiff the Southern Pennsylvania Transportation Authority (SEPTA) had suffered a loss upon selling the Certificates. However, Plaintiffs conceded that a "nominal gain" of just over $4,000 was realized when the Public Employees' Retirement System of Mississippi (MissPERS) sold its 2006-AR16 Certificates. In their Reply, the Defendants appear to concede that a cognizable loss was suffered by Plaintiff SEPTA as to the 2007-13 Certificate, leaving only Plaintiff MissPERS' the 2006-AR16 Certificate at issue.

Plaintiffs are entitled to recover damages in the amount of "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and . . . the price at which such security shall have been disposed of in the market before suit . . . ." 15 USC § 77k. Although MissPERS realized a *net* gain in its sale of the 2006-AR16

11
Case No.: 09-CV-01376-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Certificates, it has alleged facts sufficient to show that it purchased over $1M in this security at a par value of $100.12, and sold them two days later at a value of $100.08, thus suffering a loss for those Certificates. The Court finds that this alleged loss meets the definition of damages in the Securities Act of 1933. Defendants have cited no authority for their contention that the Court should view only the net gain or loss versus the gain or loss on particular shares. Accordingly, the Court finds the alleged damages sufficient to state a claim, and Wells Fargo's motion to dismiss this claim is DENIED.

## IV. CONCLUSION

Accordingly, Plaintiffs' Section 12(a)(2) claims are hereby DISMISSED with prejudice. Plaintiffs' claims based on false or misleading appraisals, ratings, and LTV ratios are hereby DISMISSED with leave to amend. Wells Fargo's other requests are DENIED.

**IT IS SO ORDERED.**

Dated: October 5, 2010

_____
LUCY H. KOH
United States District Judge