1    Reed R. Kathrein (139304)
     Peter E. Borkon (212596)
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     715 Hearst Ave., Suite 202
3    Berkeley, CA  94710
     Telephone: (510) 725-3000
4    Facsimile:  (510) 725-3001
     reed@hbsslaw.com
5    peterb@hbsslaw.com

6    Steve W. Berman
     Sean R. Matt
7    Karl P. Barth
     HAGENS BERMAN SOBOL SHAPIRO LLP
8    1918 Eighth Avenue, Suite 3300
     Seattle, WA  98101
9    Telephone: (206) 623-7292
     Facsimile:  (206) 623-0594
10    steve@hbsslaw.com
     sean@hbsslaw.com
11    karlb@hbsslaw.com

12    Joseph W. Cotchett (363241)
     Nanci Nishimura (152621)
13    Mark C. Molumphy (#168009)
     Matthew K. Edling (#250940)
14    COTCHETT, PITRE & McCARTHY
     San Francisco Airport Office Center
15    840 Malcolm Road, Suite 200
     Burlingame, CA  94010
16    Telephone:  (650) 697-6000

17    *Counsel for Plaintiff First Star Bank*

18            UNITED STATES DISTRICT COURT

19      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| 20   IN RE WELLS FARGO MORTGAGE-<br>BACKED CERTIFICATES LITIGATION<br>21 | No. 09-cv-01376-LHK<br>CONSOLIDATED CLASS ACTION<br>ECF |
| 22 | FIRST STAR BANK'S<br>MEMORANDUM IN RESPONSE TO |
| 23   This Document Relates To: | THE COURT'S TENTATIVE ORDER<br>GRANTING UNDERWRITER |
| 24   *First Star Bank v. The Wells Fargo Mortgage-<br>Backed Securities 2006 AR15 Trust, et al.,* | DEFENDANTS' MOTION TO DISMISS |
| 25   No. 10-cv-3508-LHK | Date:  October 7, 2010<br>Time:  1:30 p.m. |
| 26 | Courtroom:  4<br>Judge:  Hon. Lucy H. Koh |
| 27 | |

28

## I.   INTRODUCTION

First Star Bank, Plaintiff in the related action *First Star Bank v. The Wells Fargo Mortgage Backed Securities 2006-AR15 Trust*, Civil Action No. 10-CV-03508-LHK, submits this memorandum in response to the Court's Tentative Order Granting Underwriter Defendants' Motion to Dismiss (Dkt. No. 289) (the "Tentative Order"). The Tentative Order recognizes that it "will likely be dispositive of claims asserted in other matters in which plaintiffs have relied upon tolling from this case to establish that their claims are timely" and cites, among other litigation, the *First Star Bank* case. Tentative Order at 1.

The Court invited First Star Bank to argue the tolling issue at the hearing scheduled for October 7, 2010. Tentative Order at 2. Although the Court has considered some submissions related to the tolling issue, Tentative Order at 2 & n.2, First Star Bank has not had an opportunity to brief it. Accordingly, First Star Bank requests that the Court consider this brief submission.

The Tentative Order essentially immunizes the very Wall Street firms that brought us the world-wide financial crisis and the securities at issue here: Goldman, Sachs & Co., JP Morgan Securities, Inc., Bear, Stearns & Co., Inc., Deutche Bank Securities, Inc., UBS Securities, LLC, Credit Suisse Securities (USA) LLC, RBS Securities, Inc., Bank of America Securities, LLC, Citigroup Global Markets, Inc., and Merrill Lynch, Pierce, Fenner & Smith, Inc. (the "Wall Street Defendants"). The Wall Street Defendants, as underwriters, all played a pivotal role in the creation, packaging, distribution and marketing of the toxic Wells Fargo mortgage-backed securities. These securities would not have been sold but for the efforts of the Wall Street Defendants, which included making misrepresentations in the offering materials.

First Star Bank respectfully urges the Court to reconsider its Tentative Order and issue a revised final order finding that the statute of limitations tolled for all 54 "Offerings" included in the complaint filed April 13, 2009 in *New Orleans Employees' Retirement System v. Wells Fargo Asset Securities Corp., et al.*, No. 09-CV-01620 ("*New Orleans*"). We believe that the Tentative Order errs in two fundamental respects.

First, the Tentative Order conflicts with the lead-plaintiff provisions of the Public Securities

FIRST STAR BANK'S MEM. IN RESPONSE TO
TENTATIVE ORDER GRANTING UNDERWRITER
DEFS. MOTION TO DISMISS - 09-cv-01376-LHK
010194-11   399442 v1

- 1 -

1   Litigation Reform Act ("PSLRA"), which deter a plaintiff like First Star Bank from filing until it is

2   clear that the lead plaintiff cannot prosecute its claim.  Until such time as the lead plaintiff loses

3   authority to prosecute claims, the lead plaintiff "is empowered to control the management of the

4   litigation as a whole," and other plaintiffs are not permitted to bring overlapping claims.  *See, e.g.,*

5   *In re Bank of Am. Corp. Sec. Derivative and ERISA Litig.*, 2010 U.S. Dist. LEXIS 37799, at *6

6   (S.D.N.Y. Apr. 9, 2010).  First Star Bank was thus precluded from bringing class claims until May

7   28, 2010, after the Court dismissed claims relating to the 2006-AR15 Certificates and the lead

8   plaintiffs did not include those claims in their Amended Consolidated Complaint.

9        Second, the Tentative Order contravenes *American Pipe & Constr. Co. v. Utah*, 414 U.S.

10   538 (1974), and its progeny and ignores persuasive authority.  *American Pipe* held that absent class

11   members need not be clairvoyant and successfully anticipate that claims may be dismissed or class

12   certification may be denied.  *Id.* at 553-54.  Absent class members are entitled to rely on the

13   complaint until it is clear that they no longer can, and they should not be called upon to be experts

14   in the law of standing.  Indeed, courts have found adequate standing when one plaintiff purchases

15   one security and sues on behalf of related securities.  *E.g., In re Countrywide Fin. Corp. Sec. Litig.*,

16   588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008).  Courts have also found that tolling applies even

17   when the initial plaintiffs lacked standing.  *See, e.g., Catholic Soc. Servs. v. INS*, 232 F.3d 1139,

18   1149 (9th Cir. 2000) (en banc); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096-97 (3d Cir.

19   1975); *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 2002 U.S. Dist. LEXIS 18116, at

20   *12 (S.D.N.Y. Sept. 25, 2002); *California Pub. Employees Ret. Sys. v. Chubb Corp.*, 2002 U.S.

21   Dist. LEXIS 27189, at *83-93 (D.N.J. June 26, 2002).

22                                    II.        ARGUMENT

23   A.     The Tentative Order Conflicts With The PSLRA Lead-Plaintiff Provisions And Judge
             Illston's Lead-Plaintiff Order

24        The PSLRA requires a plaintiff to publish notice upon filing a complaint alleging a class

25   action under the federal securities laws.  The notice must advise of the pendency of the action and

26   state that, "not later than 60 days after the date on which the notice is published, any member of the

27   purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C.

28

1 §§ 77z-1(a)(3)(A)(i).  The court must then evaluate those motions and select the plaintiff or

2 plaintiffs "that the court determines to be most capable of adequately representing the interests of

3 class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In making that determination, the court decides,

4 among other things, which plaintiff has the largest financial interest in the relief sought.  15 U.S.C.

5 § 78u-4(a)(3)(B)(iii); *see also* Dkt. No. 124 at 11 (describing statutory process for appointing lead

6 plaintiffs).

7 　　　The April 14, 2009 notice issued by the *New Orleans* plaintiffs made clear that the

8 Certificates purchased by First Star Bank, 2006-AR15, were covered by the complaint:

9 　　　　　Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") today
　　announced the filing of a class action lawsuit in the United States
10 　　District Court for the Northern District of California on behalf of
　　New Orleans Employees' Retirement System and similarly situated
11 　　purchasers of Wells Fargo Asset Securities Corporation Mortgage
　　Pass-Through Certificates pursuant and/or traceable to the false and
12 　　misleading July 29, 2005 Registration Statement and Prospectus
　　Supplements, October 20, 2005 Registration Statement and
13 　　Prospectus Supplements or the false and misleading September 27,
　　2006 Registration Statement and Prospectus Supplements
14 　　(collectively, the "Certificates").  [Dkt. No. 53-2.]

15 The *New Orleans* complaint filed on April 14, 2009 expressly referenced and included the 2006-

16 AR15 Certificates.  *See* Case No. 09-cv-1620, Dkt. No. 1.

17 　　　After multiple lead-plaintiff motions were filed, on July 16, 2009, the Court made the "New

18 Orleans Public Funds group" lead plaintiff.  The Court found that the New Orleans Public Funds

19 group was presumptively the most adequate plaintiff and had the largest financial interest in the

20 relief sought (they had purchased Certificates with a face value of over $34.5 million).  Dkt. No.

21 124 at 12.  Until such time as the lead plaintiff loses authority to prosecute claims, the lead plaintiff

22 "is empowered to control the management of the litigation as a whole," and other plaintiffs are not

23 permitted to bring overlapping claims.  *See, e.g., In re Bank of Am. Corp. Sec. Derivative and*

24 *ERISA Litig.*, 2010 U.S. Dist. LEXIS 37799, at *6.

25 　　　First Star Bank, having purchased $900,000 worth of Certificates, could not have been

26 appointed lead plaintiff.  And once the *New Orleans* group became lead plaintiff and until their

27 claims relating to the 2006-AR15 Certificates were dismissed, First Star Bank could not have

28

1   brought a class action, the only effective means of obtaining legal representation.  Thus, the

2   Tentative Order conflicts with the PSLRA provisions and with Judge Illston's order appointing the

3   *New Orleans* plaintiffs to direct the case.

4   **B.      The Tentative Order Conflicts With *American Pipe***

5          The Tentative Order also conflicts with *American Pipe* itself.  As the Court has recognized,

6   a policy rationale underpinning *American Pipe* was the Supreme Court's "concern that a failure to

7   toll claims after certification has been denied would induce individuals to file duplicative suits (or

8   risk giving up their claims) in situations where class certification is difficult to predict."  Tentative

9   Order at 6 (citing *American Pipe*, 414 U.S. at 554).  In the words of the Supreme Court, a contrary

10  rule would eviscerate the purpose of Rule 23:

11              A contrary rule allowing participation only by those potential
                members of the class who had earlier filed motions to intervene in
12              the suit would deprive Rule 23 class actions of the efficiency and
                economy of litigation which is a principal purpose of the procedure.
13              Potential class members would be induced to file protective motions
                to intervene or to join in the event that a class was later found
14              unsuitable.  In cases such as this one, where the determination to
                disallow the class action was made upon considerations that may
15              vary with such subtle factors as experience with prior similar
                litigation or the current status of a court's docket, . . . ***a rule
16              requiring successful  anticipation of the determination of the
                viability of the class would breed needless duplication of motions***.
17              We are convinced that the rule most consistent with federal class
                action procedure must be that the commencement of a class action
18              suspends the applicable statute of limitations as to all asserted
                members of the class who would have been parties had the suit been
19              permitted to continue as a class action.

20  *American Pipe*, 414 U.S. at 553-54 (footnotes omitted) (emphasis added); *see also Yang v. Odom*,

21  392 F.3d 97, 111 (3d Cir. 2004) (forcing others to file duplicative protective actions in order to

22  preserve their rights "runs counter to the policy behind Rule 23 and, indeed, to the reasoning

23  employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal*").

24         Yet, the Tentative Order creates precisely the rule that *American Pipe* warned against:  a

25  rule requiring all Certificate holders to file suit or intervene in anticipation that the lead plaintiffs

26  may not have standing or otherwise meet the requirements of Rule 23.  If this is the law, docket

27  chaos will result as would-be class plaintiffs flood the court with interventions in contravention of

28

*American Pipe* (and, in securities class actions, contrary to the PSLRA).

The Tentative Order finds that *American Pipe* does not apply because it purportedly did not address lack of standing. Tentative Order at 4. Yet *American Pipe* did not limit its holding in such a manner. The court held "that in this posture, ***at least*** where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute . . . ." 414 U.S. at 552-53 (emphasis added). Indeed, the Supreme Court would later apply *American Pipe* tolling in a case where class certification had been denied because the proposed class representatives did not have claims typical of those of the class and were inadequate representatives, in addition to a lack of numerosity. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349-50 (1983) (holding that *American Pipe* was not limited to would-be intervenors but also applied to plaintiffs filing separate cases). And other courts would apply *American Pipe* tolling where other case deficiencies were found. *E.g., Catholic Soc. Servs. v. INS*, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc) (class narrowed for reasons unrelated to Rule 23 certification).

**C.      There Is No Clear Consensus Precluding Claims Related To Common Registration Statements Or That Lack Of Standing Precludes Tolling**

The Tentative Order finds that other plaintiffs "had no reason to rely on the filing of the *Detroit* and *New Orleans* complaints to protect their claims" because "review of these complaints would have revealed that the plaintiffs in the *Detroit* and *New Orleans* actions lacked standing to bring claims as to many identified Certificates." Tentative Order at 6. We respectfully submit that this finding is incorrect.

First and as discussed above, the 37 dismissed Offerings ***were*** included in the *New Orleans* complaint and covered by the *New Orleans* PSLRA notice. Thus, as provided by *American Pipe*, First Star Bank and all other members of the putative class were entitled to rely upon that complaint, especially Certificate holders like First Star Bank which had a much smaller financial stake in the outcome. In the words of the *Flag Telecom* court, such plaintiffs "would probably have concluded that [they] had little chance of becoming lead plaintiff" after the initial plaintiff, who appears to have invested a substantial amount of capital," filed his original complaint. *In re*

FIRST STAR BANK'S MEM. IN RESPONSE TO
TENTATIVE ORDER GRANTING UNDERWRITER
DEFS. MOTION TO DISMISS - 09-cv-01376-LHK
010194-11  399442 v1

- 5 -

1    *Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 456 (S.D.N.Y. 2005).  Indeed, other

2    plaintiffs are afforded the protection of the pending suit, ***even if they were unaware of it***:

> [N]o different a standard should apply to those members of the class
> who did not rely upon the commencement of the class action (or who
> were even unaware that such a suit existed) and thus cannot claim
> that they refrained from bringing timely motions for individual
> intervention or joinder because of a belief that their interests would
> be represented in the class suit. . . .  Rule 23 is not designed to afford
> class action representation only to those who are active participants
> in or even aware of the proceedings in the suit prior to the order that
> the suit shall or shall not proceed as a class action.  During the
> pendency of the District Court's determination in this regard, . . .
> potential class members are mere passive beneficiaries of the action
> brought in their behalf.  Not until the existence and limits of the class
> have been established and notice of membership has been sent does a
> class member have any duty to take note of the suit or to exercise any
> responsibility with respect to it in order to profit from the eventual
> outcome of the case.  It follows that even as to asserted class
> members who were unaware of the proceedings brought in their
> interest or who demonstrably did not rely on the institution of those
> proceedings, the later running of the applicable statute of limitations
> does not bar participation in the class action and in its ultimate
> judgment.

14   *American Pipe*, 414 U.S. at 551-52 (footnotes omitted).

15        Second, putative class members like First Star Bank – had they even reviewed the *Detroit*

16   and *New Orleans* complaints and been sophisticated enough to make independent standing

17   determinations (and there is no record evidence demonstrating that ***any*** putative class member had

18   that ability) – would not have readily concluded that the plaintiffs lacked standing to bring claims

19   related to the Certificates identified in the complaints but not purchased by the plaintiffs.  For

20   example, in *Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008), the court

21   held that purchasers of securities based on an initial shelf registration statement could serve as

22   representatives for purchasers from other offerings as long as "(1) the securities are traceable to the

23   same initial shelf registration and (2) the registration statements share common 'parts' that (3) were

24   false and misleading at each effective date."  *Id.* at 1166.  That is the case here, where the

25   Certificates, including the 2006-AR15 Certificates, were issued pursuant to the false and

26   misleading October 20, 2005 Registration Statement and Prospectus and Prospectus Supplements

27   dated September 20, 2006 and September 22, 2006, respectively.  The Court here found that the

28

1    Lead Plaintiffs have standing to pursue claims related to many of the Offerings, Dkt. No. 198, and,

2    on the force of *Countrywide*, it could just as easily have found standing to pursue claims relating to

3    the related Certificates.

4         While there are district court opinions contra to *Countrywide*, many of them were decided

5    very recently and well after the *Detroit* and *New Orleans* actions were filed.  *E.g., In re IndyMac*

6    *Mortgage-Backed Sec. Litig.*, 2010 U.S. Dist. LEXIS 61458 (S.D.N.Y. June 21, 2010); *Public*

7    *Employees Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 2010 U.S. Dist. LEXIS 53047 (S.D.N.Y.

8    June 1, 2010); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc.*, 703

9    F. Supp. 2d 253 (E.D.N.Y. Apr. 6, 2010).  The law remains unsettled, and no appellate court has

10   addressed the issue in the context of related mortgage-backed securities issues.

11        Third, it is far from established law that lack of standing precludes tolling under the

12   circumstances presented here.  Courts have found that tolling applies even when the initial

13   plaintiffs did not have proper standing.  *See, e.g., Catholic Soc. Servs. v. INS*, 232 F.3d at 1149

14   (*American Pipe* tolling applied where original claims dismissed on ripeness grounds); *Haas v.*

15   *Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096-97 (3d Cir. 1975) (*American Pipe* tolling applied to

16   the addition of a new plaintiff where the initial plaintiff lacked standing); *In re Issuer Plaintiff*

17   *Initial Pub. Offering Antitrust Litig.*, 2002 U.S. Dist. LEXIS 18116, *12 (S.D.N.Y. Sept. 25, 2002)

18   (*American Pipe* tolling applied in a second class action because "a 'definitive' determination of

19   class certification" was not reached in the first action, as "[t]he sole reason for dismissal of the First

20   Action related to the standing of the plaintiffs."); *California Pub. Employees Ret. Sys. v. Chubb*

21   *Corp.*, 2002 U.S. Dist. LEXIS 27189, at *83-93 (D.N.J. June 26, 2002) (limitations period tolled

22   for new plaintiff when original class plaintiff lacked standing), *aff'd*, 394 F.3d 126 (3d Cir. 2004).

23        The Tentative Order does not acknowledge *Chubb* and *Issuer Plaintiff*.  It attempts to

24   distinguish *Haas* and *Catholic Social Services* as involving "special circumstances," Tentative

25   Order at 6, but we respectfully disagree.  Both opinions followed prior decisions finding a lack of

26   standing, exactly as occurred here.  The Tentative Order cites *Lierboe v. State Farm Mut. Auto. Ins.*

27   *Co.*, 350 F.3d 1018 (9th Cir. 2003), and *Walters v. Edgar*, 163 F.3d 430 (7th Cir. 1998), but those

28

FIRST STAR BANK'S MEM. IN RESPONSE TO
TENTATIVE ORDER GRANTING UNDERWRITER                    - 7 -
DEFS. MOTION TO DISMISS - 09-cv-01376-LHK
010194-11  399442 v1

1    decisions were not securities class actions subject to the PSLRA and did not consider or discuss

2    *American Pipe* tolling.

3            In light of these circumstances, it would be unfair to punish First Star Bank and similarly

4    situated plaintiffs for failing to anticipate that the Court would definitively find that the *New*

5    *Orleans* plaintiffs lacked standing to assert claims relating to the 2006-AR15 Certificates and that,

6    as a result, the statute of limitations would not be tolled.

7                               **III.    CONCLUSION**

8            The notice published by the *New Orleans* plaintiffs listed each Certificate that was the

9    subject of the suit, as required by the PSLRA.  The 2006-AR15 Certificates were included.  The

10   PSLRA and *American Pipe* gave First Star Bank and other 2006-AR15 Certificate holders the right

11   to rely on that complaint until if and when the Court ruled otherwise.  First Star Bank then filed its

12   own action to protect its interests and those of the other 2006-AR15 Certificate holders when it

13   became clear that the Lead Plaintiffs could not.  Thus, First Star Bank did exactly what *American*

14   *Pipe* told it to do.

15           For these reasons and those set forth above, the Court should issue a revised order denying

16   the Wall Street Defendants' motion to dismiss and finding that the statute of limitations tolled for

17   all 54 "Offerings" identified in the *New Orleans* complaint, including the 2006-AR15 Certificates.

18   DATED:  October 6, 2010.

19                                   HAGENS BERMAN SOBOL SHAPIRO LLP

20

21                                   _____/s/ Steve W. Berman_____
                                     Steve W. Berman
22                                   Sean R. Matt
                                     Karl P. Barth
23                                   1918 Eighth Avenue, Suite 3300
                                     Seattle, WA  98101
24                                   Telephone: (206) 623-7292
                                     Facsimile:  (206) 623-0594
25                                   steve@hbsslaw.com
                                     sean@hbsslaw.com
26                                   karlb@hbsslaw.com

27

28

1

Reed R. Kathrein (139304)
Peter E. Borkon (212596)

2

HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202

3

Berkeley, CA  94710
Telephone: (510) 725-3000

4

Facsimile:  (510) 725-3001
reed@hbsslaw.com

5

peterb@hbsslaw.com

6

Joseph W. Cotchett (363241)
Nanci Nishimura (152621)

7

Mark C. Molumphy (#168009)
Jordanna G. Thigpen (#232642)

8

Matthew K. Edling (#250940)
COTCHETT, PITRE & McCARTHY

9

San Francisco Airport Office Center
840 Malcolm Road, Suite 200

10

Burlingame, CA  94010
Telephone:  (650) 697-6000

11

jcotchett@cpmlegal.com
mmolumphy@cpmlegal.com

12

nnishimura@cpmlegal.com
jthigpen@cpmlegal.com

13

medling@cpmlegal.com

14

Andrew Levetown
John D. Jenkins

15

LEVETOWN & JENKINS, LLP
700 12th Street, NW, Suite 700

16

Washington, DC  20005
Telephone:  (202) 379-4899

17

18

*Counsel for Plaintiff First Star Bank*

19

20

21

22

23

24

25

26

27

28

FIRST STAR BANK'S MEM. IN RESPONSE TO
TENTATIVE ORDER GRANTING UNDERWRITER       - 9 -
DEFS. MOTION TO DISMISS - 09-cv-01376-LHK
010194-11  399442 v1