| | |
|---|---|
| 1 | MARC T.G. DWORSKY (SBN 157413) |
|   | Marc.Dworsky@mto.com |
| 2 | KATHLEEN M. McDOWELL (SBN 115976) |
|   | Kathleen.McDowell@mto.com |
| 3 | MUNGER, TOLLES & OLSON LLP |
|   | 355 South Grand Avenue, 35th floor |
| 4 | Los Angeles, CA  90071-1560 |
|   | Telephone:     (213) 683-9100 |
| 5 | Facsimile:     (213) 687-3702 |
| 6 | DAVID H. FRY (SBN 189276) |
|   | David.Fry@mto.com |
| 7 | CAROLYN V. ZABRYCKI (SBN 263541) |
|   | Carolyn.Zabrycki@mto.com |
| 8 | MUNGER, TOLLES & OLSON LLP |
|   | 560 Mission Street,  27th floor |
| 9 | San Francisco, CA 94105-2907 |
|   | Telephone:     (415) 512-4000 |
| 10 | Facsimile:     (415) 512-4077 |
| 11 | Attorneys for Defendants |
|    | WELLS FARGO DEFENDANTS AND THE |
| 12 | INDIVIDUAL DEFENDANTS |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-01376 (LHK) (PSG) |
| | **CONSOLIDATED CLASS ACTION ECF** |
| | **DECLARATION OF ALLYSON KNUDSEN IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL** |
| | Judge:     Hon. Paul S. Grewal |
| | Date:      March 15, 2011 |
| | Time:     10:00 a.m. |
| | Ctrm:      5 |

I, Allyson Knudsen, declare:

1. I have personal knowledge of the facts stated in this declaration and could testify to them competently if called upon to do so.

2. I am currently a Senior Vice President within the National Retail Underwriting Administration at Wells Fargo Home Mortgage in Minneapolis, Minnesota. I have been employed by Wells Fargo since 1990 in various roles within retail loan origination. Since 2006, I have been responsible for the National Retail Underwriting Administration, which consists of approximately 500 employees, including the production risk management team for retail loan fulfillment and for aspects of wholesale loan fulfillment. My group's functions include monitoring the loan fulfillment process and approving exceptions to the specific credit risk underwriting guidelines for qualifying loans.

3. I am familiar with the general process that existed for originating loans through the retail and wholesale channels from 2002 through the present. The loan process for a retail loan typically begins when a prospective borrower approaches a retail loan officer (also referred to as a "Home Mortgage Consultant" or "HMC") at a Wells Fargo branch office. The loan process for a wholesale loan typically begins when a borrower approaches a third-party mortgage broker to obtain a loan. In either instance, the borrower completes a loan application and submits documents to support that application. The HMC or broker then sends a package of the collected material, including the application and supporting documents, to a Wells Fargo Home Mortgage loan fulfillment site. The package will be sent either in paper form or, more recently, electronically. Often with the aid of automated decisioning, an underwriter at the fulfillment site then evaluates the package of materials to determine whether the borrower qualifies for the loan for which he or she is applying. Some loans, depending on the type of loan and the circumstances of the applicant, require additional reviews by senior underwriters.

4. For most loans, the underwriter's direct supervisor typically would not have any substantive involvement in making the underwriting decision. If the customer appears to meet the requirements and the underwriter approves the loan subject to any closing conditions,

the loan is processed for closing. Processing the loan for closing may include obtaining additional information or documentation from the customer.

5. Typically, all of the key information concerning the mortgage loan is compiled and maintained in the loan file. A loan file can be several hundred pages long and contains, among other things, the mortgage application, supporting documents, a credit report, appraisal correspondence with the borrower (which may include e-mail print-outs), and print-outs of information about the loan application and underwriting process from the applicable origination database.

6. Home Mortgage Consultants work at branches of the bank and underwriters work at fulfillment sites. Fulfillment sites and bank branches exist throughout the country. At the end of 2006, Wells Fargo had over 2000 branch offices engaged in mortgage lending and employed more than 13,000 people in Fulfillment, which includes underwriting, processing, and closing. Furthermore, each retail branch has a branch manager, and each fulfillment site has a site manager. In addition to these managers, hundreds of supervisory and management personnel also deal with the loans during the retail and wholesale loan origination process.

7. The underwriting guidelines for loans originating through the retail and wholesale channels are thousands of pages long. Each origination channel has its own set of underwriting guidelines. In addition, different types of loans have different guidelines, and Wells Fargo Home Mortgage offers scores of different types of loans. During the 2002-2007 time period, these included 15- or 30-year fixed loans; adjustable-rate loans with fixed-rate periods of 1, 3, 5, 7 or 10 years; loans with an interest-only period; relocation loans for persons whose employers have a relationship with the bank; loans that qualify under Fannie Mae guidelines; loans for primary residences; loans for investment property; loans to refinance an existing mortgage with the same lender; and many others. Some, but not all, of the underwriting guidelines relate to the credit-worthiness of the borrower or collateral; others have nothing to do with credit risk.

DECL. IN SUPPORT OF OPP. TO MOT. TO COMPEL
NO. 09-01376-LHK-PSG

8. The guidelines change over time to reflect new types of loans or changes to existing types of loans. Any potential change to the guidelines would need to be reviewed by more than twelve different departments. These departments include groups concerned with risk management, such as Credit Risk Management and Collateral Policy; mortgage lending business groups, such as the retail, wholesale, and correspondent business lines; groups directed at various kinds of compliance, such as the legal team and government-sponsored enterprise compliance; and groups tasked with implementing any adopted changes, such as Decision Technology, Operations and the training group. Between 75 and 100 Wells Fargo employees from different functional areas would likely review such a change before it is adopted and, once adopted, thousands of employees in the business lines would implement the change. Between 2002 and 2007, there were hundreds of changes to the guidelines that had to go through this process.

I declare under penalty of perjury under the laws of the United States and of the State of California that the foregoing is true and correct, and that this declaration was executed on February 22, 2011.

*/s/ Allyson Knudsen*
Allyson Knudsen

- 3 -

DECL. IN SUPPORT OF OPP. TO MOT. TO COMPEL
NO. 09-01376-LHK-PSG

<u>Filer's Attestation</u>

I, David H. Fry, am the ECF user whose identification and password are being used to file this **DECLARATION OF ALLYSON KNUDSEN IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL**. In compliance with General Order 45.X.B, I hereby attest that Allyson Knudsen concurs in this filing.

DATED: February 22, 2011

            */s/ David H. Fry*
            DAVID H. FRY