MUNGER, TOLLES & OLSON LLP
  Marc T.G. Dworsky (SB# 157413)
  Kathleen M. McDowell (SB# 115976)
  James C. Rutten (SB# 201791)
  Erin J. Cox (SB# 267954)
355 South Grand Avenue, 35th floor
Los Angeles, California 90071-1560
(213) 683-9100; (213) 687-3702 (fax)
marc.dworsky@mto.com, kathleen.mcdowell@mto.com,
james.rutten@mto.com, erin.cox@mto.com

MUNGER, TOLLES & OLSON LLP
  David H. Fry (SB# 189276)
  Carolyn V. Zabrycki (SB# 263541)
560 Mission Street, 27th floor
San Francisco, California 94105-2907
(415) 512-4000; (415) 512-4077 (fax)
david.fry@mto.com, carolyn.zabrycki@mto.com

Attorneys for Defendants WELLS FARGO BANK, N.A.,
WELLS FARGO ASSET SECURITIES CORPORATION,
FRANKLIN CODEL, DOUGLAS JOHNSON, DAVID
MOSKOWITZ, and THOMAS NEARY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-01376-LHK (PSG)<br><br>CONSOLIDATED CLASS ACTION ECF<br><br>**REPLY IN SUPPORT OF WELLS FARGO DEFENDANTS' MOTION TO COMPEL DISCOVERY**<br><br>[Supplemental Declaration of James C. Rutten filed concurrently herewith]<br><br>Judge: Honorable Paul S. Grewal<br>Date: March 15, 2011<br>Time: 10:00 a.m.<br>Courtroom: 5 |

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ANALYSIS ........................................................................................................................ 2

    A. Plaintiffs Should Produce Information About Witnesses And Other Sources Of Their Allegations (Interrogatories 1, 2, and 4 and RFP 56) ................................ 2

    B. Plaintiffs Should Produce Information About Models Used In Connection With Transacting In And Valuing The Certificates (Interrogatories 5 and 6) ......... 6

    C. Plaintiffs Should Produce Certain Documents Relating To Their Knowledge And Their Compliance *Vel Non* With The Statute Of Limitations (RFP 60) ........................................................................................................ 6

    D. Plaintiffs Should Produce Information About Their Investments In Asset-Backed Securities And Securities Issued By Mortgage Originators (RFPs 3, 4, 12, 13, 26, 27, 36, 64, 65, 70, 71, and 72) ............................................................. 8

    E. Plaintiffs Should Obtain And Produce Information And Documents In The Possession Of Their Investment Managers ............................................................ 13

III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Barry B. Roseman, M.D. Profit Sharing Plan v. Sports & Recreation*,
    165 F.R.D. 108 (M.D. Fla. 1996) .................................................................................. 12

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................................... 10

*Beilstein-Institut v. MDL Info. Sys., Inc.*,
    2006 WL 3742244 (N.D. Cal. Dec. 19, 2006) ......................................................... 14, 15

*Branch-Hess Vending Servs. Employees' Pension Trust v. Guebert*,
    751 F. Supp. 1333 (C.D. Ill. 1990) ................................................................................ 13

*Epstein v. MCA, Inc.*,
    54 F.3d 1422 (9th Cir. 1995) ........................................................................................... 9

*Funke v. Life Fin. Corp.*,
    2003 WL 1787125 (S.D.N.Y. Apr. 3, 2003) ................................................................... 9

*Goldman v. Alhadeff*,
    1990 WL 86882 (W.D. Wash. Feb. 1, 1990) .................................................................. 9

*Hubbard v. Bankatlantic Bancorp, Inc.*,
    2009 WL 3856458 (S.D. Fla. Nov. 17, 2009) ................................................................. 4

*In re Assisted Living Concepts, Inc. Sec. Litig.*,
    2001 U.S. Dist. LEXIS 12864 (D. Or. Apr. 13, 2001) .................................................... 9

*In re Connetics Corp. Sec. Litig.*,
    2009 WL 1126508 (N.D. Cal. Apr. 27, 2009) ............................................................. 2, 4

*In re Faro Techs. Sec. Litig.*,
    2008 WL 205318 (M.D. Fla. Jan. 23, 2008) ................................................................... 4

*In re Harmonic, Inc. Sec. Litig.*,
    245 F.R.D. 424 (N.D. Cal. 2007) .................................................................................... 3

*In re IGC Comms., Inc. Sec. Litig.*,
    No. 00-CV-01864-REB-BNB (D. Colo. Sep. 7, 2005) ................................................. 14

*In re Motel 6 Sec. Litig.*,
    1996 WL 474175 (S.D.N.Y. Aug. 21, 1996) .................................................................. 9

*In re MTI Tech. Corp. Sec. Litig. II*,
    2002 WL 32344347 (C.D. Cal. June 13, 2002) .............................................................. 4

*In re New Century*,
   No. CV-07-00931 (C.D. Cal. Dec. 17, 2009) .................................................................. 9

*In re Northpoint Communications Group, Inc.*,
   No. C-01-1473-WHA ....................................................................................................... 2

*In re SLM Corp. Sec. Litig.*,
   2011 WL 611854 (S.D.N.Y. Feb. 15, 2011) .................................................................... 4

*In re Subpoena Issued to Cisco Sys., Inc.*,
   2010 WL 3155895 (N.D. Cal. Aug. 9, 2010) .................................................................. 14

*In re Surebeam Corp. Sec. Litig.*,
   2005 WL 5036360 (S.D. Cal. 2005) ............................................................................... 11

*In re Veeco Instruments, Inc. Sec. Litig.*,
   2007 WL 274800 (S.D.N.Y. Jan. 29, 2007) ..................................................................... 4

*In re WorldCom, Inc., Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .................................................................................... 11

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ................................................................... 9

*Lefkoe v. Jos. A. Bank Clothiers*,
   2008 WL 7275126 (D. Md. May 13, 2008) ..................................................................... 4

*McCormick v. Fund Am. Co.*,
   26 F.3d 869 (9th Cir. 1994) ............................................................................................ 12

*Miller v. Ventro Corp.*,
   2004 WL 868202 (N.D. Cal. Apr. 21, 2004) ........................................................... 2, 3, 4

*N.J. Carpenters Health Fund v. Residential Capital LLC*,
   _ F.R.D. _, 2011 WL 147735 (S.D.N.Y. Jan. 18, 2011) .............................................. 12

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
   2005 WL 1459555 (N.D. Cal. June 21, 2005) ............................................................. 3, 4

*Rosie D. v. Romney*,
   256 F. Supp. 2d 115 (D. Mass. 2003) ...................................................................... 14, 15

*Software Rights Archive, LLC v. Google Inc.*,
   2009 WL 1438249 (D. Del. May 21, 2009) ................................................................... 15

*Staehr v. Hartford Fin. Servs. Group, Inc*,
   547 F.3d 406 (2d Cir. 2008) ............................................................................................. 8

*Tatum v. Schwartz*,
   2007 WL 2220977 (E.D. Cal. Aug. 2, 2007) ................................................................. 14

## REGULATIONS AND ADMINISTRATIVE MATERIALS

17 C.F.R. § 229.1121 ................................................................................................................. 11

17 C.F.R. § 230.158 .................................................................................................................. 11

SEC Release No. 6485, 1983 WL 33530 (Sept. 23, 1983) ........................................................ 11

SEC Release Nos. 33-8518 & 34-50905, *Asset-Backed Securities*,
    70 Fed. Reg. 1506-01 (Jan. 7, 2005) ..................................................................................... 11

## I. INTRODUCTION

Plaintiffs' Opposition largely dodges the issues raised in Wells Fargo's motion. In some cases, Plaintiffs simply pronounce that they have provided the requested discovery, without addressing Wells Fargo's showing that that is not the case – and meanwhile, Plaintiff still have not provided the discovery. In other cases, Plaintiffs do not address the case law cited by Wells Fargo, but instead urge the Court to follow other case law more to Plaintiffs' liking, without so much as a nod to the fact that decisions from this District unanimously reject that other case law. In still other instances, Plaintiffs apparently have caved, disavowing positions they took during the meet-and-confer process and committing to provide the requested discovery – although they have yet actually to provide it. And in the few instances where Plaintiffs actually *do* address Wells Fargo's showings, their arguments do not withstand scrutiny – such as when they argue that they should not have to produce the sort of evidence that Judge Baer found to be dispositive of the class certification question when it was presented to him.

That Plaintiffs are refusing to provide properly discoverable material is manifest from the following examples of information and documents they are refusing to produce to the extent it exists – all of which bear directly on core liability and/or class certification issues:

- Information about who the most critical witnesses are, or what they know. *See infra* Part II.A.

- Any information about any investment models that informed Plaintiffs' decisions to buy mortgage-backed securities ("MBS"). *See infra* Part II.B.

- Any e-mails from Plaintiffs' investment advisors saying, in effect, "We've done a lot of due diligence on Wells Fargo, and Wells Fargo consistently follows its mortgage underwriting guidelines," or conversely, that "Wells Fargo systematically departs from its guidelines." *See infra* Part II.C.

- Any transaction records showing purchases of MBS in 2008 and 2009 after Plaintiffs were necessarily aware of allegations that the issuers of those MBS "systematically" departed from their underwriting guidelines. *See infra* Part II.D.

- Any documents, no matter how relevant, in the possession of any of Plaintiffs' investment advisors regardless of whether Plaintiffs have an express contractual right to obtain and copy the documents upon demand. *See infra* Part II.E.

Plaintiffs should not be permitted to withhold this information and these documents, or the similar information and documents discussed below. Wells Fargo's motion should be granted.

# II. ANALYSIS

**A. Plaintiffs Should Produce Information About Witnesses And Other Sources Of Their Allegations (Interrogatories 1, 2, and 4 and RFP 56).**

Interrogatory 1: Plaintiffs assert that their initial disclosures "identif[y] every confidential and other witness referenced or otherwise relied upon in [the complaint]."[1] What Plaintiffs apparently mean by this is that their initial disclosures camouflage the names of the eight confidential witnesses among an undifferentiated list of 54 individuals. Plaintiffs attempt to excuse this gamesmanship by contending that *actually* identifying the eight confidential witnesses would reveal attorney work product. Plaintiffs do not respond to the cases cited in Wells Fargo's motion, and many others like them, that expressly reject this argument.

For example, in *In re Connetics Corp. Securities Litigation*, 2009 WL 1126508 (N.D. Cal. Apr. 27, 2009), the Honorable Susan Illston of this District rejected the plaintiff's work-product argument and rejected the notion that the plaintiff adequately had identified the witnesses by including their names in an 88-name list in its initial disclosures. As the court explained, there can be no work-product concern where "counsel for plaintiff have made no secret of their mental impressions" because they already have "reveal[ed] which witness statements they evaluated as being important by attributing statements to particular witnesses in the [complaint]." *Id.* at *2. The court further observed that although, through depositions or other means, the "defendants will eventually be able to determine the identities of the confidential witnesses from among the 88 disclosed names," there was no "benefit of proceeding in this inefficient way." *Id.*

Similarly, in *In re Northpoint Communications Group, Inc.*, No. C-01-1473-WHA, the Honorable William H. Alsup of this District stated that "when a plaintiff showcases information obtained from confidential witnesses in an effort to meet the [pleading] requirements of the Private Securities Litigation Reform Act, the plaintiff must disclose the identities of those witnesses upon proper interrogatory." *Miller v. Ventro Corp.*, 2004 WL 868202, at *1 (N.D. Cal. Apr. 21, 2004) (summarizing Judge Alsup's statement).

---

[1] Lead Pls.' Opp'n to Wells Fargo Defs.' Mot. to Compel Disc. ("Opp'n") at 4-5. Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless otherwise indicated.

Likewise, in *In re Harmonic, Inc. Securities Litigation*, 245 F.R.D. 424 (N.D. Cal. 2007), the Honorable Edward M. Chen of this District rejected the argument that "legal strategy would be revealed by disclosing the identities" of confidential witnesses, because "Plaintiffs have *already revealed* their legal strategy by including the CWs' statements in the [complaint]." *Id.* at 428. The court further held that because "the five CWs have been identified among the list of 77 witnesses in [the plaintiffs'] initial disclosures," "[t]he issue here . . . is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered" – and that it would be manifestly unfair to require the defendants to "depos[e] or otherwise investigat[e] all of the 77 witnesses . . . in order to obtain the information." *Id.* at 427-28. The court also explained that one of the cases Plaintiffs rely on here, *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, Inc.*, 2005 WL 1459555 (N.D. Cal. June 21, 2005), is inapposite because that case involved an "interrogatory [that] requested a list of all persons that [were] interviewed during the course of [counsel's] investigation," whereas an interrogatory asking for the identities of witnesses *already referenced* in the complaint "is not so broad and would not implicate the same threat to counsel's thought process." *Harmonic*, 245 F.R.D. at 428. Finally, the court held that "[e]ven if the CWs' identities were protected work product, disclosure would nonetheless be required because, at best, the information is factual work product" and "Defendants' need for . . . this information would overcome [any] *de minimis* work product [protection]." *Id.* at 429.

Similarly, in *Miller v. Ventro Corp.*, 2004 WL 868202 (N.D. Cal. Apr. 21, 2004), the Honorable Elizabeth D. Laporte of this District held that a "list containing the names of . . . CWs does not constitute work product and that even if it were work product, the need for the information and the hardship otherwise entailed outweighs any minimal work product protection." *Id.* at *2. The court also rejected another argument made by Plaintiffs here, namely, that a defendant should be required to undertake an internal investigation to "identify the witnesses, each of whom was described in detail in the Complaint and identified by name in [the] initial disclosures."[2] As the court put it, "to the extent that the complaint enables identification,

---

[2] Opp'n at 6.

1    there is no confidentiality to preserve," and "it is simply not practical for Defendants to interview

2    or depose all 165 individuals who could possibly be the CWs." *Miller*, 2004 WL 868202, at *2.

3        Plaintiffs have no response to this solid wall of decisions from this District. Presumably

4    Plaintiffs think that Judges Illston and Alsup, and Magistrate Judges Chen and Laporte, all got it

5    wrong, but Plaintiffs never explain why their reasoning is unsound or why their decisions should

6    not be followed. Indeed, Plaintiffs do not cite a single case from this District other than *Plumbers*

7    *& Pipefitters*, *supra*, which is off-point for the reasons stated above. Instead, Plaintiffs cite cases

8    from other districts that, by some unexplained tally, they call "the weight of authority."[3] In fact,

9    "the *majority* of courts addressing this issue [hold] that where a plaintiff highlights particular

10   witnesses' roles' within a complaint, a discoverable matter is generated." *Lefkoe v. Jos. A. Bank*

11   *Clothiers*, 2008 WL 7275126, at *10 (D. Md. May 13, 2008); *accord Faro*, 2008 WL 205318, at

12   *2 (recognizing this as the "majority" rule). Plaintiffs should respond to Interrogatory 1.

13       <u>Interrogatory 2</u>: Interrogatory 2 asks Plaintiffs to set forth "the nature of [the] knowledge"

14   possessed by the witnesses they have identified. Plaintiffs do not dispute that they are required to

15   provide this information. They merely say they already have provided it.[4] Plaintiffs do not

16   respond to Wells Fargo's showing that, to the contrary, all they have done is list the *means*

17   through which the witnesses supposedly acquired whatever undisclosed knowledge Plaintiffs are

18   ascribing to them (*e.g.*, "Knowledge *through* work as Accountant").[5] What do Plaintiffs think

19   these witnesses know? Plaintiffs never say.

---

[3] Opp'n at 6 n.4. The decisions Plaintiffs rely on invariably rested on the notion that "Defendants are not automatically entitled to know which of [the] witnesses Plaintiffs consider important." *In re SLM Corp. Sec. Litig.*, 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011); *see also In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) (similar); *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347, at *4 (C.D. Cal. June 13, 2002) (similar). As the majority of courts recognize, however, because "Plaintiff[s] ha[ve] already revealed which witnesses counsel finds important[] by setting forth specific information as to their knowledge in the [complaint]," disclosing "name[s] and address[es]" would "not add to [the disclosure of] counsel's mental impression[s]." *In re Faro Techs. Sec. Litig.*, 2008 WL 205318, at *2 n.1 (M.D. Fla. Jan. 23, 2008). The cases Plaintiffs rely on are routinely rejected for this reason. *See, e.g. Connetics*, 2009 WL 1126508, at *2 (declining to follow *Veeco*); *Hubbard v. Bankatlantic Bancorp, Inc.*, 2009 WL 3856458, at *3 n.3 (S.D. Fla. Nov. 17, 2009) ("reject[ing] the reasoning" of *MTI*).

[4] *See* Opp'n at 6.

[5] Wells Fargo Defs.' Mot. to Compel Disc. ("Mot.") at 10.

Plaintiffs also argue that "Defendants are in a better position than Lead Plaintiffs to know the information possessed by their own employees."[6] Plaintiffs' argument does not excuse them from providing whatever information Plaintiffs have on the topic; Plaintiffs are the ones who are contending that these individuals have information that is relevant to this case. Further, Plaintiffs have identified numerous individuals they say are currently or formerly employed not by Wells Fargo, but by Plaintiffs, their investments advisors, or unaffiliated third parties. Plaintiffs cannot claim that Wells Fargo is better positioned than Plaintiffs to ascertain the information these individuals possess. Plaintiffs should be compelled to provide a real answer to Interrogatory 2.

<u>Interrogatory 4</u>: Interrogatory 4 asks Plaintiffs to "[i]dentify every person . . . involved in researching, evaluating, conducting due diligence on, [and engaging in various other activities related to] the [Wells Fargo] Certificates, and state the nature of each such person's responsibility for any of the foregoing." Again, Plaintiffs do not dispute that they are required to provide this information. They merely say they have provided it, or, somewhat contradictorily, that Wells Fargo can get the information through depositions. Plaintiffs' arguments are meritless. Plaintiffs' response to Interrogatory 4 does not identify a single individual with responsibility for *any* of the listed activities, but instead lists the *entities* that served as their investment advisors. Further, Plaintiffs cannot avoid their obligation to respond to an interrogatory by claiming that Wells Fargo can get the information through depositions; Plaintiffs do not get to pick and choose the types of discovery methods to which they will respond.

<u>Request for Production ("RFP") 56</u>: Plaintiffs appear to have caved on RFP 56, which seeks documents "constitut[ing] a source or basis of any allegation of the [complaint]." Plaintiffs took the unflinching position during the meet-and-confer process that they would produce only documents *expressly* referred to in the complaint, and that all other documents – including such things as news articles – somehow became privileged by virtue of counsel using them as sources for the complaint's allegations.[7] Now Plaintiffs appear to have abandoned that position, and have

---

[6] Opp'n at 6.

[7] *See* Jan 11, 2011 Ltr. from Wells Fargo's Counsel, attached as Ex. 4 to the Decl. of James C. Rutten filed Feb. 11, 2011 ("Orig. Rutten Decl."), at 6 (memorializing meet-and-confer).

5      REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. 09-1376-LHK (PSG)

pledged to produce all responsive documents except those that were privileged in the first instance, such as notes of witness interviews, legal research, and attorney-client communications.[8] Plaintiffs should be directed to comply with this undertaking.

**B. Plaintiffs Should Produce Information About Models Used In Connection With Transacting In And Valuing The Certificates (Interrogatories 5 and 6).**

Interrogatories 5 and 6 seek information about models or criteria used in connection with transacting in or valuing MBS. Plaintiffs do not dispute that such information is discoverable. They merely say that "they do not have responsive models or criteria."[9] Plaintiffs fail to address the issue raised in Wells Fargo's motion: Plaintiffs artificially have construed "model or criteria" to mean an "established, formalized *formula* that *dictates*" whether to purchase, or how to value, MBS, and have *refused* to acknowledge that "model or criteria" also includes non-mathematical criteria as opposed to formulas, or models or criteria that merely recommend or inform investment or valuation decisions as opposed to "dictating" them.[10] It is apparently only because Plaintiffs have defined away the request that they can say they have no information to provide.

Plaintiffs' hair-splitting should not be countenanced. Plaintiffs refused to say during the meet-and-confer process whether they consider or apply models or criteria of the more expansive variety, and now, in their Opposition, Plaintiffs duck the issue notwithstanding that it was squarely presented in Wells Fargo's motion. Plaintiffs' conduct creates an inference that they *do* have non-formulaic models or criteria that inform investment or valuation decisions instead of "dictating" them, but do not want to provide information about those models or criteria. Plaintiffs should be ordered to provide any and all responsive information; certainly Plaintiffs have no justification for withholding the information if it exists.

**C. Plaintiffs Should Produce Certain Documents Relating To Their Knowledge And Their Compliance *Vel Non* With The Statute Of Limitations (RFP 60).**

Plaintiffs say virtually nothing about RFP 60, and treat it as if it seeks transaction information about their investments in asset-backed securities. It does not. It seeks documents

---

[8] *See* Opp'n at 7-8.

[9] *Id.* at 8.

[10] *See* Mot. at 12-13.

showing information Plaintiffs possessed on various topics that are relevant to the knowledge defense under § 11 of the Securities Act of 1933, and Plaintiffs' compliance *vel non* with the statute of limitations.

With respect to § 11's knowledge defense, there can be no serious question that RFP 60 seeks acutely relevant documents, such as documents bearing on Plaintiffs' knowledge about the precise matter at issue in this lawsuit: "underwriting standards or practices at any Wells Fargo entity, or at any entity that originated loans that were included in the pools underlying the certificates." RFP 60 would encompass, for example, any e-mail from Plaintiffs' investment managers saying, "We've done a lot of due diligence on Wells Fargo, and Wells Fargo consistently follows its mortgage underwriting guidelines," or conversely, that "Wells Fargo systematically departs from its guidelines." Nothing could be more relevant to §11's knowledge defense, yet Plaintiffs are refusing to produce such documents unless the documents also happen to mention the particular Wells Fargo certificates Plaintiffs bought.[11]

Further, RFP 60 seeks documents showing Plaintiffs' knowledge about other critical issues, such as "the risks of investing in mortgage-backed securities." RFP 60 seeks, for example, documents showing Plaintiffs' knowledge of the very risk that they say came to pass: the risk of MBS declining in value because of what Plaintiffs call "systematic" and industry-wide departures from underwriting guidelines. RFP 60 would encompass, for instance, any e-mail from Plaintiffs' investment advisors saying: "Do you really want to invest in MBS or collateralized debt obligations right now? Our research shows that mortgage underwriting guidelines have gotten too lax across the industry, and that when the housing bubble bursts, the values of these securities are destined to fall." Again, it is difficult to imagine documents that are more central to the question of knowledge under § 11 – yet Plaintiffs are refusing to produce them unless they also happen to reference the particular Wells Fargo MBS certificates Plaintiffs bought.

---

[11] As shown in Wells Fargo's motion – and as Plaintiffs do not dispute – the *only* respect in which they have agreed to comply with RFP 60 is in its request for documents that pertain to the precise Wells Fargo certificates Plaintiffs bought. (*See* Mot. at 13.)

7     REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. 09-1376-LHK (PSG)

1       With respect to the statute of limitations, RFP 60 seeks documents that would tend to
2  show when Plaintiffs were on notice of their claims – as the foregoing examples of hypothetical
3  e-mails from Plaintiffs' investment advisors demonstrate.  Plaintiffs' only response is to contend
4  that "generalized information about industry problems is irrelevant to a statute of limitations
5  defense because company-specific information is what matters."[12]  Plaintiffs' contention is
6  unavailing because RFP 60 *does* seek "company-specific information": documents concerning
7  "the *Wells Fargo* Defendants" and "underwriting standards or practices at any *Wells Fargo* entity,
8  or at any entity that originated loans that were included in the pools underlying the Certificates."

9       In any event, Plaintiffs' contention is wrong as a matter of law because the very case they
10 cite for the proposition that only "company-specific information" matters held precisely the
11 opposite: "[W]e have *not* created a categorical rule that inquiry notice can only be triggered by
12 public pronouncements containing company-specific information[.]  [W]e do *not* take issue with
13 the . . . statement, in the abstract, that information that is not so company-specific may also
14 suffice for a court to find that the circumstances would suggest to an investor of ordinary
15 intelligence the probability that she has been defrauded."  *Staehr v. Hartford Fin. Servs. Group,*
16 *Inc*, 547 F.3d 406, 429 (2d Cir. 2008).  Plaintiffs may or may not be correct that non-company-
17 specific information makes a less "compelling" case for inquiry notice,[13] but that is a question of
18 weight, not admissibility, and certainly not discoverability.  Plaintiffs, having successfully
19 persuaded the Court to deny Defendants' motion to dismiss on the ground that inquiry notice is a
20 "factual question not appropriate for resolution on a motion to dismiss,"[14] may not now refuse to
21 produce the documents that are relevant to that question.

22 **D.    Plaintiffs Should Produce Information About Their Investments In Asset-Backed Securities And Securities Issued By Mortgage Originators (RFPs 3, 4, 12, 13, 26, 27, 36, 64, 65, 70, 71, and 72).**
23

24      Contrary to Plaintiffs' contention that these RFPs seek boundless discovery into all kinds
25 of investments over a period of many years, the RFPs are narrowly focused on investments in

---

[12] Opp'n at 13.

[13] Opp'n at 13 n.8.

[14] Apr. 22, 2010 Order (Doc. #198) at 9.

*MBS* or similar asset-backed securities such as collateralized debt obligations (with a few exceptions that are even narrower).[15] Plaintiffs have no response to the cases holding that such targeted discovery into a limited group of investments is routinely permitted, other than to wave off those cases as "unpersuasive."[16] *See, e.g.*, *Goldman v. Alhadeff*, 1990 WL 86882, at *1-3 (W.D. Wash. Feb. 1, 1990) (plaintiffs ordered to produce "documents reflecting plaintiffs' transactions in securities of *the [relevant] industry*").

Plaintiffs instead cite cases that involved *stock* investments in which defendants sought discovery into thousands of the plaintiffs' investments in the stocks of all manner of other companies, or cases in which the fraud-on-the-market presumption of reliance rendered discovery into the plaintiffs' individual reliance and knowledge unnecessary.[17] Indeed, Plaintiffs rely most heavily on an unpublished order in *In re New Century*, No. CV-07-00931, where the court emphasized that the case involved investments in "*common stock, not investments in mortgage-backed securities*," and cited the "impersonal market fraud" context where the fraud-on-the-market doctrine presumes reliance. *Id.* at 5-6. Plaintiffs' cited cases bear no similarity to the one at bar, in which Wells Fargo seeks targeted discovery into investments in highly specialized asset-backed securities that are identical or similar to the MBS at issue in this case, and in which Plaintiffs have never alleged that the market for MBS is efficient (an essential predicate of the

---

[15] Exceptions are RFP 4, which seeks investment committee meeting minutes, a necessarily small and easily produced group of documents; RFP 12, which merely seeks documents "sufficient to identify" Plaintiffs' investment managers; and RFPs 26 and 27, which seek a narrow group of contracts and similar documents with those investment managers. RFPs 64 and 65 seek documents about Plaintiffs' transactions in the securities of Wells Fargo and certain other mortgage lenders. RFP 70 appears broad on its face, but was limited during the meet-and-confer process to just responsive documents concerning asset-backed securities. (*See* Dec. 21, 2010 Ltr. from Wells Fargo's Counsel (Orig. Rutten Decl. Ex. 3) at 7.)

[16] Opp'n at 11.

[17] *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423-24 (9th Cir. 1995) (stock case involving extremely limited issues under SEC Rule 14d-10); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2005 WL 3801463, at *3-4 (N.D. Ill. Apr. 18, 2005) (stock case where the defendants sought discovery into the plaintiffs' investment history *after* a class had been certified, whereas here, the requested discovery relates in part to *whether* a class can be certified); *Funke v. Life Fin. Corp.*, 2003 WL 1787125, at *2 (S.D.N.Y. Apr. 3, 2003) (stock case); *In re Assisted Living Concepts, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 12864, at *4-5 (D. Or. Apr. 13, 2001) (stock case where the defendants sought "all documents relating to plaintiffs' personal investment experience, history, objectives, and strategy," apparently without regard to type of investment); *In re Motel 6 Sec. Litig.*, 1996 WL 474175, at *1 (S.D.N.Y. Aug. 21, 1996) ("all stocks").

fraud-on-the-market presumption). *See Basic, Inc. v. Levinson*, 485 U.S. 224, 246-48 (1988). Here, Plaintiffs' *individual* reliance and knowledge will be at issue both at trial and on class certification. These RFPs seek documents that are relevant to both of those issues, and also to the materiality element of their claims:

<u>Reliance</u>: Plaintiffs do not and cannot dispute that the documents sought by these RFPs will tend to show their reliance or lack thereof. Further, Plaintiffs admit that "[a] showing of reliance *is required* . . . if [a plaintiff] purchase[s] securities after the issuance of an earnings statement[] covering a period of at least twelve months after the effective date of the Registration Statement."[18] And Plaintiffs admit that they purchased at least some of their Wells Fargo certificates after the issuance of distribution reports covering a period of at least 12 months from the effective date of the prospectus supplements at issue here[19] – reports that detailed the financial performance of the certificates, including cash-flow earnings, mortgage prepayments, mortgage defaults, and a host of other financial information.[20] Plaintiffs' *only* argument is that distribution reports, despite containing what can only be described as earnings information, do not constitute "earnings statements" for purposes of triggering § 11's reliance requirement. Plaintiffs' arguments are meritless.

Plaintiffs first argue that "[n]ot a single court . . . has accepted Defendants' contention" that distribution reports constitute "earnings statements."[21] Plaintiffs as easily could have said that not a single court has rejected the contention – because to Wells Fargo's knowledge, no plaintiff has ever contested the self-evident point. Tellingly, Plaintiffs do not respond to Wells

---

[18] Opp'n at 12-13.

[19] *See* Opp'n at 13 (admitting that their transactions occurred "*primarily* within twelve months of the offerings," *i.e.*, that some occurred *after* 12 months); *see also* Am. Compl. ¶ 15 (showing dates of offerings, and a purchase of certificates from the 2006-AR17 offering in March 2008, more than 12 months after that offering); Pls.' Resps. & Objs. to Wells Fargo's 1st Set of Interrogs. (Orig. Rutten Decl. Ex. 1) at 26 (showing purchases of certificates from the 2006-2, 2006-AR5, 2006-AR6, and 2006-AR10 offerings more than 12 months after the offerings).

[20] *See* Example of Wells Fargo distribution report attached as Exhibit A to the Supplemental Declaration of James C. Rutten filed concurrently herewith ("Supp. Rutten Decl.").

[21] Opp'n at 13.

Fargo's showing that distribution reports are "earnings statements" under the express terms of 17 C.F.R. § 230.158.[22]

Plaintiffs next contend that § 11 "requires a single earnings statement, so the filings of multiple documents cannot be linked to require Plaintiffs to prove reliance."[23] Again, Plaintiffs simply ignore § 11's implementing regulation, which provides that the "earnings statement" that triggers § 11's reliance element can be "contained in one report *or any combination of reports*." 17 C.F.R. § 230.158(a)(2); *accord* SEC Release No. 6485, 1983 WL 33530, at *2 (Sep. 23, 1983) ("Permitting one *or any combination* of . . . reports . . . to satisfy the 'earning statement' requirement of [§ 11] means that the information in the 'earning statement' *may be contained in multiple documents*. . . . Thus, twelve month financial information for an issuer is generally available *even though it may be contained in several documents*.").[24]

Finally, Plaintiffs cite *In re WorldCom, Inc., Securities Litigation*, 219 F.R.D. 267 (S.D.N.Y. 2003), for the proposition that " a report or statement that violates SEC rules and regulations is not considered an 'earning statement' for Section 11 purposes."[25] Plaintiffs' contention is irrelevant because they have never alleged, and cannot allege, that the distribution reports violated SEC rules or regulations in any way (and in any event, that would be a contested issue to be decided at a later date and that would not limit what is discoverable now). Simply put, as much as Plaintiffs may wish they did not have to prove reliance in this case, they do for at least some of their purchases – and they do not dispute that the documents sought by these RFPs are relevant to that issue.

---

[22] *See* Mot. at 17 n.28; *see also* 17 C.F.R. § 229.1121(a); SEC Instructions for Item 1 of Form 10-D, *available at* http://www.sec.gov/about/forms/form10-d.pdf; SEC Release Nos. 33-8518 & 34-50905, *Asset-Backed Securities*, 70 Fed. Reg. 1506-01, 1566 (Jan. 7, 2005) ("[T]he distribution report . . . will likely contain most, if not all, of the disclosures about the distribution and pool performance that will be required . . . .").

[23] Opp'n at 13 (emphasis removed).

[24] The lone case Plaintiffs cite for their argument, *In re Surebeam Corp. Securities Litigation*, 2005 WL 5036360 (S.D. Cal. 2005), did not consider the regulation that is dispositive here and did not involve MBS.

[25] Opp'n at 13.

1     Knowledge: Plaintiffs do not and cannot dispute that the documents sought by these RFPs
2 will tend to show their sophistication and knowledge about asset-backed securities in general and
3 MBS in particular. Plaintiffs likewise do not and cannot dispute that Judge Baer expressly held
4 that such sophistication and knowledge are relevant to § 11's knowledge defense, and that when
5 he was presented with the sort of evidence sought by these RFPs, he found it to be dispositive of
6 class certification. *See N.J. Carpenters Health Fund v. Residential Capital LLC*, _ F.R.D. _, 2011
7 WL 147735, at *8-9 (S.D.N.Y. Jan. 18, 2011) ("Different levels of sophistication indicate
8 different levels of knowledge. . . . [M]any putative class members are sophisticated investors with
9 significant experience in asset-backed securities markets."); *see also McCormick v. Fund Am.*
10 *Co.*, 26 F.3d 869, 879-80 (9th Cir. 1994) (holding an omission not misleading in light of the
11 plaintiff's sophistication; "[w]e conclude, particularly in light of [plaintiff's] considerable
12 sophistication, that this quasi-disclosure was sufficient"); *Barry B. Roseman, M.D. Profit Sharing*
13 *Plan v. Sports & Recreation*, 165 F.R.D. 108, 112 (M.D. Fla. 1996) (compelling discovery of
14 prior trading history because "a plaintiff's sophistication in combination with other factors
15 regarding reliance are relevant to a plaintiff's ability to serve as a class representative").

16     Plaintiffs argue that "knowledge of general information about mortgage-backed securities
17 is irrelevant to [the knowledge] defense,"[26] but this misses the point. As Judge Baer held, where
18 one of the plaintiffs, through its investment manager, was sufficiently sophisticated in the asset-
19 backed securities sector generally that it may have "had at least *some awareness* of the risk or
20 *type* of conduct that is targeted in this lawsuit," it is manifest that individualized inquiries will be
21 necessary to decide the issue, and that class certification is inappropriate. *N.J. Carpenters*, 2011
22 WL 147735, at *9. Plaintiffs may or may not have had knowledge sufficient to defeat their
23 claims, but that is precisely what these RFPs are designed to explore.

24     Plaintiffs attempt to distinguish Judge Baer's ruling on the ground that it was "not a
25 motion to compel"[27] but this misses the point: His decision illustrates the substantive relevance of
26 the documents sought by these RFPs, and thus, why such documents are discoverable. Plaintiffs

---
27 [26] Opp'n at 12.
28 [27] Opp'n at 12.

also contend that Judge Baer "focused on actions of an investment manager [of the plaintiffs and] not on the pension funds serving as lead plaintiffs."[28] Plaintiffs' contention is bizarre; they appear to be saying that the knowledge of their investment managers is relevant, but their own knowledge is not – which is untenable for obvious reasons.

At bottom, Plaintiffs simply do not want Wells Fargo to obtain or present to Judge Koh the sort of information that the defendants in *New Jersey Carpenters* were able to obtain and present to Judge Baer – and that was outcome-determinative of class certification in that case.

<u>Materiality</u>: Plaintiffs' only argument as to materiality is that it does not matter what information they considered to be material in investing in asset-backed securities because materiality is an objective standard measured by the what a reasonable investor would consider important.[29] Plaintiffs miss the point: Discovery into what *actual* investors considered important in making investment decisions in the highly specialized asset-backed securities sector is necessary to determine the custom and practice of what *objectively reasonable* investors considered important. For example, if Plaintiffs continued to invest heavily in MBS in 2008 and 2009 – after the plaintiffs' bar had sued virtually the entire mortgage industry with cookie-cutter allegations of "systematic departures from underwriting guidelines" – that would tend to demonstrate that reasonable investors did not consider alleged departures from underwriting guidelines to be material. In short, what Plaintiffs considered important in investing will be an important data point as the parties debate, and the trier of fact decides, the materiality issue; as the courts recognize, "[w]hile the test of materiality depends upon the hypothetical reasonable investor, the actual Plaintiffs' own testimony is both persuasive and revealing." *Branch-Hess Vending Servs. Employees' Pension Trust v. Guebert*, 751 F. Supp. 1333, 1340 (C.D. Ill. 1990).

### E. **Plaintiffs Should Obtain And Produce Information And Documents In The Possession Of Their Investment Managers.**

Plaintiffs try to escape their obligation to produce documents in the files of their investment managers on various grounds, none of which has merit. They first argue that they

---

[28] *Id.*

[29] *See id.* at 11.

cannot "commandeer the files of the non-party investment managers."[30] That Plaintiffs are not obligated to produce documents their investments managers will not let them have does not relieve them of their obligation to produce the documents their investment managers *will* let them have. For example, Plaintiff Alameda County Employees' Retirement Association ("ACERA") has the express contractual right to copy numerous responsive documents in the files of its investment manager Brandywine Asset Management ("Brandywine"), such as "*transactions, activity, time sheets, cost, billing, accounting and financial records, proprietary data*, electronic recordings, correspondence, and *any other records created in connection with this Agreement*."[31]

Plaintiffs next argue that "ACERA does not control Brandywine" because Brandywine acts "in the capacity of an independent contractor."[32] That is a *non sequitur*. ACERA's control over the requested documents is premised not on the extent of its control over Brandywine as an entity or on the capacity in which Brandywine acts, but on ACERA's *contractual right* to access and copy the documents. Plaintiffs do not and cannot dispute that "control exists where a party has a legal right to obtain documents . . . . pursuant to a contractual provision." *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (where a contract "require[d] the [non-party] to maintain books, records and other compilations of data pertaining to the contract and provide[d] . . . that [the defendants had] the right, upon reasonable notice, to examine and copy the information," "there is little doubt that [the defendants] have the right to control and obtain the documents that are in the possession of the various non-defendant entities").

Plaintiffs' various cited cases are off point because they did not involve a contractual right to documents. *See In re Subpoena Issued to Cisco Sys., Inc.*, 2010 WL 3155895, at *3 (N.D. Cal. Aug. 9, 2010) (no discussion of contractual right); *In re IGC Comms., Inc. Sec. Litig.*, No. 00-CV-01864-REB-BNB (D. Colo. Sep. 7, 2005) (no facts or analysis, but emphasizing that the plaintiffs had "no right" to the documents); *Tatum v. Schwartz*, 2007 WL 2220977, at *5-6 (E.D. Cal. Aug. 2, 2007) (no discussion of contractual right). Further, Plaintiffs mischaracterize *Beilstein-Institut*

---

[30] Opp'n at 14.

[31] Investment Management Agreement (Orig. Rutten Decl. Ex. 12) at 17.

[32] Opp'n at 16.

CASE NO. 09-1376-LHK (PSG)

*v. MDL Information Systems, Inc.*, 2006 WL 3742244 (N.D. Cal. Dec. 19, 2006), because the only issue there was whether the defendant had control over documents in the possession of an affiliate by virtue of an agency relationship; indeed, the court, in finding no control, distinguished *Rosie D.* on the ground that "in that case there were contracts between the party and non-parties explicitly giving the party the legal right to access the documents at issue." *Id*. at *3. Although Plaintiffs are correct that there was a contractual provision in *Beilstein-Institut* that appeared to create a right of access, that issue was neither presented nor decided; the court merely cited the provision as evidence that the contract did not create an agency relationship. *See id.* at *4.

Finally, Plaintiffs argue that Wells Fargo should just get the documents directly from their investment managers – a classic runaround, given that some of the investment managers are taking the position that Wells Fargo should get the documents from Plaintiffs.[33] Plaintiffs do not guarantee that all the responsive documents they have a right to copy and obtain from their investment managers will be produced by those investment managers. Plaintiffs argument therefore should be rejected. *See Rosie D.*, 256 F. Supp. 2d at 119 ("Defendants' efficiency argument, *i.e.*, that Plaintiffs resort to subpoenas on the [non-party] entities, has little merit."); *see also Software Rights Archive, LLC v. Google Inc*., 2009 WL 1438249, at *2 (D. Del. May 21, 2009) (holding that where a party requests documents from an opposing party as well as a non-party, production "is appropriate where those documents constitute a non-well-defined set whose completeness is not readily verifiable," because by "allowing for discovery from both the party and non-party, completeness of discovery is more likely to be achieved").

### III. CONCLUSION

For the reasons stated above, Wells Fargo's motion to compel should be granted.

DATED: March 3, 2011                    MUNGER, TOLLES & OLSON LLP

                                        By:      /s/ James C. Rutten
                                                 James C. Rutten

                                        Attorneys for WELLS FARGO DEFENDANTS

---

[33] *See* Jan 14, 2011 Objection Ltr. (Orig. Rutten Decl. Ex. 13) at 1-2 (objection 3).