1                UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4

5

   IN RE WELLS FARGO          )  C-09-01376 LHK
6  MORTGAGE-BACKED            )  C-10-03489 LHK
   CERTIFICATES LITIGATION,   )  C-10-03508 LHK
7                             )
                              )  SAN JOSE, CALIFORNIA
8                             )
                              )  MARCH 2, 2011
9                             )
                              )  PAGES 1-25
10 _____   )

11

12              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
13            UNITED STATES DISTRICT JUDGE

14

15 A P P E A R A N C E S:

16 FOR THE PLAINTIFFS: BERNSTEIN, LITOWITZ,
                      BERGER & GROSSMAN
17                    BY:  DAVID R. STICKNEY AND
                          JONATHAN D. USLANER
18                    12481 HIGH BLUFF DRIVE
                      SUITE 300
19                    SAN DIEGO, CALIFORNIA  92130

20

21        <u>APPEARANCES CONTINUED ON NEXT PAGE</u>

22

23

24 OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595
25

                                                        1

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE WELLS          MUNGER, TOLLES & OLSON
       FARGO DEFENDANTS:      BY:  DAVID H. FRY
5                             560 MISSION STREET, 27TH FLOOR
                              SAN FRANCISCO, CALIFORNIA  94108
6

7      FOR THE                PILLSBURY, WINTHROP,
       UNDERWRITER            SHAW & PITTMAN
8      DEFENDANTS:            BY:  BRUCE A. ERICSON
                              50 FREMONT STREET
9                             SAN FRANCISCO, CALIFORNIA  94105

10                            FRIED, FRANK, HARRIS,
                              SHRIVER & JACOBSON
11                            BY:  STEPHANIE J. GOLDSTEIN AND
                                   SHAHZEB LARI
12                            ONE NEW YORK PLAZA
                              NEW YORK, NEW YORK  10004

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              2

1    SAN JOSE, CALIFORNIA                MARCH 2, 2011

2              P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE CLERK:  CALLING CASE NUMBER

6    C-09-01376 LHK, GENERAL RETIREMENT SYSTEM OF THE

7    CITY OF DETROIT VERSUS WELLS FARGO SECURITIES.

8              MR. STICKNEY:  MORNING, YOUR HONOR.

9    DAVID STICKNEY WITH BERNSTEIN, LITOWITZ, BERGER &

10   GROSSMAN ON BEHALF OF LEAD PLAINTIFFS.

11             THE COURT:  OKAY.

12             MR. FRY:  GOOD AFTERNOON, YOUR HONOR.

13   DAVID FRY, MUNGER, TOLLES & OLSON FOR THE

14   WELLS FARGO DEFENDANTS AND THE INDIVIDUAL

15   DEFENDANTS.

16             MR. ERICSON:  GOOD AFTERNOON, YOUR HONOR.

17   BRUCE ERICSON ON PILLSBURY, WINTHROP, SHAW, PITTMAN

18   FOR THE UNDERWRITER DEFENDANTS.

19             AND I BELIEVE MY CO-COUNSEL ARE ON THE

20   TELEPHONE.

21             MS. GOLDSTEIN:  YES, YOUR HONOR.  THIS IS

22   STEPHANIE GOLDSTEIN AND I'M HERE WITH SHAHZEB LARI

23   OF FRIED, FRANK, HARRIS, SHRIVER & JACOBSON FOR THE

24   UNDERWRITER DEFENDANTS.

25             THE COURT:  OKAY.  GOOD AFTERNOON TO

1    EVERYONE.

2              AND I BELIEVE --

3              MR. USLANER:  GOOD AFTERNOON, YOUR HONOR.

4    JONATHAN USLANER ON BEHALF OF LEAD PLAINTIFFS FROM

5    BERNSTEIN, LITOWITZ, BERGER & GROSSMAN.

6              THE COURT:  OKAY.  GOOD AFTERNOON TO

7    EVERYONE.

8              WHAT IS THE STATUS OF THE APPEAL?  HAVE

9    ANY DATES BEEN SET ON THAT?

10             MR. STICKNEY:  I CAN SPEAK TO THAT.

11             THE COURT:  OKAY.

12             MR. STICKNEY:  THERE -- I GUESS THERE WAS

13   AN APPEAL FROM PART OF THIS CASE, AND THERE WERE

14   TWO SEPARATE CASES.

15             THEY HAVE NOW BEEN CONSOLIDATED INTO A

16   CONSOLIDATED APPEAL, AND THE OPENING PAPERS WILL BE

17   FILED ON APRIL 11TH.

18             THE COURT:  OKAY.

19             MR. STICKNEY:  AND THE REST OF THE

20   BRIEFING SCHEDULE ESCAPES ME, AND WE DON'T HAVE AN

21   ARGUMENT DATE YET.

22             THE COURT:  ALL RIGHT.  THAT'S FINE.

23             WITH REGARD TO THE -- ARE YOU SAYING ALL

24   OF THE CASES FROM THIS CASE, OR IT'S BEEN

25   CONSOLIDATED WITH A COMPLETELY SEPARATE CASE?

4

1          MR. STICKNEY:  NO.  THERE WAS -- THERE

2     WERE SOME ADDITIONAL NAMED PLAINTIFFS IN OUR

3     COMPLAINT.

4          THE COURT:  YES.

5          MR. STICKNEY:  THEIR CLAIMS WERE

6     DISMISSED AS UNTIMELY.

7          SEPARATELY, THERE WAS A CASE FILED BY A

8     DIFFERENT PURCHASER OF WELLS FARGO CERTIFICATES.  I

9     THINK THAT WAS THE FIRST NATIONAL BANK.

10          MR. FRY:  FIRST STAR BANK.

11          MR. STICKNEY:  FIRST STAR BANK, EXCUSE

12     ME.  I MISSPOKE, FIRST STAR BANK.

13          AND THEN THERE WAS A PROPOSED INTERVENOR

14     IN THIS CASE.

15          THE COURT:  ALL RIGHT.

16          MR. STICKNEY:  SO THAT'S WHAT I WAS

17     REFERRING TO.

18          THEY ALL ARRIVED IN THE APPELLATE COURT

19     AT DIFFERENT TIMES AND SORT OF SLIGHTLY DIFFERENT

20     TRACKS AND NOW THEY'RE ALL TOGETHER.

21          THE COURT:  OKAY.  I UNDERSTAND.

22          OKAY.  THANK YOU.  I WASN'T SURE IF IT

23     WAS SOME COMPLETELY UNRELATED CASE THAT WAS

24     SOMEHOW -- THAT HAD THE SAME ISSUES AND WAS BEING

25     CONSOLIDATED.

1          SO YOU HAVE A MEDIATION SET FOR MAY 13TH.

2     WHAT DO YOU NEED BEFORE THAT MEDIATION?

3          MR. STICKNEY:  WELL, I THINK WHERE WE ARE

4     PREPARING FOR -- WHERE WE'RE JUST PREPARING THE

5     CASE FOR ITS PRETRIAL PROCESS IS PROBABLY GOING TO

6     TAKE CARE OF THAT.

7          YOU KNOW, SORT OF WHERE WE ARE ON

8     DISCOVERY IS WE HAVE A -- THE PROCESS IS STARTING

9     WITH LARGELY DOCUMENT DISCOVERY, AND I THINK

10    DOCUMENT DISCOVERY WILL SORT OF PRECEDE MOST

11    DEPOSITION DISCOVERY IN THE CASE, AND WE'RE GETTING

12    DOCUMENTS ON KIND OF A ROLLING BASIS.

13         IF THERE'S ANYTHING THAT IT'S IMPORTANT

14    FOR US TO HAVE BEFORE THE MEDIATION, WE WON'T

15    HESITATE AT ALL TO CONTACT MR. FRY AND HIS

16    COLLEAGUES ON THE OTHER SIDE AND SAY, "FOR THIS TO

17    BE PRODUCTIVE, I REALLY NEED THIS CATEGORY OF

18    DOCUMENTS" AND SO ON AND SO FORTH.

19         THE COURT:  OKAY.  WHAT ABOUT MR. FRY,

20    MR. ERICSON, MS. GOLDSTEIN, MR. LARI, IS THERE

21    ANYTHING ELSE THAT YOUR RESPECTIVE CLIENTS NEED?

22         MR. FRY:  I DON'T THINK SO, NOT ORIENTED

23    TOWARDS THE MEDIATION, YOUR HONOR.

24         THE COURT:  OKAY.  WHAT ABOUT MR. ERICSON

25    OR MS. GOLDSTEIN OR MR. LARI?

1          MS. GOLDSTEIN:  WE'RE AGREED WITH

2   MR. FRY.

3          THE COURT:  OKAY.  ALL RIGHT.  OKAY.

4          BLESS YOU.

5          ALL RIGHT.  WITH REGARD TO THE PROTECTIVE

6   ORDER, JUDGE GREWAL WILL HANDLE THAT ISSUE.

7          WITH REGARD TO THE DISCOVERY LIMITS AND

8   THE MODIFICATION OF THE SCHEDULE, I'VE READ WHAT'S

9   IN THE CASE MANAGEMENT STATEMENT, BUT IF THERE'S

10  ANYTHING ELSE YOU'D LIKE TO SAY ON THAT SCORE?

11         MR. STICKNEY:  YES, IF I MAY JUST -- IN

12  SORT OF PREPARING FOR THE HEARING, I READ THE

13  STATEMENT.  THERE'S MAYBE A COUPLE POINTS I COULD

14  AMPLIFY.

15         I GUESS FIRST JUST IN TERMS OF TIMING,

16  OFTENTIMES THESE KIND OF CONSIDERING MODIFICATION

17  TO LIMITS IS DONE AT THE INITIAL STAGE, AT THE CASE

18  MANAGEMENT CONFERENCE, AS SORT OF PART OF RULE 16

19  AND WHAT'S SET FORTH IN THE STANDING ORDERS AND THE

20  LOCAL RULES.

21         HERE, AT THAT TIME WHAT WE SUGGESTED IS

22  LET'S WAIT UNTIL WE GET INITIAL DISCLOSURES, LET'S

23  WAIT UNTIL WE HAVE AT LEAST PART OF THE DOCUMENT

24  PRODUCTION GOING SO THAT, YOU KNOW, AT LEAST FROM

25  THE PLAINTIFFS' STANDPOINT, WE CAN SORT OF LOOK AND

1    MAKE AN INFORMED DECISION ON WHAT MIGHT BE RATIONAL

2    PRELIMINARY LIMITS.

3              SO WE DID THAT AND, YOU KNOW, IT -- MY

4    OWN PERSONAL -- YOU KNOW, FROM MY STANDPOINT,

5    THERE'S NO -- I TAKE AS FEW DEPOSITIONS AS

6    POSSIBLE.  THERE'S NO ADVANTAGE OR BENEFIT TO ME TO

7    TAKE MORE DEPOSITIONS THAN I NEED TO TAKE.

8              I LOOK AT THE VARIOUS SOURCES OF

9    INFORMATION THAT WE HAVE HERE, STARTING FROM THE

10   INITIAL DISCLOSURES AND WHAT I SEE IN THE DOCUMENTS

11   IN TERMS OF EMPLOYEES WHO MIGHT WE NEED TO ASK

12   QUESTIONS OF ABOUT DOCUMENTS THEY RECEIVED OR

13   AUTHORED.

14             I LOOKED AT JUST THE NUMBER OF

15   DEFENDANTS.  WE HAVE FIVE INDIVIDUAL DEFENDANTS; WE

16   HAVE SEVEN SEPARATE WALL STREET BANKS; WE'VE GOT

17   TWO WELLS FARGO ENTITIES.

18             ALL OF THEM HAVE SEPARATELY IDENTIFIED

19   PEOPLE THAT THEY THINK ARE GOING TO SUPPORT THEIR

20   CLAIMS AND DEFENSES, WHICH TOTAL 36, WHICH ALREADY

21   EXCEEDS WHAT I'M SUGGESTING AS A PRELIMINARY LIMIT

22   HERE.

23             THE OTHER CATEGORIES OF LIKELY WITNESSES,

24   LIKE RATING AGENCIES, THE 64 PEOPLE OR SO THAT THEY

25   IDENTIFIED AND -- YOU KNOW, IT REALLY COULD BECOME

1    A SUBSTANTIAL NUMBER OF LIKELY DEPONENTS AROUND THE

2    100 WITNESS RANGE, OR MORE.

3              SO WITH ALL THIS IN MIND AND TRYING TO

4    AVOID A SITUATION WHERE THIS BECOMES AN OBSTACLE TO

5    CASE MANAGEMENT BECAUSE WE CAN'T EFFECTIVELY

6    CALENDAR DEPOSITIONS OR WE HAVE TO, YOU KNOW,

7    RETURN TO THE COURT REPEATEDLY FOR WHAT, IF I DON'T

8    MIND MY SAYING SO, IS OBVIOUSLY A REASONABLE LIMIT

9    OF 30 DEPOSITIONS HERE, WE SUGGESTED THAT.

10             I KNOW THE OTHER SIDE SUGGESTED WE SHOULD

11   DO -- START WITH 20 AND WE CAN COME BACK AS WE GO.

12             AND MY CONCERN ABOUT THAT IS THERE SEEMS

13   TO BE SORT OF AN ABSENCE OF A BASIS FOR IT OTHER

14   THAN IT'S FEWER THAN WHAT WE'VE PROPOSED.

15             IN OTHER WORDS, THERE'S NO, "WELL, WE

16   LOOKED AT THE SAME CATEGORIES OF WITNESSES THAT

17   YOU'VE LOOKED AT AND WE THINK THIS CASE COULD BE

18   PREPARED FOR TRIAL IN, YOU KNOW, 19 OR 20

19   WITNESSES, HERE'S WHERE THEY ARE."

20             THAT'S NOT THE TYPE OF DISCUSSION WE'RE

21   HAVING.

22             SO WITH THAT, YOUR HONOR, I THINK A 30

23   DEPOSITION LIMIT WOULD BE A SENSIBLE ONE FOR US TO

24   BEGIN WITH, AND IF WE NEED ADDITIONAL DEPOSITIONS

25   AND WE'RE UNABLE TO AGREE TO IT, WE'LL SEEK FURTHER

1    LEAVE OF COURT.

2              AS SORT OF PART OF OUR CONSIDERATION OF

3    THIS, IT WAS WE'RE HOPEFUL -- WE ARE HOPEFUL THAT

4    WE CAN, YOU KNOW, AVOID CERTAIN DEPOSITIONS, THAT

5    WE COULD GET THE SAME INFORMATION THROUGH WRITTEN

6    DISCOVERY IF POSSIBLE, WHICH EXPLAINS IN PART OUR

7    EXPLANATION FOR INCREASING THE LIMITS FROM 25

8    DEPOSITIONS -- OR EXCUSE ME -- 25 INTERROGATORIES

9    PER PARTY TO 50 INTERROGATORIES PER PARTY.

10             AND, YOU KNOW, WE CONSIDERED ALL THE

11   VARIOUS SUBJECT MATTERS THAT COULD LIKELY BE

12   COVERED IN INTERROGATORIES IN THIS CASE FROM, YOU

13   KNOW, OUR CLAIMS OF FALSE UNDERWRITING STANDARDS

14   THAT WOULD PERTAIN TO ORIGINATION PROCESSES AND

15   DIFFERENT LENDING CHANNELS, TO THE DEFENSES THAT

16   THEY'VE ASSERTED, DUE DILIGENCE DEFENSES, STATUTE

17   OF LIMITATIONS DEFENSES, CAUSATION DEFENSES.

18             AND GIVEN THE SIZE OF THE CASE, THE 17

19   OFFERINGS, INCREASING THE LIMITS TO 50 SEEMED LIKE

20   IT WOULD BE A SENSIBLE CASE MANAGEMENT APPROACH,

21   AND THAT SORT OF EXPLAINS MY THOUGHTS ON WHERE WE

22   CAME OUT.

23             THE COURT:  LET ME ASK ABOUT THE ONE

24   DISCOVERY MOTION AND THE ONE POTENTIAL STILL

25   HOPEFULLY IN THE PROCESS OF BEING RESOLVED

1    DISCOVERY MOTION THAT THE DEFENDANTS HAVE RAISED

2    THAT THE PLAINTIFFS ARE SORT OF POINTING A FINGER

3    AT EACH OTHER WITH REGARD TO WHAT THE PLAINTIFF HAS

4    AND WHAT THE INVESTMENT ADVISORS HAVE.

5           THAT WAS ONE ISSUE, I THINK, THAT THE

6    DEFENDANTS HAVE RAISED.

7           AND THE SECOND ONE WAS THE MOTION TO

8    COMPEL PLAINTIFFS' DOCUMENTS.  THAT'S SET FOR

9    HEARING ON MARCH 15TH.

10          NOW, OBVIOUSLY ALL OF THOSE MOTIONS WILL

11   BE DECIDED BY JUDGE GREWAL.

12          BUT I WANTED TO GET A LITTLE MORE SENSE

13   ABOUT THOSE AND SEE, CAN WE HEAD OFF MORE MOTIONS,

14   AT LEAST THE THIRD ONE THAT'S SORT OF PERCOLATING?

15          MR. STICKNEY:  I'M SORRY, YOUR HONOR.

16          LET ME JUST ADDRESS KIND OF THE STATUS OF

17   WHAT THESE ARE, AND IF I DON'T ANSWER YOUR

18   QUESTIONS, YOU CAN --

19          THE COURT:  WELL, OKAY.  LET'S START WITH

20   THE ONE THAT YOU ALL ARGUED ON MARCH 1ST.

21          MR. STICKNEY:  OKAY.

22          THE COURT:  HOW MANY SUBPOENAS ARE

23   PENDING TO THE ABSENT CLASS MEMBERS?

24          MR. STICKNEY:  THERE ARE 17 SUBPOENAS TO

25   ABSENT CLASS MEMBERS.

11

1          THE COURT:  OKAY.

2          MR. STICKNEY:  AND THIS DISCOVERY IN THE

3    CLASS ACTION CONTEXT TO ABSENT CLASS MEMBERS IS

4    HIGHLY IRREGULAR, AND SO WE BROUGHT A MOTION TO

5    PREVENT THAT TYPE OF DISCOVERY ABSENT A SHOWING OF

6    NECESSITY, AND THAT WAS ARGUED YESTERDAY.

7          THE COURT:  LET ME ASK A QUESTION OF THE

8    DEFENDANTS.

9          THERE'S A STATEMENT IN THE CASE

10   MANAGEMENT STATEMENT THAT THE DEFENDANTS WOULD NOT

11   AGREE TO EXPEDITE THE HEARING ON THE --

12          I GUESS THAT WAS, WHAT, A MOTION FOR

13   PROTECTIVE ORDER, MR. STICKNEY?

14          MR. STICKNEY:  YES, THAT'S RIGHT.

15          THE COURT:  TO QUASH?

16          MR. STICKNEY:  I BELIEVE IT'S CAPTIONED A

17   MOTION TO QUASH OR -- EXCUSE ME -- A MOTION FOR

18   PROTECTIVE ORDER OR TO QUASH.  I BELIEVE THAT'S HOW

19   IT'S CAPTIONED.

20          THE COURT:  OKAY.  WHY WOULDN'T THE

21   DEFENDANTS AGREE TO EXPEDITE THAT HEARING?

22          MR. FRY:  YOUR HONOR, THAT STATEMENT IS

23   SIMPLY INACCURATE.

24          WE DID -- WE FILED A STIPULATION WITH

25   JUDGE GREWAL, WHICH HE REJECTED.  HE DID NOT WANT

1    THE PROPOSED SCHEDULE THAT THE PARTIES PUT FORWARD.

2              AND SO THE QUESTION WAS WHETHER WE WOULD

3    GO BACK TO HIM A SECOND TIME WITH A NEW STIPULATION

4    ON A SHORTENED SCHEDULE, AND WE MADE THE JUDGMENT

5    THAT SINCE ONE OF THE ARGUMENTS THEY WERE MAKING

6    AGAINST OUR DISCOVERY IS THEY CAN GET THIS

7    DISCOVERY FROM OUR INVESTMENT ADVISORS, WE WOULD

8    WAIT AND SEE A FEW MORE WEEKS WHAT WE WERE GOING TO

9    GET FROM THE INVESTMENT ADVISORS.

10             AND IF WE, IN FACT, GOT WHAT WE WERE

11   LOOKING FOR FROM THE INVESTMENT ADVISORS, MAYBE IT

12   WOULD NOT BE IMPORTANT WHETHER OR NOT WE GOT

13   DISCOVERY FROM THESE OTHER SOPHISTICATED INVESTORS.

14             WE DIDN'T GET THAT KIND OF DISCOVERY AND,

15   IN FACT, WE'VE BEEN GETTING A CONTINUED RUNAROUND

16   FROM THE INVESTMENT ADVISORS, AND SO WE WENT

17   FORWARD WITH THE ARGUMENT YESTERDAY.

18             BUT GIVEN THAT THEY WERE SAYING THAT WE

19   COULD GET THIS FROM THESE OTHER WITNESSES, WE

20   THOUGHT THAT IT MADE SENSE TO SEE WHAT THE OTHER

21   WITNESSES WERE GOING TO GIVE US BEFORE PUTTING THE

22   COURT THROUGH THAT AND BEFORE PURSUING THE

23   DISCOVERY WITH RESPECT TO THESE OTHER WITNESSES.

24             THE COURT:  HAVE YOU ALREADY SERVED

25   SUBPOENAS ON THE INVESTMENT ADVISORS?

 1              MR. FRY:  YES, IN DECEMBER, YOUR HONOR.

 2              THE COURT:  OKAY.  SO YOU'RE SAYING THE

 3     NEGOTIATION BACK AND FORTH ABOUT THEIR PRODUCTION

 4     IS WHAT YOU BELIEVE IS CAUSING THIS SORT OF

 5     CIRCULAR CONVERSATION?

 6              MR. FRY:  YOUR HONOR, THERE ARE A COUPLE

 7     OF DIFFERENT CIRCULAR CONVERSATIONS GOING ON.

 8              THERE'S ONE ISSUE ABOUT WHETHER THE

 9     PLAINTIFFS SHOULD BE REQUIRED TO PRODUCE DOCUMENTS

10     IN THE POSSESSION OF THEIR INVESTMENT ADVISORS IF

11     THEY HAVE CONTROL OVER THOSE DOCUMENTS.

12              FOR INSTANCE, ONE OF THE PLAINTIFFS -- WE

13     HAVEN'T GOTTEN ALL OF THE CONTRACTS WITH THE

14     INVESTMENT ADVISORS -- OR AT LEAST WE HAVEN'T

15     BEFORE LAST WEEK, I'M NOT SURE NOW -- BUT AS OF THE

16     TIME THAT THIS ISSUE AROSE, WE HAD A CONTRACT

17     BETWEEN ACERA, ONE OF THE PLAINTIFFS, THE ALAMEDA

18     COUNTY RETIREMENT FUND, AND ONE OF THEIR INVESTMENT

19     ADVISORS THAT SAID THEY COULD GET, AT ANY TIME,

20     DOCUMENTS RELATING TO THEIR ACCOUNT.

21              AND WE THINK UNDER THE LAW, THAT MEANS

22     THAT ACERA HAS CONTROL OVER THOSE DOCUMENTS AND

23     THAT MEANS THEY HAVE TO PRODUCE THEM TO US.

24              SO THERE'S THAT ISSUE.

25              BUT THERE'S A SEPARATE ISSUE GOING ON

                                                        14

1   WITH THE INVESTMENT ADVISORS WHERE WE SUBPOENAED A

2   COUPLE OF DIFFERENT INVESTMENT ADVISORS, AND ONE OF

3   THEM TELLS US, "OH, THE PEOPLE WHO ADVISED THIS

4   PENSION FUND LEFT AND TOOK THEIR DOCUMENTS WITH

5   THEM."

6           AND THEN WE SUBPOENAED THE COMPANY WHERE

7   THEY WENT AND THEY SAID, "OH, THOSE PEOPLE ARRIVED

8   AFTER THEY MADE THAT INVESTMENT AND THEIR DOCUMENTS

9   ARE BACK WITH THE FIRST ONE."

10          SO WE'RE GETTING THE RUNAROUND FROM THEM

11  ABOUT WHO HAS THE DOCUMENTS RELATING TO THOSE

12  INVESTMENTS AND WE'RE NOT GETTING DOCUMENTS FROM

13  ANYONE.

14          SO WE'RE TRYING TO SORT THOSE THINGS OUT

15  AND WE'RE TRYING TO DO IT WITH THE MINIMUM AMOUNT

16  OF COURT INVOLVEMENT.

17          BUT, YOU KNOW, IT'S TAKING TIME.

18          THE COURT:  WELL --

19          MR. STICKNEY:  YOUR HONOR, I --

20          THE COURT:  THESE DISPUTES ARE GOING TO

21  GO BEFORE JUDGE GREWAL.

22          MY ONLY REQUEST TO THE PARTIES IS TO TRY

23  TO MINIMIZE THIS AS MUCH AS POSSIBLE AND, YOU KNOW,

24  TO BE AS COOPERATIVE AS POSSIBLE.

25          DO YOU WANT TO RESPOND?  I MEAN, I REALLY

1    WOULD LIKE TO HEAD OFF A THIRD MOTION IN THIS CASE.

2          IS THERE ANY WAY WE CAN DO THAT,

3    MR. STICKNEY, ON THE ONE THAT'S CURRENTLY BEING MET

4    AND CONFERRED UPON?

5          MR. STICKNEY:  YEAH.

6          JUST RESPONDING BRIEFLY TO THE ONE

7    POINT --

8          THE COURT:  YEAH.

9          MR. STICKNEY:  -- ABOUT WHY THEY DIDN'T

10   AGREE TO AN EXPEDITED RESOLUTION OF OUR MOTION FOR

11   PROTECTIVE ORDER, THE EXPLANATION IS NOT CONSISTENT

12   WITH MY UNDERSTANDING.

13         I DON'T BELIEVE WE EVER TOOK THE POSITION

14   THAT, "SEE WHAT WE GET FROM OUR INVESTMENT ADVISORS

15   BEFORE YOU SEEK DISCOVERY FROM ABSENT CLASS

16   MEMBERS."  THAT MAKES NO SENSE.  THAT'S NOT OUR

17   POSITION.

18         FOR WHATEVER REASON, THE MOTION WASN'T

19   BROUGHT ON AN EXPEDITED BASIS.  IT WAS BROUGHT ON

20   THE TIMEFRAME THAT IT WAS BROUGHT ON.

21         THAT WAS THEIR DECISION.  THAT'S FINE.

22         IN TERMS OF THE OTHER POTENTIAL MOTIONS

23   THAT THEY'RE CONSIDERING BRINGING, I MEAN, I'VE

24   SEEN THE CHARACTERIZATIONS IN THE CASE MANAGEMENT

25   STATEMENT THAT THEY'RE GETTING THE RUNAROUND.

16

```
 1              I'M NOT -- I'M NOT SURE -- I DON'T KNOW
 2      WHERE THAT'S HEADING IN TERMS OF A MOTION.
 3              THEY'VE ALREADY MOVED TO COMPEL
 4      ADDITIONAL DOCUMENTS TO US THAT THEY BELIEVE THAT
 5      THEY'RE ENTITLED TO.
 6              WE'VE MOVED TO COMPEL DOCUMENTS THAT
 7      THEY'VE OBJECTED TO PRODUCING.
 8              IF THEY HAVE -- IF THEY BELIEVE --
 9              THE COURT:  ARE THERE TWO MOTIONS SET FOR
10      MARCH 15TH?
11              MR. FRY:  THERE ARE, YES.
12              MR. STICKNEY:  YES, YOUR HONOR.
13              THE COURT:  OH, I DIDN'T REALIZE THAT.
14              MR. STICKNEY:  THERE'S AN ONGOING
15      DOCUMENT PRODUCTION FROM WELLS FARGO, AND THEN
16      THERE ARE CERTAIN CATEGORIES OF DOCUMENTS THAT THEY
17      OBJECTED TO PRODUCING AND WE'VE MOVED TO COMPEL
18      THOSE DOCUMENTS.
19              AND THEN AFTER WE FILED OUR MOTION, THEY
20      FILED A MOTION TO COMPEL ADDITIONAL DOCUMENTS FROM
21      US AND WE AGREED TO A SHORTENED BRIEFING SCHEDULE
22      FOR THAT SO IT COULD BE HEARD ON THE SAME DAY,
23      MARCH 15TH.
24              THE COURT:  OKAY.  WELL, DO ANY OF THE
25      DEFENDANTS WANT TO BE HEARD -- I MEAN, I WILL JUST
```

17

1    TELL YOU THAT I WOULD BE INCLINED TO GRANT THE

2    EXTENSION ON THE BRIEFING AND HEARING SCHEDULE FOR

3    THE CLASS CERTIFICATION MOTION SO THAT YOU CAN SEE

4    IF JUDGE GREWAL WILL LET YOU GET ADDITIONAL

5    DISCOVERY FOR THAT MOTION.

6              AND I'M ALSO INCLINED TO GRANT THE

7    PLAINTIFFS' REQUEST WITH REGARD TO THE DISCOVERY

8    LIMITS.

9              I THINK FOR A CASE WITH THIS MANY PARTIES

10   AND OF THIS COMPLEXITY, WITH THIS MUCH POTENTIAL

11   DAMAGES, I THINK 50 INTERROGATORIES IS NOT

12   UNREASONABLE FOR THIS KIND OF A COMPLEX CASE.

13             BUT IF YOU WANT TO -- THAT'S WHERE I'M

14   LEANING.  IF YOU WANT TO TALK ABOUT ANY OF THOSE,

15   GO AHEAD, PLEASE.

16             MR. FRY:  YOUR HONOR, ONLY BRIEFLY.

17             I WILL TAKE MR. STICKNEY AT HIS WORD THAT

18   HE WON'T TAKE ANY MORE DEPOSITIONS THAN HE NEEDS

19   TO.

20             AND WITH RESPECT TO INTERROGATORIES, I

21   THINK IT WILL DEPEND ON WHAT THE INTERROGATORIES

22   ARE.  THERE ARE SOME KINDS OF INTERROGATORIES THAT

23   ARE REASONABLE, AND EVEN IF THERE ARE A NUMBER OF

24   THEM, THEY CAN BE HANDLED STRAIGHTFORWARDLY; AND

25   THERE ARE OTHERS THAT ARE NOT REASONABLE AND WE'LL

1    DEAL WITH THAT AS THEY COME IN.

2              THE COURT:  OKAY.  SO THEN YOU DON'T HAVE

3    ANY OBJECTION TO INCREASING THE DEPOSITION LIMIT TO

4    30 AND THE INTERROGATORY LIMIT TO 50?

5              MR. FRY:  YOUR HONOR, IF YOU'RE INCLINED

6    TO DO THAT, WE'LL GO ALONG WITH THAT AND WE'LL DEAL

7    WITH ANY ISSUES THAT -- WHERE WE THINK THERE MIGHT

8    BE AN EXCESSIVE BURDEN IF THEY ARISE.

9              THE COURT:  I DEFINITELY DON'T WANT TO

10   OVERBURDEN THE PARTIES.

11             AND I'M HOPING THAT -- MR. STICKNEY, IF

12   YOU DON'T NEED 30, PLEASE DON'T GO TO 30.

13             BUT ON THE OTHER HAND, THIS IS A VERY

14   COMPLEX, BIG CASE AND I THINK IT MAY BE EASIER TO

15   DO IT THIS WAY RATHER THAN GIVING YOU 25 AND MAKING

16   YOU COME BACK IN TWO OR THREE MONTHS ASKING FOR

17   FIVE MORE.  SO THAT'S MY REASONING ON THAT.

18             AND I SET A VERY, VERY TIGHT SCHEDULE

19   WHEN YOU WERE HERE IN OCTOBER AND THIS EXTENSION

20   REQUEST SEEMS REASONABLE IN LIGHT OF THE ADDITIONAL

21   DISCOVERY THAT YOU'RE TRYING TO GET.

22             AND THESE -- THIS BASICALLY ONE MONTH

23   EXTENSION DOESN'T AFFECT ANY OF THE OTHER DEADLINES

24   IN THE CASE, WHICH IS WHAT I LIKE ABOUT IT.

25             IT DOESN'T AFFECT ANY OF THE DISCOVERY

1    CUTOFFS OR RESPONSES TO THE MOTIONS.

2             SO UNLESS ANYONE WANTS TO BE HEARD, I'M

3    GOING TO AGO AHEAD, THEN, AND GRANT THE DEFENDANTS'

4    REQUEST OF EXTENDING THE OPPOSITION DEADLINE TO

5    MAY 5TH; THE REPLY DEADLINE TO MAY 26TH; AND THE

6    HEARING ON CLASS CERTIFICATION TO JUNE 16TH.

7             THE DEPOSITION LIMIT WILL BE 30 AND THE

8    INTERROGATORY LIMIT WILL BE 50.

9             MR. STICKNEY:  YOUR HONOR, I HAVE ONE

10   REQUEST FOR A MODIFICATION OF THAT.

11            THE COURT:  OKAY.  WHAT'S THAT?

12            MR. STICKNEY:  AS IT IS NOW, OUR

13   OPPOSITION, I BELIEVE, IS DUE --

14            THE COURT:  THE 26TH OF MAY.

15            MR. STICKNEY:  YEAH, THE 26TH OF MAY, AND

16   I WAS GOING TO SUGGEST MAKING THAT A WEEK LATER.

17            THE COURT:  THAT IS FINE AS LONG AS I GET

18   ENOUGH TIME TO PREPARE FOR THE HEARING.

19            MR. STICKNEY:  RIGHT.

20            THE COURT:  SO LET ME JUST SEE.

21            AND I DID THINK OF THAT.  I MEAN,

22   OBVIOUSLY THIS EXTENSION -- IT WOULD HAVE BEEN

23   NICER HAD IT BEEN MADE BEFORE THE OPENING BRIEF SO,

24   YOU KNOW, MR. STICKNEY WOULDN'T HAVE BEEN

25   DISADVANTAGED AND THE DEFENDANTS WOULDN'T HAVE AN

1    EXTRA WHOLE MONTH THAT YOU DIDN'T HAVE ON THE

2    OPENING.

3              SO I'M FINE WITH GIVING YOU MORE TIME.

4              LET ME JUST CHECK TO SEE HOW THAT WORKS

5    OUT IN TERMS OF THE SCHEDULE.

6              SO MAY 26TH -- SO YOU WANT UNTIL

7    JUNE 2ND?  IS THAT CORRECT?

8              MR. STICKNEY:  PLEASE.

9              THE COURT:  OKAY.  THAT'S FINE.

10             NOW, I WOULD ANTICIPATE -- THIS IS GOING

11   TO BE QUITE COMPLEX AND I WANT MORE THAN TWO WEEKS

12   TO PREPARE.

13             ARE YOU ALL AVAILABLE --

14             WHAT'S OUR SCHEDULE, MS. PARKER-BROWN, ON

15   JUNE 23RD?

16             THE CLERK:  WE HAVE -- WE MAY BE -- WE

17   HAVE A BENCH TRIAL AND A JURY TRIAL SCHEDULED, AND

18   THEN THERE'S TWO CASES THAT IT'S THE LAST DAY FOR

19   DISPOSITIVE MOTIONS --

20             THE COURT:  FOR THE 1:30?

21             THE CLERK:  -- TO BE HEARD, YES.

22             BUT ONE -- ONE CASE I BELIEVE IS

23   SETTLING.

24             THE COURT:  OKAY.  WELL, LET'S -- THEN

25   I'D LIKE TO MOVE THIS -- ARE YOU ALL AVAILABLE IF I

21

1    PUSH THE HEARING BACK ONE WEEK TO JUNE 23RD?

2              MR. FRY:  YES, YOUR HONOR.

3              MR. STICKNEY:  WE ARE, YOUR HONOR.

4              THE COURT:  WHAT ABOUT MS. GOLDSTEIN AND

5    MR. LARI?

6              MS. GOLDSTEIN:  THAT'S FINE WITH US AS

7    WELL.

8              THE COURT:  OKAY.  SO LET'S MOVE THAT

9    HEARING TO JUNE 23RD.

10             ALL RIGHT.  ANY OTHER MODIFICATIONS?

11   THAT'LL STILL BE AT 2:00 O'CLOCK.

12             ANY OTHER MODIFICATIONS OR ANYTHING ELSE

13   THAT WE NEED TO DISCUSS?

14             MR. STICKNEY:  NO.

15             THE ONLY THING I MIGHT SUGGEST, YOUR

16   HONOR, IS SCHEDULING ANOTHER CASE MANAGEMENT

17   CONFERENCE AS SORT OF A CONTROL DATE.

18             THE COURT:  AH, GOOD.  NOW, ONE OPTION

19   WOULD BE JUST TO DO IT AFTER THE HEARING.  I'M

20   ASSUMING THIS IS GOING TO BE A HEARING AND I'M NOT

21   GOING TO VACATE THE HEARING DATE.

22             THE CLERK:  YOU SAID 2:00 O'CLOCK.  DO

23   YOU MEAN 1:30?

24             THE COURT:  OH, I'M SORRY.  I MEAN 1:30,

25   YEAH.  I MEAN 1:30.  THANK YOU.

1          SO WE COULD DO IT AFTER THAT, OR WE COULD

2     ALSO SCHEDULE IT.  WHICH WOULD BE BETTER TO HAVE

3     THAT, AFTER THE RULING ON THE MOTION?  WHAT'S YOUR

4     VIEW?

5          MR. STICKNEY:  I THINK HAVING IT

6     CONCURRENTLY MAKES SENSE, YOUR HONOR.

7          MR. FRY:  I THINK FROM A SCHEDULING

8     STANDPOINT THAT MAKES A LOT OF SENSE, YOUR HONOR.

9     PEOPLE WILL BE HERE.  IT WOULD BE A GOOD TIME TO DO

10    IT.

11         MR. ERICSON:  I AGREE.

12         THE COURT:  OKAY.  SO THEN -- ALL RIGHT.

13         SO WE'LL HAVE -- WITH NO VIEW TO THE

14    CONTRARY, MS. GOLDSTEIN OR MR. LARI?

15         MS. GOLDSTEIN:  THAT'S FINE WITH US AS

16    WELL, YOUR HONOR.

17         THE COURT:  OKAY.  AM I PRONOUNCING THAT

18    CORRECTLY?  IT'S MR. LARI?

19         MR. LARI:  YES, YOUR HONOR.

20         THE COURT:  OKAY, THANK YOU.

21         ALL RIGHT.  SO THEN OUR NEXT CMC WILL BE

22    MAY 19TH AT 1:30 -- I'M SORRY -- JUNE 23RD, NOW

23    THAT I'VE MOVED IT, JUNE 23RD AT 1:30 FOLLOWING THE

24    LAW AND MOTION HEARING.

25         ANYTHING ELSE?

1          MR. STICKNEY:  NOTHING FROM PLAINTIFFS,

2     YOUR HONOR.

3          MR. FRY:  NO.

4          MR. ERICSON:  NOTHING, YOUR HONOR.

5          THE COURT:  ALL RIGHT.  THANK YOU VERY

6     MUCH.

7          MR. STICKNEY:  THANK YOU, YOUR HONOR.

8          MR. FRY:  THANK YOU, YOUR HONOR.

9          MR. ERICSON:  THANK YOU, YOUR HONOR.

10          (WHEREUPON, THE PROCEEDINGS IN THIS

11     MATTER WERE CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4                    CERTIFICATE OF REPORTER
5
6
7
8         I, THE UNDERSIGNED OFFICIAL COURT
9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR
10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
12   CERTIFY:
13         THAT THE FOREGOING TRANSCRIPT,
14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND
15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS
16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
18   TRANSCRIPTION TO THE BEST OF MY ABILITY.
19
20
21
22
23              /S/
                _____
24              LEE-ANNE SHORTRIDGE, CSR, CRR
                CERTIFICATE NUMBER 9595
25