MARC T.G. DWORSKY (SBN 157413)
Marc.Dworsky@mto.com
KATHLEEN M. McDOWELL (SBN 115976)
Kathleen.McDowell@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 25th floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:     (213) 687-3702

DAVID H. FRY (SBN 189276)
David.Fry@mto.com
CAROLYN V. ZABRYCKI (SBN 263541)
Carolyn.Zabrycki@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street,  27th floor
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants
WELLS FARGO DEFENDANTS AND THE
INDIVIDUAL DEFENDANTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-01376 (LHK)<br><br>**CONSOLIDATED CLASS ACTION ECF**<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF RECENT DECISIONS**<br><br>Judge:      Hon. Paul S. Grewal |

1   Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully submits this
2   response to Plaintiffs' Statement of Recent Decisions.

3   **Exhibit A**

4   Plaintiffs first submit an order of the Second Circuit Court of Appeals granting
5   Rule 23(f) review of Judge Baer's decision denying class certification in *New Jersey Carpenters*
6   *Health Fund v. Residential Capital LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011). Plaintiffs suggest that
7   the order "call[s] into question" Judge Baer's decision, but it does nothing of the sort. The order
8   does not vacate Judge Baer's decision, which remains good law, and it does not critcize or
9   question Judge Baer's decision in any way—it just grants review. Judge Baer's decision was the
10  first to address certification of a class of mortgage-backed securities purchasers and there are at
11  least 14 other putative MBS class actions pending in district courts in the Second Circuit right
12  now. Accordingly, the need for authoritative guidance on how the issue should be analyzed
13  provided a compelling reason for the grant of review that has nothing to do with the Second
14  Circuit's views on Judge Baer's reasoning. The inference Plaintiffs ask the Court to draw simply
15  is not warranted.

16  Reflecting how little can properly be read into the Second Circuit's order,
17  Plaintiffs improperly use the bulk of their argument with respect to this exhibit to contend that
18  Judge Baer's decision should not be considered because it is from outside the district (an issue as
19  to which the Second Circuit's order is completely irrelevant). Ironically, Plaintiffs cite an *out-of-*
20  *district opinion* for this proposition.

21  **Exhibit B**

22  Taking the irony of their Statement to entirely new levels, Plaintiffs' second
23  "recent decision" is an out-of-district opinion—indeed, it is another opinion issued by Judge Baer
24  in the very same case, *New Jersey Carpenters Health Fund v. Residential Capital LLC*.
25  Apparently, out-of-district opinions are authoritative only if Plaintiffs agree with them.

26  In a very brief passage in his opinion attached as Exhibit B to Plaintiffs'
27  Statement, with no analysis, Judge Baer found that distribution reports by issuers of MBS do not
28  qualify as "earnings statements" under Section 11 because they do not "include the 'information

required' for the traditional earnings statement." *Id.* at 9.  Judge Baer apparently did not appreciate (because the parties' briefs did not tell him) that the SEC *mandated* these reports be filed in place of the "information required for the traditional earnings statement."  Issuers of asset-backed securities are expressly *exempted* from providing a "traditional" statement of income and are instead *required* to file a Form 10-D attaching distribution and pool performance information because the SEC has concluded that the distribution reports better serve the function of financial statements for these securities than do the "traditional" data.  *See Asset-Backed Securities*, 70 Fed. Reg. 1506, 1533 (Jan. 7, 2005) (stating that the "objectives for financial statements—to present results of financial activity during a period—can be addressed more particularly by [disclosing] distributions on the asset-backed securities.").

When adopting a regulatory regime specific to asset-backed securities, the SEC created Form 10-D as a substitute for Form 10-Q to ensure that MBS investors received the financial data most pertinent to that type of investment, including the cash flows and performance of the assets underlying the mortgage pool and the distribution of payments on the securities backed by that pool.  *Id.* at 1509-10.  The financial information normally required for Form 10-K, in turn, can be omitted for asset-backed securities.  *Id.* at 1510, 1561-62.  As the SEC recognized, "[a]sset-backed securities and ABS issuers differ from corporate securities and operating companies," and consequently "the ongoing periodic and current reporting requirements applicable to operating companies do not elicit information that would be most relevant for asset-backed securities."  *Id.* at 1509.  The financial disclosures required by Form 10-D consist of the distribution and pool performance information which would be expected in an issuer's monthly distribution report; indeed, the Form 10-D directs issuers to attach the distribution report delivered to security holders as an exhibit.  *Id.* at 1566.  The reason for this approach is that "the distribution report . . . will likely contain most, if not all, of the disclosures about the distribution and pool performance that will be required," and typically the financial information in the attached distribution report fully satisfies the issuer's disclosure obligations.  *Id*.

The distribution reports, as the periodic financial disclosure required by the SEC for asset-backed securities, fit squarely within the "earning statement" provision of § 11, as the

financial information contained in distribution reports "regarding an ABS transaction is important to an understanding of transaction performance and, hence, investment decisions, including whether existing holders should sell their securities and whether prospective buyers should purchase them." 70 Fed. Reg. at 1551; *see Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608 (1979) (courts must "interpret the words of these statutes in light of the purposes Congress sought to serve"). Judge Baer's decision to the contrary appears to have stemmed from receiving very limited briefing from the parties on this complex area of regulation. *See* Dkt. No. 404 Exs. I, J, K (briefs submitted to Judge Baer).

Plaintiffs' effort to reargue their contention that there is no reliance requirement under Section 11, citing a case other than the one they submitted, is inappropriate in connection with this Statement of Recent Decision. Indeed, that argument is flatly contradicted by Judge Baer's opinion, as well as the express language of the statute. Ex. B at 9 ("A section 11 plaintiff must prove reliance if it purchases the subject securities 'after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement . . . .'") (quoting 15 U.S.C. 77k(a)(5)).

Dated: May 6, 2011                                MUNGER, TOLLES & OLSON LLP

                                                   /s/ *David H. Fry*
                                                  DAVID H. FRY

                                                  Attorneys for the Wells Fargo Defendants and the Individual Defendants

- 3 -

DEFTS.' RESPONSE TO STATEMENT OF RECENT DEC.
CASE NO. 09-1376-LHK (PSG)