BERNSTEIN LITOWITZ BERGER
      & GROSSMANN LLP
DAVID R. STICKNEY  (Bar No. 188574)
TIMOTHY A. DeLANGE  (Bar No. 190768)
NIKI L. MENDOZA (Bar No. 214646)
MATTHEW P. JUBENVILLE (Bar No. 228464)
TAKEO A. KELLAR (Bar No. 234470)
JONATHAN D. USLANER (Bar No. 256898)
PAUL M. JONNA (Bar No. 265389)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
davids@blbglaw.com
timothyd@blbglaw.com
nikim@blbglaw.com
matthewj@blbglaw.com
takeok@blbglaw.com
jonathanu@blbglaw.com
paulj@blbglaw.com

*Counsel for Lead Plaintiffs Alameda County
Employees' Retirement Association, Government of
Guam Retirement Fund, New Orleans Employees'
Retirement System, Louisiana Sheriffs' Pension and
Relief Fund, and the Class, and for additional
Plaintiffs Public Employees' Retirement System
of Mississippi, and Vermont Pension Investment Committee*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Case No. 09-CV-1376-LHK (PSG) <br><br> CONSOLIDATED CLASS ACTION ECF <br><br> **LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:   July 21, 2011 <br> Time:  1:30 p.m. <br> Courtroom:    4, 5th Floor <br> Judge:  Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ......................................................................................................... 2

II.     STATEMENT OF FACTS ............................................................................................ 2

III.    SUMMARY OF SETTLEMENT TERMS .................................................................. 6

IV.     ARGUMENT ................................................................................................................ 7

        A.      This Court Should Grant Preliminary Approval Of The Proposed
                Settlement ......................................................................................................... 7

                1.      The Settlement Was Vigorously Negotiated And Is
                        Supported By Experienced Counsel ...................................................... 9

                2.      The Substantial Benefit Obtained For The Settlement
                        Class, Especially In Light Of Serious Risks Of Lesser
                        Or No Recovery, Supports Approval Of The Settlement ....................... 10

                3.      The Stage Of The Proceedings And Discovery Completed
                        Support Approval Of The Settlement ..................................................... 11

                4.      Proposed Notice To The Settlement Class Is Adequate ....................... 11

        B.      The Deficiencies Noted By The Court In *Palm* Are Not Present Here .................... 12

        C.      The Proposed Settlement Class Meets The Prerequisites For Class
                Certification Under Rule 23(a) ......................................................................... 14

                1.      Numerosity ............................................................................................. 15

                2.      Commonality .......................................................................................... 15

                3.      Typicality ............................................................................................... 16

                4.      Adequacy ............................................................................................... 18

                5.      Common Questions Of Law Predominate And A
                        Class Action Is The Superior Method Of Adjudication ........................ 20

V.      PROPOSED SCHEDULE OF EVENTS ..................................................................... 22

VI.     CONCLUSION ............................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                  **PAGE(S)**

*In re Activision Sec. Litig.*,
621 F. Supp. 415 (N.D. Cal. 1985) ...............15

*In re Applied Micro Circuits Corp. Sec. Litig.*,
2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10, 2003) ...........19

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ...............14, 20

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ...............9

*Browning v. Yahoo! Inc.*,
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...............8

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...............8

*In re Connectics Corp. Sec. Litig.*,
Case No. C 07-02940 SI (Final Judgment and Order of Dismissal
with Prejudice dated October 9, 2009), ECF No. 199 ...............13

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 C.D. Cal. 2009...............20

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ...............9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
1992 WL 226321 (C.D. Cal. June 10, 1992) ...............9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
1993 WL 144861 (C.D. Cal. Feb. 23, 1993)...............20

*In re Gap Stores Sec. Litig.*,
79 F.R.D. 283 (N.D. Cal. 1978)...............20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...............14, 15, 16, 18

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ...............15

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............7, 8, 17, 21

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................12

*In re Infineon Techs. AG Sec. Litig.*,
2009 WL 3647892 (N.D. Cal. Mar. 6, 2009)...................................................15

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009)...................................................15, 16, 17, 22

*In re Maxim Integrated Prods., Inc., Sec. Litig.*,
Case No. C-08-00832-JW (Final Judgment and Order of Dismissal
With Prejudice dated Sept. 29, 2010), ECF No. 294 ......................................13

*McFarland v. Memorex Corp.*,
96 F.R.D. 357 (N.D. Cal. 1982)......................................................................16

*Meijer, Inc. v. Abbott Labs.*,
2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ...............................................18

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) ......................................................................7

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................7

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................................8, 9

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..............................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007)................................................12

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..........................................................................12

*Schaefer v. Overland Express Family of Funds*,
169 F.R.D. 124 (S.D. Cal. 1996)................................................................16, 22

*Schlagal v. Learning Tree, Int'l*,
1999 WL 672306 (C.D. Cal. Feb. 23, 1999)...................................................18

*Schneider v. Traweek*,
1990 WL 132716 (C.D. Cal. July 31, 1990)...................................................21

*Shields v. Smith*,
1992 WL 295179 (N.D. Cal. Aug. 14, 1992) .............................................18, 21

*Standiford v. Palm, Inc.*,
   Case No. 09-CV-05719-LHK (N.D. Cal. May 20, 2011), ECF No. 64................................ passim

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................7, 10

*In re THQ, Inc. Sec. Litig.*,
   2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002)......................................................14, 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ........................................................................................................9

*Utility Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ......................................................................................................8

*In re UTStarcom, Inc. Sec. Litig.*,
   2010 WL 1945737 (N.D. Cal. Aug. 10, 2010) ...........................................................................17

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ......................................................................................................8

*In re VeriSign Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ...........................................14, 15, 19

*In re Veritas Software Corp. Sec. Litig.*,
   496 F.3d 962 (9th Cir. 2007) ....................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. ___, slip op. at 9 (June 20, 2011).............................................................................16

*Williams v. Costco Wholesale Corp.*,
   2010 WL 761122 (S.D. Cal. Mar. 4, 2010) .............................................................................8, 9

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ..............................................................................................11

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ..................................................................................................................12

Fed. R. Civ. P. 23 .................................................................................................................. passim

Fed. R. Civ. P. 62.1 ..........................................................................................................................5

1

## NOTICE OF MOTION AND MOTION

2

PLEASE TAKE NOTICE that on July 21, 2011, at 1:30 p.m., before the Honorable Lucy H.

3 Koh of the United States District Court for the Northern District of California, San Jose, California,

4 Lead Plaintiffs the Alameda County Employees' Retirement Association, Government of Guam

5 Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriffs' Pension and

6 Relief Fund ("Lead Plaintiffs") will and hereby do move the Court for an order, pursuant to Fed. R.

7 Civ. P. 23(e), preliminarily approving the Settlement in the above-captioned action, preliminarily

8 certifying the action as a class action for settlement purposes, approving of the manner and form of

9 notice to be sent to Class Members, and scheduling a hearing for consideration of final approval of the

10 Settlement.  By Minute Order dated June 1, 2011 (ECF No. 426), the Court ordered that the hearing on

11 this Motion is scheduled for July 21, 2011, at 1:30 p.m.

12

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in

13 Support Thereof, all pleadings and papers filed herein, arguments of counsel, and any other matters

14 properly before the Court.

15

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

16
1.      Whether the Settlement of this action should be granted preliminary approval.

17
2.      Whether this action should be certified as a class action for settlement purposes.

18
3.      Whether the manner and form of notice to be sent to Class Members should be

19
approved.

20
Lead Plaintiffs respectfully submit that the answer to each question is, yes.

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiffs, the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriffs' Pension and Relief Fund (collectively, "Lead Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the Settlement in the above-captioned consolidated putative class action.  Specifically, Lead Plaintiffs move this Court for entry of the [Proposed] Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Hearing ("Preliminary Approval Order"), submitted herewith.  The proposed Preliminary Approval Order will, among other things: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement dated as of July 5, 2011 (the "Stipulation" or "Settlement")[1]; (ii) certify the Settlement Class for settlement purposes only[2]; (iii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) schedule a Final Approval Hearing.

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation, which is submitted herewith.

[2]  As discussed below, the parties stipulate to certification of a class for settlement purposes only.  The parties agree to the following definition of the "Settlement Class":  all persons or entities who purchased or otherwise acquired mortgage pass-through certificates pursuant or traceable to Wells Fargo Asset Securities Corporation's July 29, 2005 Registration Statement, October 20, 2005 Registration Statement, or September 27, 2006 Registration Statement, and the accompanying prospectuses and prospectus supplements in the following 28 offerings and who were damaged thereby:  The WFMBS 2006-1 offering, WFMBS 2006-2 offering, WFMBS 2006-3 offering, WFMBS 2006-4 offering, WFMBS 2006-6 offering, WFMBS 2006-AR1 offering, WFMBS 2006-AR2 offering, WFMBS 2006-AR4 offering, WFMBS 2006-AR5 offering, WFMBS 2006-AR6 offering, WFMBS 2006-AR8 offering, WFMBS 2006-AR10 offering, WFMBS 2006-AR11 offering, WFMBS 2006-AR12 offering, WFMBS 2006-AR14 offering, WFMBS 2006-AR17 offering, WFMBS 2007-11 offering, WFMBS 2006-7 offering, WFMBS 2006-10 offering, WFMBS 2006-AR16 offering, WFMBS 2006-18 offering, WFMBS 2006-AR19 offering, WFMBS 2006-20 offering, WFALT 2007-PA1 offering, WFMBS 2007-AR4 offering, WFMBS 2007-10 offering, WFMBS 2007-13 offering, and WFMBS 2006-AR15 offering.  Excluded from the Class are Defendants and their respective officers, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, except that Investment Vehicles shall not be excluded from the Class. Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.

1

## I.   INTRODUCTION

The proposed Settlement provides for the payment of $125 million for the immediate benefit of the Settlement Class to resolve the claims against Defendants.  The Settlement was reached only after extensive litigation, document and deposition discovery, and negotiations – including two in-person mediation sessions and additional negotiations – facilitated by the Honorable Layn R. Phillips (Ret.), an experienced and highly respected mediator.  Indeed, by the time the Settlement was reached, Lead Counsel had:  (1) filed a comprehensive consolidated Complaint after conducting an extensive factual investigation; (2) fully briefed and largely defeated multiple motions to dismiss filed by various defendants; (3) conducted extensive fact discovery, including review of over 4.2 million pages of documents produced by Defendants and third parties, and 15 depositions; (4) fully briefed Defendants' motion for judgment on the pleadings and partial summary judgment; (5) fully briefed Lead Plaintiffs' motion for class certification; (6) consulted with experts; and (7) and appealed certain claims that had been dismissed as untimely to the Ninth Circuit Court of Appeals.

Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Settlement Class, providing a meaningful recovery for the Settlement Class now.  Accordingly, Lead Plaintiffs respectfully move for preliminary approval of the Settlement.

## II.   STATEMENT OF FACTS

This is a securities putative class action alleging false and misleading statements and omissions in violation of §§ 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").

On March 27, 2009, plaintiff General Retirement System of Detroit ("Detroit General") filed a complaint against Wells Fargo and certain other defendants in the United States District Court for the Northern District of California, Case No. 09-CV-01376-SI (N.D. Cal.) ("Detroit Action"), asserting claims under §§ 11, 12 and 15 of the Securities Act.  On March 31, 2009, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Detroit General published a notice of its action to investors, which provided a deadline to seek lead plaintiff appointment by June 1, 2009.

Shortly thereafter, on April 13, 2009, plaintiff New Orleans Employees' Retirement System ("New Orleans") filed a related action in the Northern District of California, Case No. 09-CV-01620 (CRB) (N.D. Cal.) ("New Orleans Action").  On April 14, 2009, New Orleans published notice of its action, and informed investors of the June 1, 2009 deadline to file a motion for lead plaintiff appointment.

By Order dated July 16, 2009, the Court appointed Lead Plaintiffs as lead plaintiffs, and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel, and consolidated the Detroit Action and New Orleans Action into this Action.

Following extensive briefing and argument, on April 22, 2010, the Court granted in part and denied in part defendants' motions to dismiss Lead Plaintiffs' initial Consolidated Class Action Complaint, granting the rating agencies' motion to dismiss and granting in part and denying in part other defendants' motions to dismiss.

Thereafter, on May 28, 2010, Lead Plaintiffs filed the operative complaint in the Action, the Amended Consolidated Class Action Complaint (the "Complaint"), which named five additional plaintiffs that purchased in ten offerings previously dismissed by the Court.[3]  The Complaint asserts claims under §§ 11, 12(a)(2) and 15 of the Securities Act on behalf of persons or entities who purchased or otherwise acquired mortgage pass-through certificates in certain offerings pursuant or traceable to Wells Fargo Asset Securities Corporation's July 29, 2005 Registration Statement, as amended; October 20, 2005 Registration Statement, as amended; or September 27, 2006 Registration Statement, as amended, and the accompanying prospectuses and prospectus supplements.[4]

---

[3] The additional named plaintiffs are Vermont Pension Investment Committee, the Public Employees' Retirement System of Mississippi, the Policemen's Annuity & Benefit Fund of the City of Chicago, the Southeastern Pennsylvania Transportation Authority, and the Plumbers & Steamfitters Local 60 Pension Plan.

[4] Defendants named in the Complaint are Wells Fargo Asset Securities Corporation; Wells Fargo Bank, N.A.; Goldman, Sachs & Co.; Bear Stearns & Co., Inc. (of which J.P. Morgan Securities LLC is the successor-in-interest); Deutsche Bank Securities, Inc.; UBS Securities, LLC; Credit Suisse Securities (USA) LLC; RBS Securities Inc., f.k.a. Greenwich Capital Markets, Inc.; Banc of America Securities, LLC; Citigroup Global Markets, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and David Moskowitz, Franklin Codel, Douglas K. Johnson, and Thomas Neary.

1    On June 25, 2010, Defendants filed subsequent motions to dismiss the Complaint, which Lead

2 Plaintiffs opposed on July 16, 2010.

3    On August 13, 2010, Detroit General filed a motion to intervene as a representative plaintiff in

4 the Action to pursue claims on behalf of investors who purchased securities in the Wells Fargo

5 Mortgage Backed Securities 2006-AR15 Trust.  On September 16, 2010, Lead Plaintiffs filed a

6 statement of non-opposition to the motion to intervene, and defendants and non-party First Star Bank

7 filed oppositions to the motion.

8    On October 5, 2010, the Court granted the Wells Fargo Defendants' motion to dismiss as to

9 certain claims and denied the motion with respect to other claims, and on October 19, 2010, the Court

10 granted the motion to dismiss with prejudice of certain underwriter defendants in the Action.  It held,

11 *inter alia*, that the claims pursued by the additional plaintiffs based on ten offerings (WFMBS 2007-10,

12 2007-13, 2007-AR4, 2006-7, 2006-10, 2006-AR16, 2006-AR19, 2006-18, 2006-20 Trusts and the

13 Wells Fargo Alternative Loan 2007-PA1 Trust) were untimely.  In the same order, the Court dismissed

14 on the same grounds the claims based on the WFMBS 2006-AR15 Trust pursued by proposed

15 intervener Detroit General.

16    The additional plaintiffs named in Lead Plaintiff's Complaint appealed the dismissal to the

17 United States Court of Appeals for the Ninth Circuit, as did First Star Bank and Detroit General.  These

18 plaintiffs are parties to the proposed Settlement, and the consolidated appeals will be dismissed as part

19 of the proposed Settlement.

20    On November 23, 2010, certain Defendants filed Answers to the Complaint.

21    On February 11, 2011, Lead Plaintiffs filed a motion for class certification, including an expert

22 report supporting certification and additional material.  On May 5, 2011, Wells Fargo and the

23 Individual Defendants filed an opposition to the class certification motion, in which other defendants

24 joined.  Lead Plaintiffs filed a reply brief on June 2, 2011.

25    On May 5, 2011, Wells Fargo and the Individual Defendants filed a motion for judgment on the

26 pleadings and partial summary judgment, which Lead Plaintiffs opposed on May 26, 2011.  Wells

27 Fargo and the Individual Defendants filed a reply brief on June 2, 2011.

28

During the course of the litigation, Lead Plaintiffs and Defendants conducted extensive discovery, including the review by Lead Plaintiffs of more than 4.2 million pages of documents produced by Defendants and third parties.  The parties took a total of fifteen depositions:  Lead Plaintiffs deposed nine witnesses, including two of Defendants' experts and seven designees pursuant to Rule 30(b)(6), and defended six depositions, including one of Lead Plaintiffs' expert, and five of Lead Plaintiffs' representatives.

On May 13, 2011, the parties participated in an in-person mediation session before Judge Phillips.  No agreement was reached at that time.  Extensive negotiations and discussions continued thereafter telephonically.   The parties participated in a second in-person mediation session on May 27, 2011, at which time the parties reached an impasse.  Ultimately, Judge Phillips made a mediator's recommendation to resolve the action for $125 million, which the parties accepted on June 1, 2011.

On June 1, 2011, at the request of counsel for Lead Plaintiffs and counsel for Wells Fargo and the Individual Defendants, the Court held a telephonic conference at which counsel for the parties notified the Court that they had reached an agreement in principle to settle the Action.   On June 2, 2011, counsel for Lead Plaintiffs and counsel for Wells Fargo and the Individual Defendants executed a Confidential Term Sheet to Settle Class Action reflecting an agreement in principle to settle the Action for $125 million.  The parties continued to negotiate the terms of a detailed stipulation of settlement, and on or about July 5, 2011, the parties signed the Stipulation of Settlement submitted herewith.

On June 17, 2011, the parties filed a joint motion with the Ninth Circuit Court of Appeals to stay the consolidated appeals so that the parties may pursue approval of the Settlement before this Court.  The joint motion explained that the parties would be seeking approval of the Settlement, and an "indicative ruling" from this Court pursuant to Fed. R. Civ. P. 62.1, and that upon final approval of the Settlement, the parties would seek dismissal of the appeals.  On June 21, 2011, the Ninth Circuit granted the stay motion, and stayed the consolidated appeals until September 6, 2011, at which time the appellate briefing schedule will resume or the parties will file a motion seeking a continuance of the stay or other relief.  *See* Exhibit 1 attached hereto.

### III.   SUMMARY OF SETTLEMENT TERMS

Wells Fargo has agreed to pay the sum of $125 million to resolve the claims against Defendants by releasing: "any and all claims and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common or foreign law, or any other law, rule, or regulation, that were asserted, could have been asserted, or that arise out of the same transactions or occurrences as the claims that were asserted, in the Action."[5]

As set forth in the Stipulation and the agreed-upon form of proposed Preliminary Approval Order, if the Court grants preliminary approval, Lead Plaintiffs, through the Claims Administrator, will notify Class Members of the Settlement by mailing the Notice and Claim Form to Class Members (*see* Exhibits A-1 and A-2 to the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation).  Additionally, Lead Counsel will cause to be published the Summary Notice (Exhibit A-3) in *The Investors' Business Daily,* a widely-disseminated national investors' news publication.  The Notice advises Class Members of the essential terms of the Settlement, information regarding Lead Counsel's fee and expense application, and the proposed plan for allocating the Settlement proceeds among Class Members.  The Notice also sets forth the procedure for objecting to the Settlement, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses; sets out the procedure for opting out of the Settlement Class; and provides specifics on the date, time, and place of the Final Approval Hearing.

As set forth in the Stipulation and the Notice, the Net Settlement Fund will be distributed to those Class Members who submit valid and timely Claim Forms pursuant to a Plan of Allocation that is

---

[5] As set forth in the Stipulation, "Released Parties" include Defendants and their "Related Parties" which means the Defendants' respective past or present heirs, executors, estates, administrators, predecessors, successors, assigns, attorneys, parents, subsidiaries, affiliates, insurers and reinsurers, employers, employees, members, directors, managing directors and officers, but this term shall not include any Investment Vehicle.  This term specifically includes, but is not limited to, the WFMBS 2006-1, WFMBS 2006-2, WFMBS 2006-3, WFMBS 2006-4, WFMBS 2006-6, WFMBS 2006-7, WFMBS 2006-10, WFMBS 2006-18, WFMBS 2006-20, WFMBS 2006-AR1, WFMBS 2006-AR2, WFMBS 2006-AR4, WFMBS 2006-AR5, WFMBS 2006-AR6, WFMBS 2006-AR8, WFMBS 2006-AR10, WFMBS 2006-AR11, WFMBS 2006-AR12, WFMBS 2006-AR14, WFMBS 2006-AR15, WFMBS 2006-AR16, WFMBS 2006-AR17, WFMBS 2006-AR19, WFMBS 2007-10, WFMBS 2007-11, WFMBS 2007-13, and WFMBS 2007-AR4 Trusts and the Wells Fargo Alternative Loan 2007-PA1 Trust.

1  explained in the Notice and proposed by Lead Plaintiffs subject to Court approval.  There will be no

2  reversion to Defendants.

3  **IV.    ARGUMENT**

      **A.    This Court Should Grant Preliminary**
              **Approval Of The Proposed Settlement**

5         Federal Rule of Civil Procedure 23(e) requires judicial approval for a compromise of claims

6  brought on a class basis.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class may be settled . . .

7  only with the court's approval.").  "Procedurally, the approval of a class action settlement takes place in

8  two stages." *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 473 (E.D. Cal. 2010).  "In the first stage

9  of the approval process, the court preliminarily approves the Settlement pending a fairness hearing,

10 temporarily certifies the Class, and authorizes notice to be given to the Class."[6]

11        "[P]reliminary approval of a settlement has both a procedural and a substantive component." *In*

12 *re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  As for the procedural

13 component, courts analyze whether "the settlement was the product of arms-length negotiations." *Id.*

14 (finding the procedure fair and reasonable because "[e]xperienced counsel on both sides, each with a

15 comprehensive understanding of the strengths and weaknesses of each party's respective claims and

16 defenses, negotiated [the] settlement over an extended period of time").  As for the substantive

17 component, courts preliminarily analyze the fairness and adequacy of the settlement. *Id.*

18        "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial

19 policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re*

20 *Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v.*

21 *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688

22

23

24

25

---

26 [6] *Id.* (citations, quotations, and alterations omitted); *see Nat'l Rural Telecomms. Coop v. DIRECTV,*
*Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004) ("Approval under 23(e) involves a two-step process in

27 which the Court first determines whether a proposed class action settlement deserves preliminary
approval and then, after notice is given to class members, whether final approval is warranted.")

28 (citation omitted).

F.2d 615, 625 (9th Cir. 1982).   "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[7]

Accordingly, "in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."   *Heritage Bond*, 2005 WL 1594403, at *2 (quoting *Officers for Justice*, 688 F.2d at 625).   Recognizing that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," courts favor approval of the settlement rather than continuation of the litigation. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

At the preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval." *Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010).   In considering whether to grant preliminary approval of a class action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class and prior to holding a final approval hearing.   If the proposed settlement falls within the range of what could be found "fair, adequate and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *See id.*; *Class Plaintiffs*, 955 F. 2d at 1276.   "Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'" *Williams*, 2010 WL 761122, at *5.

At this point, the Court need not answer the ultimate question:   whether the Settlement is fair, reasonable and adequate.   When the Court makes that ultimate determination at a later point, the Court will be asked to review the following factors:   the strength of plaintiffs' case; the risk, expense,

---

[7] *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Browning v. Yahoo! Inc.,* 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action suits").

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members to the proposed settlement. *Id.; see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (citing *Officers for Justice*, 688 F. 2d at 625).

The Settling Parties here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. The proposed Settlement, which provides $125 million for distribution to eligible Class Members after deduction of Court-awarded fees and expenses, is unquestionably beneficial to the Settlement Class. Given the complexities of this Action and the continued risks if the parties were to proceed, the Settlement represents a favorable resolution and eliminates the risk that the Settlement Class might recover less or nothing at all.

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.

### 1. The Settlement Was Vigorously Negotiated And Is Supported By Experienced Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[8] Here, the parties have been actively litigating this case for over two years since its commencement in 2009. Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint; fully briefed multiple motions to dismiss, a motion for class certification, and a motion for judgment on the pleadings or partial summary judgment; conducted an extensive review of millions of pages of documents produced by Defendants and third parties; took and defended 15 depositions; consulted with

---

[8] *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

experts; and appealed certain claims that were dismissed.  Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and was able to engage in a rigorous negotiation process with Defendants.  A "proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect.[9]

Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from prominent law firms.  Counsel for Defendants were equally well-informed regarding the case, and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class.

As a result, the parties' settlement negotiations were demanding.  The negotiations required not only two in-person formal mediation sessions – conducted under the direction of Judge Phillips, a retired federal judge and well-regarded mediator with extensive experience in the mediation of complex actions – but also extensive negotiations until the parties reached an impasse.  Ultimately, the mediator recommended a settlement amount based on his familiarity with the facts, issues, arguments and risks in the case.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties, and this factor supports a finding that the Settlement is fair, adequate, and reasonable for purposes of preliminary approval.

**2.      The Substantial Benefit Obtained For The Settlement Class, Especially In Light Of Serious Risks Of Lesser Or No Recovery, Supports Approval Of The Settlement**

As set forth above, the Settlement provides for the recovery of $125 million plus interest to be allocated among Class Members after deduction for Court-approved fees and expenses.  If the Action had continued, Lead Plaintiffs faced substantial risks, including establishing Defendants' liability to the

---

[9] *See Tableware*, 484 F. Supp. 2d at 1079 ("As noted in the Manual for Complex Litigation, Second, '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . .'") (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

1   Settlement Class, the full amount of the Settlement Class' damages at summary judgment or trial, and

2   defenses to liability and damages.   In addition, litigating this complex securities class action to

3   completion would result in significant expense and delay.   This recovery, obtained in the face of the

4   risk of a lesser recovery or no recovery at all, supports approval of the Settlement.

5          **3.       The Stage Of The Proceedings And Discovery**
                      **Completed Support Approval Of The Settlement**

6

7          The stage of proceedings and discovery completed are additional factors supporting the

8   Settlement.  Here, Lead Counsel advanced the case through the drafting of the consolidated Complaint,

9   opposing multiple rounds of motions to dismiss, extensive discovery, consultation with experts, a

10  motion for class certification, a motion for judgment on the pleadings and partial summary judgment,

11  and preparation and participation in mediation sessions before an experienced mediator.  Consequently,

12  at the time the parties agreed to the Settlement, the parties had a firm understanding of the strengths and

13  weaknesses of the claims.

14         **4.       Proposed Notice To The Settlement Class Is Adequate**

15         Notice of a proposed settlement must be given to class members in the most practicable manner

16  under the circumstances, describing the terms of the settlement in sufficient detail to alert those with

17  adverse viewpoints to investigate and to come forward and be heard.  *See*  Fed. R. Civ. P. 23(c)(2)(B).

18  In addition, pursuant to the PSLRA, the settlement notice must include a statement explaining the

19  estimated average distribution.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D.

20  Cal. 2008) (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)).

21         The proposed Notice to the Settlement Class (Exhibit A-1) more than satisfies this standard.

22  The proposed Notice informs the Settlement Class of:  (1) the amount of the Settlement – $125 million;

23  (2) the reasons why the parties propose the Settlement; (3) the estimated average distribution; (4) the

24  attorneys' fees and expenses sought; (5) the name, telephone number, and address of representatives of

25  Lead Counsel who will be reasonably available to answer questions from Class Members concerning

26  matters contained in the Notice; (6) the right of Class Members to object to the Settlement or seek

27  exclusion from the Settlement Class; and (7) the dates and deadlines for certain Settlement-related

28  events.  15 U.S.C. § 78u-4(a)(7).

Here, the proposed Notice is adequate and complies with due process, Fed. R. Civ. P. 23, and the PSLRA.[10]  If the Court grants preliminary approval of the Settlement, the Notice will be mailed to all Class Members who were identified through discovery, or may be identified through reasonable effort.  Further, Lead Counsel, through the Claims Administrator, will use reasonable efforts to give notice to nominee holders such as brokerage firms and other persons or entities who purchased Wells Fargo mortgage pass-through certificates as record owners but not as beneficial owners.  Courts routinely find that comparable notice procedures meet the requirements of due process, Fed. R. Civ. P. 23, and the PSLRA.[11]

## B.    The Deficiencies Noted By The Court In *Palm* Are Not Present Here

The parties are mindful of this Court's reasoning when denying a motion for preliminary approval of a proposed class action settlement in *Standiford v. Palm, Inc.,* Case No. 09-CV-05719-LHK (N.D. Cal. May 20, 2011), ECF No. 64 ("*Palm*").  Lead Plaintiffs respectfully submit that the terms negotiated in this Settlement do not suffer from the same defects noted in *Palm.*  As an initial matter, unlike in *Palm* where <u>no</u> discovery had taken place, here, substantial information has been obtained in formal discovery, including 15 depositions, and Lead Plaintiffs' review of a substantial volume of internal documents produced by Defendants and third parties. Thus, unlike in *Palm* where the Court was concerned that "with no formal discovery, the parties, and the Court, would simply be guessing about the nature and extent of the claims of absent Settlement Class Members whose claims

---

[10] *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (citations omitted); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (notice providing description of the nature of the action and issues involved in the litigation, concise and clear statement of definition of the class that was certified, procedure for requesting appearance at the settlement hearing, procedure for exclusion from the class, binding effect of the class judgment and deadline for filing objections approved).

[11] *See, e.g., In re Portal Software, Inc. Sec. Litig.,* 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort")).

1   would be extinguished," *Palm,* at 14, here, the parties were well informed of the strengths and

2   weaknesses of the claims and defenses when entering into this Settlement.

3   Further, in *Palm,* the Court recognized that the settlement there was entered into by a named

4   plaintiff and proposed class representative who had claims (and recoverable remedies) similar to only

5   0.5% of the other absent class members. *See id.* at 16.  There is no such problem here.  Rather, here,

6   the Lead Plaintiffs and the other proposed Class Representatives of the Settlement Class, like all Class

7   Members, have potential § 11 claims against Defendants, and all Class Members are potentially entitled

8   to statutory damages pursuant to § 11.  The Net Settlement Fund will be distributed to all Class

9   Members pursuant to a Plan of Allocation based on the statutory measure of damages under § 11, and

10  developed in coordination with Lead Plaintiffs' consultant and subject to approval by the Court.

11  Moreover, the release negotiated here is specifically tailored to release, only to the fullest extent

12  permitted by law or equity, claims that were asserted, could have been asserted, or that arise out of the

13  same transactions or occurrences as the claims that were asserted, in the Action.  The release language

14  negotiated herein is substantially similar to release language routinely approved in securities class

15  actions by courts nationwide, including recently within this District.[12]

16

17  [12] *See, e.g., In re Connetics Corp. Sec. Litig.,* Case No. C 07-02940 SI (Final Judgment and Order of

18  Dismissal with Prejudice dated October 9, 2009), ECF No. 199. (approving securities class action

19  settlement, including release of "any and all claims and causes of action of every nature and

    description, whether known or Unknown, fixed or contingent, whether arising under federal, state,

20  common or foreign law, that Lead Plaintiff or any other member of the Class (a) asserted in the

    Litigation or (b) could have asserted in any forum, that arise out of, are based upon or in any manner

21  relate to the allegations, transactions, facts, matters or occurrences, statements, representations or

    omissions involved, set forth, or referred to in the Complaint that relate to the purchase or acquisition

22  of the Company's publicly traded securities during the Class Period or to the adequacy of any

    disclosures during the Class Period or that could have been asserted in the Litigation."); *In re Maxim*

23  *Integrated Prods., Inc., Sec. Litig.,* Case No. C-08-00832-JW (Final Judgment and Order of Dismissal

    With Prejudice dated Sept. 29, 2010), ECF No. 294 (approving securities class action settlement,

24  including release of "any and all claims, rights, causes of action, liabilities or any other matters,

25  whether known or Unknown, foreseen or unforeseen, whether arising under federal, state, common or

    foreign law, that (a) Lead Plaintiffs or any other member of the Class asserted in the Action or could

26  have asserted in any forum, that arise out of, are based upon or relate in any way to the allegations,

    transactions, facts, matters or occurrences, disclosures, representations or omissions involved, set forth

27  or referred to in the Action; or (b) relate in any way to any violation of state, federal or any foreign

    jurisdiction's securities or other laws, any misstatement, omission or disclosure (including in financial

28  statements), any breach of duty, any negligence or fraud, or any other alleged wrongdoing or

C.      **The Proposed Settlement Class Meets The
        Prerequisites For Class Certification Under Rule 23(a)**

The Settling Parties have stipulated that the Court may certify the Settlement Class and appoint the following Class Representatives for settlement purposes only:   Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System, Louisiana Sheriffs' Pension and Relief Fund, General Retirement System of the City of Detroit, Vermont Pension Investment Committee, Public Employees' Retirement System of Mississippi, Policemen's Annuity & Benefit Fund of the City of Chicago, Southeastern Pennsylvania Transportation Authority, and Plumbers & Steamfitters Local 60 Pension Plan.   Stipulation ¶2.   The proposed Class Representatives, as a whole, purchased securities in each of the 28 Offerings.

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).   Generally, courts have found securities claims to be particularly well-suited for class action status because they allow for enforcement of the policies behind the securities laws in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.   *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 911 (9th Cir. 1975); *In re VeriSign Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").   Accordingly, courts liberally construe the requirements of Rule 23 in favor of certification for class action cases brought under the federal securities laws.   *In re THQ, Inc. Sec. Litig.,* 2002 U.S. Dist. LEXIS 7753, at *8 (C.D. Cal. Mar. 22, 2002).   This is particularly true where, as here, the claims arise under § 11 of the Securities Act because the singular focus of such cases is whether there is a misrepresentation in the offering documents.   As the Honorable Marilyn Patel observed, "[c]ertification of a plaintiff class is *the rule* in this district in cases such as the instant one where the securities fraud alleged concerns

misconduct by the Released Parties relating in any way to the purchase or other acquisition of shares of Maxim common stock by members of the Class during the Class Period.").

1  misrepresentations or omissions in offering materials issued prior to a public offering." *In re Activision*

2  *Sec. Litig.*, 621 F. Supp. 415, 428 (N.D. Cal. 1985) (emphasis added).

3  Fed. R. Civ. P. 23(a) sets forth four prerequisites to class certification applicable to all class

4  actions, including classes for the purpose of settlement: (1) numerosity; (2) commonality; (3) typicality;

5  and (4) adequacy of representation.  In addition, the class must meet one of the three requirements of

6  Rule 23(b).  Fed. R. Civ. P. 23; *see also* Manual for Complex Litigation, § 21.633 (4th ed. 2004).

7  **1.  Numerosity**

8  Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

9  "impracticable."  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible, only that it

10  would be difficult or inconvenient to join all members of the class."  *In re Juniper Networks, Inc. Sec.*

11  *Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329

12  F.2d 909, 913-14 (9th Cir. 1964)).

13  Here, Lead Plaintiffs conservatively estimate that the number of purchasers of Wells Fargo

14  mortgage pass-through certificates number in the thousands.  Given the number and geographic

15  distribution of the Class Members, joinder of all Class Members would be impracticable, and the

16  proposed Settlement Class easily satisfies Rule 23's numerosity requirement.  *See Juniper,* 264 F.R.D.

17  at 588; *In re Infineon Techs. AG Sec. Litig.,* 2009 WL 3647892, at *6 (N.D. Cal. Mar. 6, 2009).

18  **2.  Commonality**

19  The Rule 23(a)(2) requirement is satisfied where, as here, there exist "questions of fact and law

20  which are common to the class."  "All questions of fact and law need not be common to satisfy the

21  rule."  *Hanlon,* 150 F.3d at 1019; *see also Juniper,* 264 F.R.D. at 588.  Rather, "[t]he existence of

22  shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

23  coupled with disparate legal remedies within the class."  *Hanlon,* 150 F.3d at 1019; *see Verisign,* 2005

24  U.S. Dist. LEXIS 10438, at *25-26; *see also THQ*, 2002 U.S. Dist. LEXIS 7753, at *11 (noting that

25  courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2)).

26  In the context of securities class actions, a class asserting claims based on a common course of

27  conduct satisfies the commonality requirement even where the class members are exposed to different

28  misrepresentations at different times.  *See Hanlon,* 150 F.3d at 1019.  When certifying a § 11 class

composed of investors in ten different Trusts holding mortgage-backed securities, the Honorable David

V. Kenyon in *In re Pilgrim Securities Litigation* held as follows:

> Plaintiffs' [Complaint] is based upon Defendants' alleged misrepresentations and omissions contained in registration statements and prospectuses about the contents of the Trusts' portfolios, their illiquidity, and sensitivity to interest rate increases.  While the proposed class members may have been exposed to different representations, the common question of whether they were harmed by Defendants' alleged course of fraudulent conduct is sufficient to satisfy Rule 23(a)(2)'s commonality requirement.[13]

Here, the claims of each Class Member raise the common contention, capable of classwide

resolution, that the Offering documents contained untrue statements or omissions about Wells Fargo's

underwriting standards.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, slip op. at 9 (June 20, 2011)

(to satisfy commonality, class members' claims "must depend upon a common contention" that is "of

such a nature that it is capable of classwide resolution").  In addition, the securities in each of the

Offerings are interrelated, and the untrue statements and material omissions in the Offering documents

would similarly affect the securities within each Offering.

In *Palm,* unlike here, the settlement class consisted of two distinct groups:  those class members

who lost access to data stored on their WebOS devices, and those class members who did not lose

access to data stored on their WebOS devices.  *See Palm,* slip op. at 12.  As the Court noted, there, the

two distinct groups had different causes of action and different forms of relief.  Here, all Class

Members share the same causes of action under the Securities Act and all are entitled to pursue claims

for damages.  Rule 23(a)(2)'s requirement of a common question of law or fact is satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the

claims or defenses of the class."  *Juniper,* 264 F.R.D. at 588.  "[T]he typicality requirement is

---

[13] 1996 WL 742448, at *4 (C.D. Cal. Jan. 23, 1996); *see also Juniper,* 264 F.R.D. at 588 (certifying § 11 class; common issues included "whether Defendants violated the federal securities laws" and "whether Defendants omitted or misrepresented material facts"); *McFarland v. Memorex Corp.,* 96 F.R.D. 357, 362 (N.D. Cal. 1982) (certifying § 11 class; "the presence of any misstatements or omissions in the registration statement is capable of litigation as a class question and does indeed present a common question of fact. . . .   The defense of plaintiffs' knowledge is also a common question of fact, as is the issue of defendants' due diligence."); *Schaefer v. Overland Express Family of Funds,* 169 F.R.D. 124, 128 (S.D. Cal. 1996) (rejecting defendants' attempt in § 11 case to "split hairs' [to] argue that there are not common questions of law and fact").

1    permissive: 'representative claims are 'typical' if they are reasonably co-extensive with those of absent

2    class members; they need not be substantially identical.'"  *In re UTStarcom, Inc. Sec. Litig.,* 2010 WL

3    1945737, at *5 (N.D. Cal. Aug. 10, 2010).  "Courts have held that if the claims of the named plaintiffs

4    and putative class members involve the same conduct by the defendant, typicality is established

5    regardless of the factual differences."  *Heritage Bond,* 2004 WL 1638201, at *7; *see also Pilgrim,* 1996

6    WL 742448, at *4 (finding class representatives typical where their claims "arise from the same course

7    of conduct: Defendants' alleged misrepresentations and omissions regarding the Trusts [holding

8    mortgage-backed securities] during the class period, and is based upon the same legal theories as the

9    claims of the class members").

10            Typicality is readily established here.  The nature of mortgage-backed securities, generally, and

11   the Wells Fargo Offerings, specifically, is that each of the securities within an offering represents a

12   claim on the cash flows of the underlying collateral.  Complaint ¶¶38-50. Thus, all cash flows to the

13   different securities are based on the performance of the same underlying collateral.  And, to the extent

14   there are untrue statements, and/or material omissions in the Offering documents, all securities in the

15   Offerings will be adversely affected.  The Class Representatives and the absent Class Members all

16   assert the same claims under the Securities Act.  They all base their claims on virtually identical

17   misstatements and omissions in the Offering documents and the same allegations of "control person"

18   liability.  All of their claims are predicated on the same wrongful course of conduct – namely, Wells

19   Fargo's departure from its underwriting standards.

20            The deficiencies in satisfying the typicality requirement in *Palm* are not present here.  There, the

21   sole class representative lost access to a significant amount of data, and thus his claims were typical of

22   only 0.5% of the class, and his injury differed from the injury of the other 99.5% of the settlement class

23   members.  *Palm,* slip op. at 12.  Here, by contrast, the Class Representatives are investors with claims

24   for damages similar to the claims of absent Class Members.  The proposed Class Representatives, as a

25   whole, purchased securities in each of the 28 Offerings.  Accordingly, they suffered the same injury

26   and, like the absent Class Members, are entitled to seek damages.  The typicality requirement is

27   satisfied.

28

4. **Adequacy**

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met if plaintiffs: (1) are represented by competent counsel; and (2) do not have any interests that conflict with, or are antagonistic to, those of the putative class members. *See Genentech,* 1990 WL 120641, at *5; *see also Hanlon*, 150 F.3d at 1020; *LDK Solar*, 255 F.R.D. at 532. Here, the requirements for adequacy are satisfied.

The first requirement, the competency of counsel, is the central focus of the "adequacy" inquiry for complex securities class actions. *See Shields v. Smith,* 1992 WL 295179, at *5 (N.D. Cal. Aug. 14, 1992) ("[T]he emphasis has been and should be placed on whether the representative's counsel is capable."). In this case, there is no doubt that Lead Counsel for Lead Plaintiffs and the Settlement Class, Bernstein Litowitz, is qualified and capable of prosecuting this action. Bernstein Litowitz has been prosecuting securities class actions for approximately 30 years and has a proven track record of success in complex cases such as this one.[14]

The second requirement is also met because the Class Representatives' interests are sufficiently comparable with the other Class Members to satisfy Rule 23(a)(4). The "adequacy" requirement asks only whether "the representative's interests are comparable to those of the absent class members." *Schlagal v. Learning Tree, Int'l,* 1999 WL 672306, at *3 (C.D. Cal. Feb. 23, 1999). "'Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Id.* "[T]he mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *Meijer, Inc. v. Abbott Labs.,* 2008 WL 4065839, at *5 (N.D. Cal. Aug. 27, 2008).

In the context of securities class actions, courts have consistently found that class representatives that assert claims based on facts similar to those of the absent class members meet the "comparable interest" standard and satisfy Rule 23(a)(4).[15] Applying those standards here, the Class

---

[14] *See* Firm Resume, previously filed as Exhibit 21 to the Declaration Of David R. Stickney In Support Of Class Certification (ECF No. 349-13).

[15] *See, e.g., Verisign,* 2005 U.S. Dist. LEXIS 10438, at *29 ("The Lead Plaintiffs' claims and the unnamed class members' claims do not conflict. They all arise out of the same facts – Defendants'

1 Representatives are plainly "adequate" to represent the Settlement Class.  They all purchased Wells

2 Fargo Mortgage-Backed Securities pursuant or traceable to the Offering documents.  The Class

3 Representatives seek to maximize recovery for themselves and the Settlement Class by demonstrating

4 Wells Fargo's systematic departure from its underwriting standards.  Additionally, there is no conflict

5 between the Class Representatives and any absent Class Member that would interfere with their ability

6 to serve the interests of the Class.

7        Further demonstrating their adequacy, Lead Plaintiffs and Class Representatives have been

8 actively involved in this case and are committed to representing the Settlement Class.  Lead Plaintiffs

9 reviewed and authorized the Complaint in this Action, applied for and were selected to serve as Lead

10 Plaintiffs, and have supervised the progress of this litigation since its commencement.  Since their

11 appointment, Lead Plaintiffs received regular status reports from Lead Counsel, and participated in

12 document and written discovery and depositions.  Lead Plaintiffs and the other Class Representatives

13 are willing and committed to serving as representative parties on behalf of the Settlement Class.

14        In short, the ten Class Representatives are precisely the type of institutional investors Congress

15 sought to empower when passing the PSLRA.  Congress enacted the PSLRA in large part to encourage

16 sophisticated institutional investors to take control of securities class actions and "increase the

17 likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned

18 with the class of shareholders, will participate in the litigation and exercise control over the selection

19 and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995).

20        The deficiency in satisfying the adequacy requirement that existed in *Palm* does not exist here.

21 There, the Court recognized that the parties who negotiated the proposed settlement did not fully

22 represent the interests of all settlement class members, including the 99.5% of the settlement class

23 members who were absent, but who would nevertheless be giving broad releases.  Here, as explained

24 above, the proposed Class Representatives, as a whole, purchased securities in each of the 28 Offerings,

25

26 alleged misrepresentations during the Class Period."); *In re Applied Micro Circuits Corp. Sec. Litig.*,

27 2003 U.S. Dist. LEXIS 14492, at *14 (S.D. Cal. July 10, 2003) ("The court finds that the interests of

28 Lead Plaintiff is (sic) coextensive with the Class, since they bring identical claims under the federal
securities laws.").

1   and all Class Members are therefore fully represented. Lead Plaintiffs have fulfilled the Rule 23(a)(4)

2   adequacy requirement.

3                **5.**    **Common Questions Of Law Predominate And A**

4                      **Class Action Is The Superior Method Of Adjudication**

5       This Action also satisfies the requirement of Rule 23(b)(3) that common questions of fact and

6   law predominate over individualized ones.  To satisfy this requirement, common questions merely need

7   to "predominate" – they do not need to be exclusive or dispositive.  As the Ninth Circuit explained in

8   *Blackie,* the fact that individualized issues may exist does not defeat a showing of predominance:

9          Confronted with a class of purchasers allegedly defrauded over a period of time by
10         similar misrepresentations, courts have taken the common sense approach that the class is
             united by a common interest in determining whether a defendant's course of conduct is in
11        its broad outlines actionable, which is not defeated by slight differences in class
             members' positions, and that the issue may profitably be tried in one suit.[16]

12

13     Predominance exists where the class members "have more issues keeping them together than

14   driving them apart."   *In re Cooper Cos. Inc. Sec. Litig.,* 254 F.R.D. 628, 634 C.D. Cal. 2009)

15   (explaining that "questions related to liability" have "primacy" over any theoretical defenses that "only

16   affect certain members of the class").

17      "The Ninth Circuit has repeatedly found that common issues predominate in federal securities

18   actions where the proposed class members have all been injured by the same alleged course of

19   conduct."  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 1993 WL 144861, at *6 (C.D.

20   Cal. Feb. 23, 1993).  This "course of conduct" test is met regardless of whether members of the class

21   invested at different times, were exposed to different misrepresentations, or purchased pursuant to

22   different offerings.[17]

23

24   [16] *Blackie,* 524 F.2d at 902; *accord Genentech,* 1990 WL 120641, at *5 ("The mere presence of
25   potential individual issues does not defeat the predominance of common questions."); *In re Gap Stores
     Sec. Litig.,* 79 F.R.D. 283, 305 (N.D. Cal. 1978).

26   [17] *Accord Schneider v. Traweek,* 1990 WL 132716, at *13 (C.D. Cal. July 31, 1990) (certifying class of
27   investors pursuant to eight sets of different offering materials despite substantial differences in the
     offering materials); *Heritage Bond,* 2004 WL 1638201, at *6 (finding predominance test satisfied for
28   investors in 11 different bond offerings).

1    Because § 11 claims focus on the contents of the Offering documents, they are particularly

2    suited for class treatment.  *See, e.g., Constar,* 585 F.3d at 784.  Courts in this Circuit find that the

3    predominance requirement is easily satisfied for § 11 claims.  When certifying a § 11 class composed

4    of eight partnerships based on eight offerings, the Honorable Richard Gabois in *Schneider v. Traweek*

5    found the predominance requirement met because "the investors in [the offerings] are asserting

6    common legal theories under the same federal statutory provisions as the rest of the proposed 'global'

7    class, making resolution of all of the Plaintiffs' claims appropriate on a 'global' class-wide basis."

8    1990 WL 132716, at *13.  Likewise, in certifying a Securities Act class, the Honorable William Alsup

9    held in *In re Charles Schwab Corp. Sec. Litig.*, that "[a] class limited to investors harmed by false

10   statements in prospectuses does not pose excessive individual issues."  264 F.R.D. at 531, 536 (N. D.

11   Cal. 2009).

12       Here, as discussed above, there are a number of questions common to the members of the

13   Settlement Class, and all of the Class Members have been injured by the same wrongful course of

14   conduct.  The common legal and factual questions are at the core of the litigation and are focused on

15   the actions of Defendants, not Plaintiffs. The central common question that predominates is whether the

16   Offering documents contain untrue statements or material omissions.

17       Rule 23(b)(3) also requires that class resolution be "superior to other available methods for

18   fairly and efficiently adjudicating the controversy."  "The United States Supreme Court, the Ninth

19   Circuit and its district courts have repeatedly endorsed the class action procedure as the superior

20   method of adjudicating claims under the federal securities laws."  *Susser,* 1994 WL 247206, at *6; *see*

21   *also Shields,* 1992 WL 295179, at *5 ("Myriads of courts have consistently endorsed the use of class

22   procedures in resolving claims under the federal and state securities laws.").  Thus, courts have

23   "generally found . . . that securities fraud actions are usually best maintained as class actions" and

24   satisfy the "superiority" requirement of Rule 23(b)(3).  *Schaefer,* 169 F.R.D. at 130.

25       In sum, class certification promotes judicial efficiency by permitting common claims and issues

26   to be tried only once with a binding effect on all parties.  *See, e.g., Juniper,* 264 F.R.D. at 592 ("Where

27   thousands of identical complaints would have to be filed, it is superior to concentrate claims through a

28   class action in a single forum.").  The superiority requirement is met here.

In light of the foregoing, all of the requirements for class certification are satisfied. Thus, Lead Plaintiffs respectfully request that the Court certify the Settlement Class for settlement purposes.

## V.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiffs propose the following schedule for the Settlement-related events in this case. The proposed dates in the right column are respectfully requested assuming that preliminary approval is granted during or promptly following the hearing on this matter scheduled for July 21, 2011.

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members[18] ("Notice Date") | 10 business days after entry of Preliminary Approval Order | August 4, 2011 |
| Deadline for publishing Summary Notice[19] | 10 business days after Notice Date | August 18, 2011 |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Final Approval Hearing | September 9, 2011 |
| Deadline for submitting exclusion requests or objections | 21 calendar days prior to Final Approval Hearing | September 23, 2011 |
| Deadline for filing reply papers | 7 calendar days prior to the Final Approval Hearing | October 7, 2011 |
| Final Approval Hearing | October 14, 2011, or at the Court's earliest availability | October 14, 2011 |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date | December 2, 2011 |

\\

\\

\\

\\

\\

\\

---

[18]   *See* Exhibits A-1 and A-2 to the Preliminary Approval Order (Exhibit A to the Stipulation).

[19]   *See* Exhibit A-3 to the Preliminary Approval Order (Exhibit A to the Stipulation).

1

**VI.     CONCLUSION**

2

Based on the foregoing, Lead Plaintiffs respectfully move this Court to enter the [Proposed]

3

Preliminary Approval Order submitted herewith.

4

Dated:  July 6, 2011                            Respectfully submitted,

5

                                                BERNSTEIN LITOWITZ BERGER
                                                    & GROSSMANN LLP

6

7

                                                _____*/s/ David R. Stickney*_____

8

                                                     DAVID R. STICKNEY
                                                DAVID R. STICKNEY

9

                                                TIMOTHY A. DeLANGE
                                                NIKI L. MENDOZA

10

                                                MATTHEW P. JUBENVILLE
                                                TAKEO A. KELLAR

11

                                                JONATHAN D. USLANER
                                                PAUL M. JONNA

12

                                                12481 High Bluff Drive, Suite 300
                                                San Diego, CA 92130

13

                                                Tel:     (858) 793-0070
                                                Fax:    (858) 793-0323

14

15

                                                *Counsel for Lead Plaintiffs Alameda County Employees'*
                                                *Retirement Association, Government of Guam Retirement*

16

                                                *Fund, New Orleans Employees' Retirement System,*
                                                *Louisiana Sheriffs' Pension and Relief Fund, and the*

17

                                                *Class, and for additional Plaintiffs Public Employees'*
                                                *Retirement System of Mississippi, and Vermont Pension*
                                                *Investment Committee*

18

19

                                                KLAUSNER & KAUFMAN, P.A.
                                                ROBERT D. KLAUSNER

20

                                                STUART A. KAUFMAN
                                                10059 Northwest 1st Court

21

                                                Plantation, FL 33324
                                                Tel:     (954) 916-1202

22

                                                Fax:    (954) 916-1232

23

                                                *Additional Counsel for Lead Plaintiff Louisiana Sheriffs'*
                                                *Pension and Relief Fund*

24

25

26

27

28

COHEN MILSTEIN SELLERS & TOLL PLLC
CAROL V. GILDEN
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel:     (312) 357-0370
Fax:    (312) 357-0369
             -and-
STEVEN J. TOLL
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
Tel:     (202) 408-4600
Fax:    (202) 408-4699

*Plaintiffs' Counsel to proposed Class Representative the*
*Policemen's Annuity and Benefit Fund of the City of*
*Chicago*


CHIMICLES & TIKELLIS LLP
KIMBERLY DONALDSON SMITH
361 West Lancaster Avenue
Haverford, PA  19041
Tel:     (610) 642-8500
Fax:    (610) 649-3633

*Plaintiffs' Counsel to proposed Class Representative*
*Southeastern Pennsylvania Transportation Authority*


LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
140 Broadway
New York, NY 10005
Tel:     (212) 907-0700
Fax:    (212) 818-0477

*Plaintiffs' Counsel to proposed Class Representative*
*Plumbers & Steamfitters Local 60 Pension Plan*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZWERLING, SCHACHTER & ZWERLING, LLP
ROBIN ZWERLING
JUSTIN M. TARSHIS
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
          -and-
DAN DRACHLER
1904 Third Avenue
Seattle, WA 98101
Tel:  (206) 223-2053

*Plaintiffs' Counsel to proposed Class Representative
General Retirement System of the City of Detroit*

# EXHIBIT 1

FILED

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

JUN 21 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FIRST STAR BANK, individually and on behalf of all others similarly situated, et al., | No.    10-17470 10-17647 11-15087 |
| Plaintiffs - Appellants, | D.C. No. 5:10-cv-03508-LHK D.C. No. 5:09-cv-01376-LHK Northern District of California, San Jose |
| v. | |
| THE WELLS FARGO MORTGAGE BACKED SECURITIES 2006-AR15 TRUST; et al., | ORDER |
| Defendants - Appellees. | |

The parties' joint motion to stay appellate proceedings is granted in part.

This case is stayed until September 6, 2011.  On or before the expiration of the

stay, appellees shall file the consolidated answering briefs or file an appropriate

motion addressing the status of the case and requesting continuance of the stay or

other relief.  If appellees file the consolidated answering briefs, the consolidated

optional reply briefs are due 14 days after service of the answering brief.  The

filing of the consolidated answering briefs or failure to file a motion shall terminate

the stay.

For the Court:
MOLLY C. DWYER
Clerk of the Court


Alihandra M. Totor
Deputy Clerk
Ninth Cir. R. 27-7/Advisory Note to Rule 27
    and Ninth Circuit Rule 27-10

amt/Pro Mo 20Jun 2011