BERNSTEIN LITOWITZ BERGER
  &amp; GROSSMANN LLP
DAVID R. STICKNEY  (Bar No. 188574)
TIMOTHY A. DeLANGE  (Bar No. 190768)
NIKI L. MENDOZA (Bar No. 214646)
MATTHEW P. JUBENVILLE  (Bar No. 228464)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323
davids@blbglaw.com
timothyd@blbglaw.com
nikim@blbglaw.com
matthewj@blbglaw.com

*Attorneys for Lead Plaintiffs Alameda County Employees'
Retirement Association, Government of Guam Retirement Fund,
New Orleans Employees' Retirement System and Louisiana
Sheriffs' Pension and Relief Fund*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-cv-01376-LHK<br><br>CONSOLIDATED CLASS ACTION<br>ECF<br><br>**LEAD PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR APPROVAL OF DISTRIBUTION PLAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     May 30, 2013<br>Time:    1:30 p.m.<br>Courtroom: 4, 5th Floor<br>Judge:   Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 30, 2013, at 1:30 p.m., before the Honorable Lucy H. Koh of the United States District Court for the Northern District of California, San Jose, California, Lead Plaintiffs the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriffs' Pension and Relief Fund ("Lead Plaintiffs") will and hereby do move the Court to enter the accompanying [Proposed] Order Approving Distribution Plan (the "Distribution Order"), which will, *inter alia*: (i) approve the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) direct payment of the Net Settlement Fund to Authorized Claimants pursuant to the recommended plan for distribution; and (iii) approve payment to the Court-approved claims administrator, The Garden City Group, Inc., of the outstanding notice and administration fees and expenses associated with the Settlement from the Escrow Account.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Jennifer M. Keough in Support of Motion for Approval of Distribution Plan, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

Lead Plaintiffs are aware of no opposition to this Motion. Lead Plaintiffs thus respectfully submit that a hearing may be unnecessary, and seek the Court's expeditious approval of the Motion so that the funds may be promptly distributed to the Class.

The proposed Distribution Order is attached hereto as Exhibit 1.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1. Whether the Court should approve the administrative determinations of the Claims Administrator for acceptance and rejection of submitted claims.

2. Whether the Court should adopt the recommended plan for distribution of the Net Settlement Fund.

3. Whether payment of the claims administration expenses associated with the notice and administration of the Settlement should be authorized.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriffs' Pension and Relief Fund (collectively, "Lead Plaintiffs"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submit this memorandum of law in support of its motion for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the above-captioned action (the "Action"). The proposed plan is set forth in the accompanying Declaration of Jennifer M. Keough in Support of Motion for Approval of Distribution Plan ("Keough Declaration" or "Keough Decl."), submitted on behalf of the Court-approved Claims Administrator, The Garden City Group, Inc. ("GCG").[1]

Pursuant to the Stipulation, Lead Plaintiffs provided reasonable advance notice of this Motion to Defendants. Defendants have confirmed that they do not oppose the Motion.

## I. BACKGROUND

On July 5, 2011, Lead Plaintiffs entered into the Stipulation of Settlement with Defendants. Following reasonable notice of the Settlement to the Class, the Court granted final approval on November 14, 2011. Pursuant to the terms of the Stipulation, on August 9, 2011, Wells Fargo paid, or caused to be paid, $125 million in cash into an Escrow Account, and the funds have been invested for the benefit of the Class.[2] As of January 8, 2013, the value of the Net Settlement Fund (including

---

[1] Unless otherwise indicated herein, all terms with initial capitalization shall have the meanings ascribed to them in the Stipulation of Settlement dated July 5, 2011 (ECF No. 440) (the "Stipulation") or in the Keough Declaration.

[2] The "Class" or "Settlement Class" is identified as all persons or entities who purchased or otherwise acquired mortgage pass-through certificates pursuant or traceable to Wells Fargo Asset Securities Corporation's July 29, 2005 Registration Statement, October 20, 2005 Registration Statement, or September 27, 2006 Registration Statement, and the accompanying prospectuses and prospectus supplements in the following 28 offerings and who were damaged thereby: The WFMBS 2006-1 offering, WFMBS 2006-2 offering, WFMBS 2006-3 offering, WFMBS 2006-4 offering, WFMBS 2006-6 offering, WFMBS 2006-AR1 offering, WFMBS 2006-AR2 offering, WFMBS 2006-AR4 offering, WFMBS 2006-AR5 offering, WFMBS 2006-AR6 offering, WFMBS 2006-AR8 offering, WFMBS 2006-AR10 offering, WFMBS 2006-AR11 offering, WFMBS 2006-AR12 offering, WFMBS 2006-AR14 offering, WFMBS 2006-AR17 offering, WFMBS 2007-11 offering, WFMBS 2006-7 offering, WFMBS 2006-10 offering, WFMBS 2006-AR16 offering, WFMBS 2006-18

interest, less disbursements of Court-approved attorneys' fees and expenses, but before payment of tax preparation fees and full payment of estimated taxes, if any, and escrow fees) is $99,493,726.14.

In accordance with the Court's July 26, 2011 Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Hearing (the "Preliminary Approval Order," ECF No. 447), GCG was authorized to act as the Claims Administrator in connection with the Settlement of this Action. As set forth in the Keough Declaration, as Claims Administrator, GCG has implemented the terms of the Settlement by, among other things: (i) mailing over 12,340 Notice Packets to potential Class Members; (ii) creating and maintaining a toll-free hotline, creating and maintaining a case-specific website and posting case-specific documents on said website, and updating each accordingly during the course of the administration; (iii) causing the Summary Notice to be published in *The Investor's Business Daily*; (iv) providing, upon request, additional copies of the Notice Packet to brokers and nominees; and (v) receiving requests for exclusion.

In addition, pursuant to the Court's Order Authorizing Publication of Reminders to Submit Claim Forms (ECF No. 471), Lead Counsel caused (i) the publication by GCG of the reminder announcement in *The Wall Street Journal*; (ii) mailing by GCG of 11,263 reminder notices to potential Class Members; and (iii) issuance of a reminder press release. The Notice and reminders informed potential Class Members of the December 7, 2011 deadline for submitting Proofs of Claim. As set forth in the Keough Declaration and discussed below, the Claims Administration received and processed 5,811 Proofs of Claim.

Paragraph 26 of the Stipulation requires Lead Counsel to apply to the Court, with reasonable advance notice to Defendants, for a Class Distribution Order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims

---

offering, WFMBS 2006-AR19 offering, WFMBS 2006-20 offering, WFALT 2007-PA1 offering, WFMBS 2007-AR4 offering, WFMBS 2007-10 offering, WFMBS 2007-13 offering, and WFMBS 2006-AR15 offering. Excluded from the Class are Defendants and their respective offices, affiliates and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendants has or had a controlling interest, except that Investment Vehicles shall not be excluded from the Class. Also excluded from the Class are any persons or entities who exclude themselves by filing a valid request for exclusion.

received; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

The Effective Date – the date by which the Final Judgment and Order of Dismissal with Prejudice has been entered and the time for appeal has expired – has now occurred. Accordingly, Lead Counsel now seeks, *inter alia*, approval of the distribution of the Net Settlement Fund to Authorized Claimants as determined by GCG.

## II. SUMMARY OF CLAIMS PROCESSING

As detailed in the accompanying Keough Declaration, GCG mailed over 12,340 Notice Packets to potential Class Members plus an additional 11,263 reminder notices, and received 5,811 Proofs of Claim. Keough Decl. ¶¶4-6. Of the Proofs of Claim initially submitted, approximately 89% were initially incomplete, improperly completed, not properly documented, or filed by a Claimant who was not a Class Member. Keough Decl. ¶23. To the extent that a Proof of Claim was wholly deficient (for example, if the Proof of Claim was missing documentation for the entire Proof of Claim or the Claimant did not provide enough information to calculate the Recognized Claim, or if the Proof of Claim was determined to have no Recognized Claim under the Court-approved Plan of Allocation), GCG mailed a rejection letter to the Claimant describing the defect(s) with the Proof of Claim and, if the defect was curable, stating what was necessary to complete the Proof of Claim. *Id.* ¶24. GCG also mailed rejection letters to each Claimant whose Proof of Claim was determined to be partially deficient (for example, if the Claimant was missing documentation for part of the Proof of Claim, or did not supply some transactional information), advising the Claimant of the defect(s) in the Proof of Claim, stating what was necessary to cure such defect(s), and informing the Claimant that, unless the defect(s) were cured, the Proof of Claim would only be eligible to the extent it was complete and calculated to a Recognized Claim. *Id*. ¶25. The rejection letters also specifically advised the Claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the Claim and request Court review of the disposition of the

1  Claim. *Id*. ¶¶24-25. Copies of the types of letters sent to notify Claimants of the deficiencies in or ineligibility of their Proofs of Claim are attached as an exhibit to the Keough Declaration. *See* Keough Decl. ¶26 and Exhibit A thereto.

GCG carefully reviewed Claimants' responses to rejection letters and worked with Claimants to resolve deficiencies where possible. Keough Decl. ¶29. After all responses to deficiency letters were received and processed, GCG called Claimants with still-deficient Proofs of Claim to assist them in curing the deficiencies. *Id.* ¶¶29-32. This process was largely successful and a large percentage of Claimants who submitted Proofs of Claim with curable deficiencies are now eligible to participate in the Settlement. *Id*. ¶32.

As set forth in the Keough Declaration, of the 5,811 Proofs of Claims that GCG received, GCG has determined that 3,001 are acceptable in whole or in part, and that 2,810 should be wholly rejected because they are ineligible, wholly deficient, or have no Recognized Claim when calculated in accordance with the Court-approved Plan of Allocation. *Id.* ¶38).

### III. <u>LATE BUT OTHERWISE ELIGIBLE CLAIMS</u>

The Stipulation expressly contemplates that, as is customary in securities class action settlements, the Court may extend the deadline for Class Members to submit Claim Forms to be potentially eligible to participate in the settlement recovery. *See* Stip. ¶24 ("All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, *unless such deadline is extended by Order of the Court.* Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (*unless, by Order of the Court, late-filed Claim Forms are accepted*), . . . .") (emphasis added); *see also* Preliminary Approval Order ¶19 ("Any Class Member who does not timely submit a valid Claim Form shall not be eligible to share in the Settlement Fund, *unless otherwise ordered by the Court* . . . .") (emphasis added).

The deadline for filing Claim Forms was December 7, 2011 (120 calendar days following the Notice Date). Of the 5,811 Claim Forms received, 279 were received after the December 7, 2011 deadline. GCG processed all late Proofs of Claim, and determined that 56 of them are otherwise

-5-

eligible (the "Late, but Otherwise Eligible, Claims"). The aggregate Recognized Claim for the Late, but Otherwise Eligible, Claims represents less than six percent (5.48%) of the total Recognized Claims of all claims recommended for payment. GCG has not rejected any Claims solely based on its late submission, and GCG believes no delay has resulted from the provisional acceptance of the Late, but Otherwise Eligible, Claims. Keough Decl. ¶33. Lead Counsel agrees that, when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the Net Settlement Fund solely because it was submitted after the original filing deadline, if it was submitted while other Claims were still being processed.

However, there must be a final cut-off date after which no more Proofs of Claim will be processed so that there may be a proportional distribution of the Net Settlement Fund. The processing of any Proof of Claim received after preparation of this application would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court order that no Proof of Claim received after November 27, 2012, be eligible for payment.

Lead Plaintiffs request that the Court approve GCG's administrative determinations accepting Claims (including the Late, but Otherwise Eligible, Claims) and rejecting Claims as set forth in the Keough Declaration.

### IV. DISTRIBUTION OF THE NET SETTLEMENT FND

Lead Plaintiffs respectfully request that the Court adopt the Distribution Plan for the Net Settlement Fund set forth in the Keough Declaration which would authorize an Initial Distribution of the Net Settlement Fund to the Claimants listed in Exhibits B-1 and B-2 to the Keough Declaration.

In the Initial Distribution, GCG will determine a Distribution Amount for each Authorized Claimant based on the sum of the Authorized Claimant's *pro rata* share of the Net Settlement Fund. *See* Keough Decl. ¶42a. As provided for in the Court-approved Plan of Allocation, Authorized Claimants whose Distribution Amount is less than $10 will receive no payment. *Id.* ¶42b; *see also* Notice ¶35 ("A payment to any Authorized Claimant that would amount to less than $10.00 in total will not be included in the calculation of the Net Settlement Fund, and no payment to those members of the Settlement Class will be made.") Authorized Claimants whose Distribution Amount is at least

-6-
LEAD PLAINTIFFS' UNOPPOSED MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
Case No. 09-cv-01376-LHK

1  $10 but less than $100 will receive their full Distribution Amount in the Initial Distribution ("Claims
2  Paid in Full"). *Id.* ¶42d.i. Authorized Claimants whose Distribution Amount is $100 or more will
3  receive 95% of their Distribution Amount in the Initial Distribution, with the remaining 5% retained in
4  escrow to create a Reserve to address any claims that ultimately are determined to be eligible to
5  participate in the Settlement, and for any other contingencies that may arise. To the extent the reserve
6  is not depleted, the remainder will be distributed in subsequent distributions. *See id.* ¶42d.ii.

7  **V.      DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE**

8  In order to encourage Authorized Claimants to cash their distribution checks promptly and to
9  avoid or reduce future expenses relating to uncashed checks, Lead Plaintiffs propose that the
10 distribution checks bear a notation "CASH PROMPTLY; VOID AND SUBJECT TO RE-
11 DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." In an effort to
12 have as many Authorized Claimants as possible cash their checks, GCG will follow up with
13 Authorized Claimants who initially fail to cash their distribution checks. *See* Keough Decl. ¶42e.

14 If any funds remain in the Net Settlement Fund after the Initial Distribution, GCG will conduct
15 a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any
16 balance remaining in the Net Settlement Fund after deducting GCG's costs and expenses incurred in
17 connection with administering the Settlement for which it has not yet been paid (including the
18 estimated costs of such Second Distribution), and after the payment of any escrow fees, estimated
19 taxes, and the costs of preparing appropriate tax returns, shall be re-distributed to Authorized
20 Claimants from the Initial Distribution who (1) were not Claims Paid in Full, (2) cashed their
21 distribution payment, and (3) are entitled to at least $10 from the redistribution based on their *pro rata*
22 share of the remaining fund. *See* Keough Decl. ¶42g. If cost effective, subsequent distributions of
23 funds remaining in the Net Settlement Fund will take place in six-month intervals. *Id.* ¶42h.i. At such
24 time as GCG and Lead Counsel determine that further re-distribution is not cost-effective, Lead
25 Counsel will seek direction from the Court with respect to the disposition of the balance of the Net
26 Settlement Fund, after payment of any unpaid expenses or fees incurred in connection with

-7-

LEAD PLAINTIFFS' UNOPPOSED MOTION FOR
APPROVAL OF DISTRIBUTION PLAN
Case No. 09-cv-01376-LHK

administering the Net Settlement Fund and after the payment of any estimated escrow fees or taxes and the costs of preparing appropriate tax returns.[3]

## VI. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Stipulation (¶14) and the Court's Preliminary Approval Order (¶25) provide that Lead Counsel may direct payment from the Escrow Account, without further approval from Defendants or further order of the Court, all reasonable Notice and Administration Costs in an amount not to exceed $600,000.00.

In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator, GCG was responsible for, among other things, mailing the notice and reminder to the Class, publishing the publication notice, processing the Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. As set forth in paragraph 41 of the Keough Declaration, at the inception of the case, Lead Counsel negotiated a cap of $300,000 for GCG's fees (exclusive of expenses) through the Initial Distribution.

As reflected in the Keough Declaration and invoices attached thereto as Exhibit C, the total amount of GCG's fees and out-of-pocket expenses incurred and expected to be incurred through the Initial Distribution is $678,669.84. After applying the fee cap, the total amount for all fees and expenses incurred and expected to be incurred through the Initial Distribution is $373,973.28. To date, GCG has received payment in the amount of $133,077.65. Accordingly, there is an outstanding balance of $240,895.63 for claims administration fees and expenses through the Initial Distribution payable to GCG.

## VII. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized

---

[3] *Id*. ¶42h.ii. The Stipulation provides that, once Lead Counsel determines that it is not cost effective or efficient to redistribute the amount to the Settlement Class, such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a non-profit charitable organization selected by Lead Plaintiffs and approved by the Court. Stip. ¶11. Once redistribution becomes no longer feasible, and in the event that residual funds remain, Lead Counsel will seek Court approval for a donation to a non-profit charitable organization.

-8-

1  Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation,
2  or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in
3  the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and
4  discharged from any and all claims arising out of such involvement.  Accordingly, Lead Plaintiffs
5  request that the Court release and discharge all persons involved in the review, verification,
6  calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein,
7  or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement
8  Fund, from any and all claims arising out of such involvement, and bar all Class Members, whether or
9  not they receive payment from the Net Settlement Fund, from making any further claims against the
10 Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or
11 any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or
12 taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized
13 Claimants.

## VIII.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that its Motion for Approval of Distribution Plan be approved and the proposed Order Approving Distribution Plan be entered.

DATED:    January 8, 2013

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP

   */s/ David R. Stickney*
    DAVID R. STICKNEY

DAVID R. STICKNEY (Bar No. 188574)
TIMOTHY A. DeLANGE (Bar. No. 190768)
NIKI L. MENDOZA (Bar No. 214646)
MATTHEW P. JUBENVILLE (Bar. No. 228464)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
davids@blbglaw.com
timothyd@blbglaw.com
nikim@blbglaw.com
matthewj@blbglaw.com

-9-

*Counsel for Lead Plaintiffs Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriffs' Pension and Relief Fund*

KLAUSNER & KAUFMAN, P.A.
ROBERT D. KLAUSNER
STUART A. KAUFMAN
10059 Northwest 1st Court
Plantation, FL 33324
Tel: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel for Lead Plaintiff Louisiana Sheriffs' Pension and Relief Fund*

# EXHIBIT 1

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9         NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| IN RE WELLS FARGO MORTGAGE-BACKED CERTIFICATES LITIGATION | Civil Action No. 09-cv-01376-LHK<br><br>CONSOLIDATED CLASS ACTION<br>ECF<br><br>**[PROPOSED] ORDER APPROVING DISTRIBUTION PLAN** |

-1-
[PROPOSED] ORDER APPROVING DISTRIBUTION PLAN
Case No. 09-cv-01376-LHK

Lead Plaintiffs the Alameda County Employees' Retirement Association, Government of Guam Retirement Fund, New Orleans Employees' Retirement System and Louisiana Sheriff's Pension and Relief Fund (collectively, "Lead Plaintiffs"), on notice to Defendants' Counsel, moved this Court for an order approving the distribution plan for the Net Settlement Fund in the above-captioned class action (the "Action"), and the Court having considered all the materials and arguments submitted in support of the motion, including the Declaration of Jennifer M. Keough in Support of Motion for Approval of Distribution Plan (the "Keough Declaration") and Lead Plaintiffs' Notice of Unopposed Motion and Motion for Approval of Distribution Plan; Memorandum of Points and Authorities in Support Thereof, submitted therewith;

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. This Order incorporates by reference the definitions in the Stipulation of Settlement dated July 5, 2011 (the "Stipulation," ECF No. 440), and all terms used herein shall have the same meanings as set forth in the Stipulation and the Keough Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3. The administrative recommendations to accept claims, including the otherwise valid claims filed after the original December 7, 2011 deadline ("Late Claims") but before November 27, 2012, and to reject wholly ineligible or otherwise deficient claim, as recommended by the Claims Administrator, The Garden City Group, Inc. ("GCG"), as stated in the Keough Declaration, are adopted;

4. Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly,

    a. GCG will calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund was to be distributed now by calculating their *pro rata* share of the fund in accordance with the Court-approved Plan of Allocation (the Claimant's "Distribution Amount").

    b. GCG will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the distribution list any Authorized Claimant whose Distribution

Amount calculates to less than $10.00. Such Claimants will not receive any distribution from the Net Settlement Fund.

c. After eliminating Claimants who would have received less than $10.00 from the distribution list, GCG will recalculate the distribution amounts for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph b. above.

d. GCG will then conduct an Initial Distribution of the Net Settlement Fund as follows:

   i. With respect to Authorized Claimants whose distribution amount calculates to less than $100 pursuant to subparagraph c. above, GCG will distribute to such Claimants their full distribution amount ("Claims Paid in Full"). These Claimants will get no additional funds in subsequent distributions.

   ii. With respect to Authorized Claimants whose distribution amount calculates to $100 or more pursuant to subparagraph c. above, GCG will distribute to such Claimants 95% of their distribution amounts. The remaining 5% of their payments will be held in reserve (the "Reserve") to address any claims that ultimately are determined to be eligible to participate in the Settlement, and for any other contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in subsequent distributions.

e. In order to encourage Authorized Claimants to promptly cash their Distribution checks, and to avoid or reduce future expenses relating to unpaid Distribution checks, all Distribution checks will bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]."

f. Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available in the re-distribution to

1 other Authorized Claimants. Similarly, Authorized Claimants who do not cash subsequent distributions within the time allotted will irrevocably forfeit any further recovery from the Settlement.

g. GCG will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any amount remaining in the Net Settlement Fund, after the Initial Distribution (including the Reserve and the funds for all void stale-dated or returned checks), after deducting GCG's reasonable fees expected to be incurred in connection with the Second Distribution and the expenses incurred in connection with administering the Settlement for which GCG has not yet been paid, and after the payment of any estimated escrow fees and taxes and the costs of preparing appropriate tax returns, will be distributed to all Authorized Claimants from the Initial Distribution who (1) were not Claims Paid in Full, (2) cashed their distribution payment, and (3) are entitled to at least $10 from the redistribution based on their *pro rata* share of the remaining fund.

h. In order to allow a final distribution of any remaining funds in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

  i. If cost effective, not less than six months after the Second Distribution is conducted, GCG will conduct a further distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after payment of any unpaid expenses or fees incurred or to be incurred in connection with administering the subsequent distributions from the Net Settlement Fund, and after the payment of any estimated escrow fees or taxes and the costs of preparing appropriate tax returns, shall be distributed to Authorized Claimants who cashed their Second Distribution checks and who would receive at least $10 in such further distribution, with additional redistributions thereafter to be conducted on the same terms in six-month

intervals until GCG and Lead Counsel determine that further redistribution is not cost-effective; and

    ii. At such time as GCG and Lead Counsel determine that further redistribution is not cost-effective, Lead Counsel shall seek direction from the Court with respect to the disposition of the balance of the Net Settlement Fund, after payment of any unpaid expenses or fees incurred in connection with administering the Net Settlement Fund and after the payment of any estimated escrow fees and taxes and the costs of preparing appropriate tax returns.

i. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants.

j. Unless otherwise ordered by the Court, no Proof of Claim received after November 27, 2012, may be accepted for payment, and no further adjustments to Proofs of Claim received may be made after November 27, 2012.

k. Unless otherwise ordered by the Court, one year after the Initial Distribution, GCG will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after the final distribution, GCG will destroy electronic copies of the same.

5. All of the fees and expenses incurred by GCG in connection with its administration of the Settlement and to be incurred in connection with the Initial Distribution are approved; accordingly, Lead Counsel shall direct payment of $240,895.63 out of the Settlement Fund to GCG for such remaining unpaid fees and expenses; and

This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

Dated:       San Jose, California
             _____, 2013

_____
HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE