```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                           SAN JOSE DIVISION

 4

 5
      IN RE WELLS FARGO                )   C-09-01376 LHK
 6    MORTGAGE-BACKED CERTIFICATES     )
      LITIGATION,                      )   SAN JOSE, CALIFORNIA
 7                                     )
                                       )   MAY 30, 2013
 8                                     )
      _____        )   PAGES 1-18
 9

10

11                     TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE LUCY H. KOH
12                  UNITED STATES DISTRICT JUDGE

13

14    A P P E A R A N C E S:

15    FOR THE PLAINTIFFS:      BERNSTEIN, LITOWITZ,
                               BERGER & GROSSMAN
16                             BY:  DAVID R. STICKNEY
                                    NIKI L. MENDOZA
17                             12481 HIGH BLUFF DRIVE, SUITE 300
                               SAN DIEGO, CALIFORNIA  92130
18

19    FOR DEFENDANT:           MUNGER, TOLLES & OLSON
                               BY:  DAVID H. FRY
20                             560 MISSION STREET, 27TH FLOOR
                               SAN FRANCISCO, CALIFORNIA  94108
21

22

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      SAN JOSE, CALIFORNIA                          MAY 30, 2013
 2                        P R O C E E D I N G S
 3         (COURT CONVENED AT 1:26 P.M.)
 4             THE CLERK:  CALLING FIRST CASE, NUMBER C-09-01376
 5   LHK, GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT VERSUS
 6   THE WELLS FARGO MORTGAGE-BACKED SECURITIES.
 7         COUNSEL, STATE YOUR APPEARANCES, PLEASE.
 8             MR. STICKNEY:  GOOD AFTERNOON, YOUR HONOR.
 9   DAVID STICKNEY WITH BERNSTEIN, LITOWITZ, BERGER & GROSSMAN ON
10   BEHALF OF THE LEAD PLAINTIFFS IN THE CASE.
11             MS. MENDOZA:  GOOD AFTERNOON, YOUR HONOR.
12   NIKI MENDOZA, ALSO WITH BERNSTEIN, LITOWITZ, BERGER & GROSSMAN,
13   ALSO ON BEHALF OF THE LEAD PLAINTIFFS IN THE CASE.
14             THE COURT:  OKAY.  GOOD AFTERNOON.
15             MR. FRY:  GOOD AFTERNOON, YOUR HONOR.  DAVID FRY,
16   MUNGER, TOLLES & OLSON FOR THE WELLS FARGO DEFENDANTS.
17             THE COURT:  OKAY, GOOD AFTERNOON.  PLEASE TAKE A
18   SEAT.
19        I JUST HAVE A VERY FEW QUESTIONS.  I AM GOING TO APPROVE
20   THE DISTRIBUTION PLAN, BUT I WANTED TO PROPOSE A COUPLE OF
21   SMALL NITS TO THE ORDER AND WANTED TO MAKE SURE THAT YOU ALL
22   WERE OKAY WITH THAT.
23        LET ME FIRST JUST ASK, YOUR NOVEMBER 27TH, 2012 CUT OFF
24   DATE, HAVE THERE BEEN ANY CLAIMS RECEIVED AFTER THAT DATE?
25             MS. MENDOZA:  YES, YOUR HONOR.  NIKI MENDOZA FROM
```

```
 1          BERNSTEIN LITOWITZ.
 2              THE CLAIMS ADMINISTRATOR HAS RECENTLY RECEIVED AN
 3      ADDITIONAL 31 CLAIMS.  THEY HAVE NOT BEEN FULLY PROCESSED AT
 4      THIS POINT AND WE UNDERSTAND THAT THERE WOULD BE A DELAY IN THE
 5      DISTRIBUTION IF WE WAITED TO HAVE THOSE FULLY PROCESSED.
 6              SO OUR RECOMMENDATION WOULD BE THAT WE HAVE THOSE CLAIMS
 7      FULLY PROCESSED AND THEN WE WOULD COME BACK AND MAKE A
 8      RECOMMENDATION TO THE COURT ON HOW TO TREAT THOSE.
 9              THE COURT:  OKAY.  BUT SINCE YOU WANT PROPORTIONAL
10      DISTRIBUTION, IS THAT GOING TO SLOW DOWN THE OVERALL
11      DISTRIBUTION TO EVERYONE?
12              MS. MENDOZA:  IT WOULD ALLOW FOR AN IMMEDIATE
13      DISTRIBUTION, AN IMMEDIATE INITIAL DISTRIBUTION OF 95 PERCENT
14      OF THE NET SETTLEMENT FUND, AND THEN RESERVE THE REMAINING 5
15      PERCENT OF THE FUND, AND THEN WE WOULD COME BACK AND ASK FOR
16      APPROVAL FOR THE SECOND DISTRIBUTION, AND THEN BASED ON HOW
17      THOSE CLAIMS COME OUT, WHETHER OR NOT THEY WOULD BE INCLUDED IN
18      A SECOND DISTRIBUTION.
19              THE COURT:  I SEE.  SO IF ANY OF THE 31 LATE CLAIMS
20      PROVE TO BE LEGITIMATE, THEN THEY WOULD JUST GET SOME
21      PROPORTIONATE AMOUNT FROM THE RESERVE?
22              MS. MENDOZA:  RIGHT.
23              THE COURT:  FROM THE SECOND DISTRIBUTION?
24              MS. MENDOZA:  CORRECT.
25              THE COURT:  OKAY.  ALL RIGHT.  WELL, I'M GLAD TO HEAR
```

1   THAT THAT WILL NOT SLOW DOWN THE FIRST DISTRIBUTION.

2       LET ME ASK WITH REGARD TO THAT 5 PERCENT RESERVE -- WELL,

3   FIRST OF ALL, HOW DID YOU ALL DETERMINE TO TAKE THAT RESERVE

4   OUT OF CLASS MEMBERS WHO ARE ENTITLED TO $100 OR MORE, BECAUSE

5   THAT WASN'T IN THE ORIGINAL ALLOCATION PLAN.

6           MS. MENDOZA:  RIGHT.  THAT'S A CUSTOMARY WAY OF HOW

7   WE DO A DISTRIBUTION PLAN WHEN THERE IS RESERVE HELD BACK.

8   THAT WAY CLASS MEMBERS THAT ARE GETTING CHECKS UNDER, YOU KNOW,

9   UNDER $100 AREN'T GETTING REPEATED CHECKS UNDER $100.  SO THOSE

10  THAT WOULD BE RECEIVING UNDER $100 WILL GET THEIR FULL

11  DISTRIBUTION RATHER THAN GETTING A CHECK FOR $50 NOW AND A

12  CHECK FOR $50 IN SIX MONTHS.

13      SO THAT'S THE STANDARD WAY THAT THE CLAIMS ADMINISTRATOR

14  OPERATES WHEN YOU HAVE A DISTRIBUTION PROCESS WITH A RESERVE.

15          THE COURT:  OKAY.  AND JUST EDUCATE ME ON WHAT WILL

16  HAPPEN -- WELL, ONE OF THE CHANGES, ON PAGE 2, I GUESS IT'S A

17  REVISED PAGE 2 OF YOUR ORDER APPROVING DISTRIBUTION PLAN, I

18  GUESS IT WOULD BE PARAGRAPH 4D II, IF WE CAN ADD "TO THE

19  EXTENT" -- AND THIS WOULD BE AT THE END OF THAT SECTION -- "TO

20  THE EXTENT THE RESERVE IS NOT DEPLETED, THE REMAINDER WILL BE

21  DISTRIBUTED PROPORTIONATELY TO THE CLASS MEMBERS WHOSE FUNDS

22  WERE HELD IN RESERVE AFTER THE THIRD DISTRIBUTION, OR IF THERE

23  IS NO THIRD DISTRIBUTION, AFTER THE SECOND DISTRIBUTION."

24      IS THAT OKAY?

25          MR. STICKNEY:  I'M SORRY, YOUR HONOR.  CAN YOU REPEAT

1 THAT?

2 THE COURT: I GUESS IT'S JUST CLARIFYING THAT THE
3 RESERVE FUNDS -- I GUESS IT'S JUST NOT CLEAR, DO THE RESERVE
4 FUNDS GO BACK TO THE CLASS MEMBERS WHO HAD THE 5 PERCENT
5 DEDUCTED FOR THE RESERVE? OR DO THE RESERVE FUNDS GO BACK
6 PROPORTIONALLY TO ALL CLASS MEMBERS IN ANY SUBSEQUENT
7 DISTRIBUTION? IS THAT A CLEAR --

8 MS. MENDOZA: RIGHT. I THINK I UNDERSTAND YOUR
9 POINT.

10 WE CAN CLARIFY IT SO THAT -- BECAUSE THAT IS HOW IT WORKS
11 IS THAT THE, THE CLASS MEMBERS WHO GOT 95 PERCENT OF THEIR
12 CLAIM AMOUNT INSTEAD OF 100 PERCENT, THEY WOULD GET -- THEY
13 WOULD BE BROUGHT UP TO THEIR FULL AMOUNT FIRST.

14 THE COURT: UM-HUM.

15 MS. MENDOZA: AND THEN THE REMAINDER AMOUNT WOULD BE
16 DISTRIBUTED PRO RATA AMONGST THE REMAINING AUTHORIZED
17 CLAIMANTS.

18 HERE IT'S GOING TO BE -- A LITTLE TWIST TO THAT IS WE NOW
19 HAVE THESE ADDITIONAL 31 CLAIMANTS AS WELL.

20 THE COURT: OKAY.

21 MS. MENDOZA: BUT WE WILL COME BACK TO THE COURT AND
22 MAKE A PROPOSAL ON HOW TO ADDRESS THOSE DEPENDING ON HOW LARGE
23 THOSE CLAIMS ARE.

24 THE COURT: OKAY. BUT WHAT -- WELL, WHAT SHOULD WE
25 DO FOR PURPOSES OF, YOU KNOW, DOING THE APPROVAL OF THE

| | |
|---|---|
| 1 | DISTRIBUTION PLAN NOW?  I THINK A LITTLE BIT OF CLARIFICATION |
| 2 | WOULD BE HELPFUL AS TO WHETHER THAT 5 PERCENT RESERVE GOES TO |
| 3 | THE GROUP THAT HAD THE 5 PERCENT WITHHELD VERSUS JUST BEING |
| 4 | REDISTRIBUTED PROPORTIONALLY TO THE ENTIRE CLASS. |
| 5 |       MS. MENDOZA:  RIGHT. |
| 6 |       THE COURT:  SO -- |
| 7 |       MS. MENDOZA:  AND WE CAN SUBMIT A REVISED PROPOSED |
| 8 | ORDER, BECAUSE IN THIS INSTANCE IT MAY BE THAT WE PROPOSE THAT |
| 9 | 5 PERCENT GO TO THESE EXTRA LATE CLAIMS THAT WE JUST RECEIVED. |
| 10 |       THE COURT:  OKAY. |
| 11 |       MS. MENDOZA:  SO IT'LL DEPEND ON HOW THOSE CLAIMS |
| 12 | COME OUT AND THE VALUE OF THOSE CLAIMS. |
| 13 |   SO WE CAN -- WE CAN REVISE THIS SO THAT IT'LL BE CLEAR THAT |
| 14 | WE WILL BE COMING BACK TO THE COURT ONCE THE INITIAL |
| 15 | DISTRIBUTION HAS BECOME COMPLETE AND THE CHECKS HAVE BECOME |
| 16 | STALE AND WE KNOW HOW MUCH REMAINS IN RESERVE, AND ALSO HOW |
| 17 | MUCH THE CLAIMS ARE FOR OTHERWISE VALID CLAIMS THAT WERE |
| 18 | RECENTLY RECEIVED. |
| 19 |       THE COURT:  OH, OKAY.  SO THEN DO YOU WANT ME TO HOLD |
| 20 | OFF AND NOT APPROVE THE PROPOSED ONE AND WAIT FOR A REVISED ONE |
| 21 | AND THEN APPROVE THAT ONE? |
| 22 |       MS. MENDOZA:  IF THE COURT IS -- I THINK WE'RE FINE |
| 23 | WITH THIS ONE, KNOWING THAT WE'RE REPRESENTING TO YOU THAT |
| 24 | WE'RE GOING TO COME BACK TO YOU ABOUT THOSE 31 CLAIMS. |
| 25 |       THE COURT:  YES. |

1        MS. MENDOZA:  IF THE COURT WOULD PREFER THAT WE MAKE

2    A REVISION AND SUBMIT A REVISED ONE, WE CAN DO THAT AS WELL.

3        THE COURT:  WELL, WHAT ABOUT THE CHANGE THAT I HAD

4    PROPOSED?  SO THE LAST SENTENCE OF -- WHAT IS THAT -- PARAGRAPH

5    4D II JUST SAYS "TO THE EXTENT THE RESERVE IS NOT DEPLETED, THE

6    REMAINDER WILL BE DISTRIBUTED IN SUBSEQUENT DISTRIBUTIONS" I

7    CAN EITHER LEAVE IT LIKE THAT OR I CAN SAY THAT "IT WILL BE

8    DISTRIBUTED PROPORTIONALLY TO THE CLASS MEMBERS WHOSE FUNDS

9    WERE HELD IN RESERVE AFTER THE THIRD DISTRIBUTION, OR IF

10   THERE'S NO THIRD DISTRIBUTION, AFTER THE SECOND DISTRIBUTION."

11       MS. MENDOZA:  I ACTUALLY THINK, BECAUSE WE'RE GOING

12   TO COME BACK TO THE COURT WITH RESPECT TO THE EXTRA LATE

13   CLAIMS --

14       THE COURT:  YEAH.

15       MS. MENDOZA:  -- IF YOU'RE GOING TO REVISE IT, I

16   WOULD REVISE IT TO BE "WILL BE DISTRIBUTED IN SUBSEQUENT

17   DISTRIBUTIONS AS ORDERED BY THE COURT," BECAUSE WE'LL COME BACK

18   TO THE COURT WITH RESPECT TO THOSE 31 CLAIMS IN ANY EVENT.

19       THE COURT:  OKAY.  ALL RIGHT.  THAT'S FINE.  I JUST

20   WANT TO MAKE SURE THAT THE FOLKS WHO HAD TO GIVE UP THAT 5

21   PERCENT FOR THE RESERVE, OTHER THAN MAYBE THESE NEW CLAIMANTS,

22   GET PRIORITY IN GETTING ANY SUBSEQUENT DISTRIBUTIONS.

23       MS. MENDOZA:  YES.  AND THAT IS HOW THE CLAIMS

24   ADMINISTRATOR DOES THE PROCESS.

25       THE COURT:  OKAY.

```
1           MS. MENDOZA:  SO I CAN REPRESENT THAT TO YOUR HONOR
2    NOW.
3           THE COURT:  OKAY.
4           MS. MENDOZA:  AND WE WILL MAKE THAT CLEAR WHEN WE
5    COME BACK TO THE COURT.
6           THE COURT:  ALL RIGHT, GREAT.  NOW, REMEMBER, THE
7    SETTLEMENT WAS 125 MILLION.  HOW MUCH DO YOU THINK IS ACTUALLY
8    GOING TO BE DISTRIBUTED?
9           MS. MENDOZA:  IN THE INITIAL DISTRIBUTION, WE
10   CALCULATE APPROXIMATELY 94 MILLION.
11          THE COURT:  OKAY.
12          MS. MENDOZA:  THAT'S AFTER, YOU KNOW, THE FEES AND
13   EXPENSES WILL BE DEDUCTED AND ACCOUNTING FOR THE CLAIMS
14   ADMINISTRATION EXPENSES, SOME VERY SMALL ESCROW EXPENSES, AND
15   THEN TAKING 5 PERCENT IN RESERVE.  THERE WILL BE APPROXIMATELY
16   94 MILLION IN THE INITIAL DISTRIBUTION.
17          THE COURT:  OKAY.  AND THE RESERVE YOU ESTIMATE TO
18   BE?
19          MS. MENDOZA:  THAT WOULD BE APPROXIMATELY 5 MILLION.
20          THE COURT:  OKAY.  ALL RIGHT.  WELL, THEN, THAT
21   CLARIFIES MY QUESTION ON THE RESERVE, SO THAT'S GOOD.
22       ALL RIGHT.  NOW, THESE ARE NITPICKY, SO THE NEXT ONE IS IN
23   THE ORDER, IT'S NUMBER 4 -- NO, LET ME SEE.
24       IT'S 4F, AND MAYBE THIS IS NOT NECESSARY, BUT 4F TALKS
25   ABOUT AUTHORIZED CLAIMANTS WHO DON'T CASH THEIR INITIAL
```

```
 1         DISTRIBUTION CHECKS BASICALLY FORFEIT RECOVERY FROM THE
 2         SETTLEMENT AND THEN THOSE FUNDS WILL BECOME AVAILABLE FOR
 3         REDISTRIBUTION TO OTHER CLAIMANTS, AND THEN AUTHORIZED
 4         CLAIMANTS WHO DO NOT CASH SUBSEQUENT DISTRIBUTIONS WITHIN THE
 5         TIME ALLOTTED WILL ALSO FORFEIT ANY FURTHER RECOVERY.
 6             I'M JUST WONDERING WHETHER WE SHOULD -- IN MS. KEOUGH,
 7         SHE'S FROM THE CLAIMS ADMINISTRATOR, IN HER DECLARATION, SHE
 8         PROVIDES A PRETTY LONG LIST OF WHAT THE CLAIMS ADMINISTRATOR IS
 9         GOING TO DO TO TRY TO MAKE SURE THAT THE CHECKS ACTUALLY GET
10         RECEIVED BY THE AUTHORIZED CLAIMANTS.
11             MS. MENDOZA:  RIGHT.
12             THE COURT:  DOES IT MAKE SENSE FOR US TO PUT THAT IN
13         THE ORDER, YOU KNOW, THAT THEY'RE GOING TO GO THROUGH THESE
14         STEPS TO TRY TO FIND A GOOD ADDRESS FOR AN AUTHORIZED CLAIMANT
15         TO MAKE SURE THEY GET THE CHECK, ET CETERA?
16          IT'S FROM HER DECLARATION.  IT'S FOOTNOTE 8 WHERE SHE KIND
17         OF GOES THROUGH WHAT THEY'RE GOING TO DO --
18             MS. MENDOZA:  RIGHT.
19             THE COURT:  -- TO MAXIMIZE THE NUMBER OF AUTHORIZED
20         CLAIMANTS WHO CASH THEIR CHECKS.
21             MS. MENDOZA:  RIGHT.  WE HAVE NO PROBLEM, AND I'M
22         CERTAIN THAT THE CLAIMS ADMINISTRATOR HAS NO PROBLEM, IF THAT
23         IS INCLUDED IN THE ORDER.
24             THE COURT:  ALL RIGHT.  I'LL PROBABLY DO THAT.
25           OKAY.  LET'S GO TO THE LAST QUESTION, AND THAT HAS TO DO
```

| | |
|---|---|
| 1 | WITH THE CLAIMS ADMINISTRATOR'S FEES AND EXPENSES. |
| 2 | JUST ADDING UP THE EXPENSES THAT ARE INVOICED IN EXHIBIT C |
| 3 | TO MS. KEOUGH'S DECLARATION, THE EXPENSES TOTAL 53,168.84. |
| 4 | HOWEVER, THE REQUEST FOR THE TOTAL FEES AND EXPENSES TO |
| 5 | AWARD THE CLAIMS ADMINISTRATOR IS 373,973.28.  I UNDERSTAND |
| 6 | THAT YOU NEGOTIATED A $300,000 CAP FOR THE FEES, SO I ASSUME |
| 7 | THE 73,973.28 IS EXPENSES, BUT THAT'S LIKE $20,000 MORE THAN |
| 8 | THE ACTUAL INVOICED EXPENSES. |
| 9 | SO CAN YOU EXPLAIN THAT DELTA?  IS THERE ANOTHER -- |
| 10 | MS. MENDOZA:  RIGHT.  IF I FOLLOW CORRECTLY -- |
| 11 | THE COURT:  YEAH. |
| 12 | MS. MENDOZA:  -- OKAY, THE TOTAL FEES AND EXPENSES |
| 13 | THAT ARE -- THAT HAVE BEEN INCURRED AFTER APPLYING THE CAP IS |
| 14 | APPROXIMATELY 373,000.  THEY'VE BEEN PAID 133,000.  THAT LEAVES |
| 15 | OWING 240,000. |
| 16 | THE DIFFERENCE MAY BE, BECAUSE I WAS LOOKING THROUGH THIS |
| 17 | LAST NIGHT, THAT ON THE $300,000 CAP FOR THE FEES, THERE WAS AN |
| 18 | ADDITIONAL EXPENSE HAVING TO DO WITH THE REMINDER NOTICE THAT |
| 19 | WENT OUT, AND THAT WAS NOT INCLUDED IN THE $300,000 CAP BECAUSE |
| 20 | IT WAS CONSIDERED AS OUT OF SCOPE, AND SO THERE WERE ADDITIONAL |
| 21 | FEES THAT DID NOT FALL UNDER THAT $300,000 CAP. |
| 22 | THE COURT:  AND THOSE ADDITIONAL FEES TOTAL $20,000? |
| 23 | MS. MENDOZA:  THEY WERE APPROXIMATELY 20,000 BASED ON |
| 24 | LOOKING AT IT LAST NIGHT. |
| 25 | THE COURT:  I SEE.  OKAY.  AND WHY DO THEY FALL |

1    OUTSIDE THE CAP?
2         MS. MENDOZA:  BECAUSE IT'S NOT SOMETHING THAT IS
3    TYPICALLY DONE IN OUR NOTICE PROCESS.  WE SEND OUT -- WE HAVE
4    KIND OF A LIST OF WHAT CLAIMS ADMINISTRATORS ARE EXPECTED TO DO
5    AND THAT'S HOW THEY DETERMINE, YOU KNOW, HOW MUCH THEY'RE GOING
6    TO CHARGE US, AND THAT WAS SOMETHING THAT WAS NOT ANTICIPATED
7    THAT THEY WOULD BE INCLUDING, AND ESPECIALLY IN THIS CASE WHERE
8    WE HAD A CAP, AND YOU MAY -- YOUR HONOR MAY HAVE NOTICED THAT
9    THIS CAP ACTUALLY WAS VERY HELPFUL TO THE CLASS HERE
10   CONSIDERING THEY ACTUALLY INCURRED OVER $600,000 IN FEES AND
11   EXPENSES.  SO THAT'S WHY THAT ADDITIONAL 20,000, APPROXIMATELY,
12   WAS OUT OF SCOPE.
13        THE COURT:  OKAY.
14        MS. MENDOZA:  THERE'S A -- THERE'S A FOOTNOTE IN, I
15   THINK IT'S ON THE INVOICE, THAT INDICATES THAT THEY WERE OUT OF
16   SCOPE.  LET ME SEE IF I CAN FIND IT.
17        (PAUSE IN PROCEEDINGS.)
18        MS. MENDOZA:  IT'S ON THE INVOICE, THE INVOICE THAT'S
19   DATED THROUGH 9-30-2012, AND IT'S FOOTNOTE 1 THAT'S ATTACHED --
20   THAT'S CONNECTED TO SOME OF THE CHARGES HERE.  THOSE ADD UP
21   TO --
22        THE COURT:  I DIDN'T HAVE ANY FOOTNOTES ON THESE
23   INVOICES.
24        MS. MENDOZA:  THIS ONE -- IF YOU'D LIKE --
25        THE COURT:  IS THIS EXHIBIT C TO THE KEOUGH

1     DECLARATION?

2              MS. MENDOZA:  YES, EXHIBIT C.

3              THE COURT:  IS IT ACTUALLY IN THE CHARTS?  MAYBE I'M

4     LOOKING AT THE WRONG THING.  OH, COST RELATED TO PRINTING AND

5     MAILING?

6              MS. MENDOZA:  RIGHT, OF THE REMINDER POST CARDS, SO

7     THAT IS SOME OF IT AT LEAST.

8         AND THE FOOTNOTE -- THE INDICATOR OF THE FOOTNOTE IS ON

9     PAGE 1 OF THAT INVOICE.

10             THE COURT:  OKAY.  SO IT'S REALLY MORE EXPENSE AND

11    NOT FEES ANYWAY; RIGHT?  WALL STREET JOURNAL INSERT AND

12    PRINTING AND MAILING OF REMINDER NOTICE PACKET, I GUESS THAT

13    COULD BE FEES.

14             MS. MENDOZA:  RIGHT.  THE WAY THE CLAIMS

15    ADMINISTRATOR, BECAUSE THEY ACTUALLY IN SOME CASES HAVE -- THEY

16    TAKE -- THEY MAKE SOME PROFIT ON THAT.  RATHER THAN IT BEING A

17    HARD EXPENSE, THEY INCLUDE IT IN FEES TYPICALLY.

18        BUT THIS IS JUST TO MAKE CLEAR TO THE COURT THAT THAT WAS

19    NOT INCLUDED IN THE $300,000 CAP.

20             THE COURT:  OKAY.  THAT'S FINE.  THANK YOU FOR

21    CLARIFYING THAT.

22        SO WHAT ARE THE STANDARD HOURLY RATES REFERENCED IN

23    EXHIBIT C?

24             MS. MENDOZA:  IT DEPENDS ON THE LEVEL -- LET ME PULL

25    IT UP REAL QUICK -- THE LEVEL OF PERSON THAT IS TALKING TO THE

1    CLAIMANT.  I HAVE SEEN -- SOME OF THEIR HOURLY RATES ARE LIKE
2    $125 AN HOUR.  I THINK THEY GO UP TO LIKE MAYBE 225 FOR A
3    SENIOR VICE-PRESIDENT.  WE HAVE RECEIVED COPIES OF THEIR HOURLY
4    RATES AND SCRUTINIZED THEM CLOSELY IN OTHER INSTANCES.
5              THE COURT:  OKAY.  SO WHAT DO YOU THINK THE -- WHAT'S
6    GOING TO BE THE RANGE OF AWARDS THAT AUTHORIZED CLAIMANTS ARE
7    GOING TO RECEIVE?
8              MS. MENDOZA:  THERE'S GOING TO BE QUITE A RANGE
9    BECAUSE THE RECOGNIZED CLAIM AMOUNTS REALLY VARY.
10             THE COURT:  RIGHT.
11             MS. MENDOZA:  I CAN TELL YOU THAT THE AVERAGE
12   DISTRIBUTION CHECK WILL BE OVER $31,000.
13             THE COURT:  OKAY.  WELL, I WILL GO AHEAD AND MAKE THE
14   CHANGE THAT WE TALKED ABOUT TO 4D II AND TO 4F AND GO AHEAD AND
15   FILE THE ORDER.
16        OH, ONE MORE QUESTION.  ALL RIGHT.  SO I'M JUST GOING TO GO
17   WITH YOUR LANGUAGE ON THE -- SO YOUR LANGUAGE ON THE FEES AND
18   EXPENSES, THE 240,895 INCLUDES THAT OUT OF SCOPE?
19             MS. MENDOZA:  YES.
20             THE COURT:  ALL RIGHT.  I'M JUST GOING TO ADOPT YOUR
21   LANGUAGE ON THAT FOR PARAGRAPH 5 OF THE ORDER.
22        I'LL GO AHEAD AND SIGN THIS -- MAKE THESE CHANGES AND FILE
23   THIS ORDER TODAY.
24        NOW, TELL ME THEN WHAT THE NEXT STEPS WOULD BE.
25             MS. MENDOZA:  SURE.

1       THE COURT: OKAY. GO AHEAD.
2       MS. MENDOZA: WELL, THE CLAIMS ADMINISTRATOR THEN
3  WILL -- I'M SORRY. THE -- WE WILL AUTHORIZE THAT 95 PERCENT OF
4  THE NET SETTLEMENT FUND BE TRANSFERRED TO A DISTRIBUTION
5  ACCOUNT.
6     THEN THE CLAIMS ADMINISTRATOR WILL HAVE THE CHECKS PREPARED
7  AND THEN THEY WILL BE SENT OUT.
8     THEY'LL ALSO HAVE ME REVIEW, LIKE, A CHECK STUB THAT
9  SAYS -- YOU KNOW, THAT EXPLAINS TO THE CLASS MEMBER WHAT IT IS
10  THEY'RE GETTING, AND THEN THAT'LL GO OUT, AND GENERALLY THAT
11  PROCESS TAKES ANYWHERE FROM TWO TO FOUR WEEKS.
12       THE COURT: OKAY. AND THEN WHEN DO YOU THINK YOU
13  WILL COME BACK FOR APPROVAL OF A DISTRIBUTION TO WHATEVER
14  PERCENTAGE OF THE LATE --
15       MS. MENDOZA: RIGHT. IT WOULD BE IN APPROXIMATELY
16  SIX MONTHS TO GIVE --
17       THE COURT: OKAY.
18       MS. MENDOZA: -- THE CLAIMANTS WHO RECEIVE CHECKS
19  TIME TO CASH THEIR CHECKS OR IF REPLACEMENT CHECKS NEED TO BE
20  ISSUED.
21     ALSO DURING THAT TIME WE WILL MAKE SURE THAT THE NEW 31
22  CLAIMS ARE FULLY PROCESSED SO THAT WE CAN COME BACK TO THE
23  COURT AND MAKE A RECOMMENDATION AT THAT TIME.
24       THE COURT: OKAY. AND THEN WILL THAT BE THE LAST
25  STEP?

1     MS. MENDOZA:  WE SHOULD BE IN A SPOT AT THAT POINT TO
2  MAKE A FINAL RECOMMENDATION TO THE COURT AS TO WHAT TO DO WITH
3  ALL OF THE FUNDS.
4     THE REASON I HESITATE IS BECAUSE USUALLY WHAT HAPPENS IS WE
5  WILL ASK FOR AUTHORITY TO KEEP REDISTRIBUTING UNTIL IT'S NO
6  LONGER ECONOMICALLY FEASIBLE.
7     THE COURT:  UM-HUM.
8     MS. MENDOZA:  AND THEN AT THAT POINT OFTEN TIMES WE
9  ASK FOR APPROVAL TO MAKE A CY PRES DONATION.
10    THE COURT:  UM-HUM.
11    MS. MENDOZA:  SO IT WILL DEPEND ON HOW MUCH IS LEFT
12  IN THE SETTLEMENT FUND AT THAT TIME.
13    BUT WE SHOULD BE IN A POSITION TO ASK FOR THE -- TO ASK THE
14  COURT FOR FULL AUTHORITY TO FULLY DISTRIBUTE THE SETTLEMENT
15  FUND, AND IF WE DO ASK FOR APPROVAL FOR A LATER CY PRES
16  DONATION, WE WOULD MAKE A RECOMMENDATION OF WHO THAT WOULD --
17  WHICH ENTITY THAT WOULD BE.
18    THE COURT:  I SEE.  SO THIS COULD POTENTIALLY GO ON
19  FOR ANOTHER YEAR?
20    MS. MENDOZA:  IT COULD.  WE WILL TRY TO EXPEDITE IT
21  AND GET IT OFF THE COURT'S DOCKET AS SOON AS POSSIBLE.
22    THE COURT:  I THINK FOR MY PURPOSES THIS FILE IS
23  CLOSED, SO IT'S OKAY.
24    MS. MENDOZA:  RIGHT.
25    THE COURT:  STATISTICALLY, IT'S FINE FOR ME.

1      MS. MENDOZA: IT DOESN'T NECESSARILY SHOW UP. I
2  UNDERSTAND.
3      THE COURT: OKAY. AND WHAT I WILL TRY TO DO, WHEN
4  YOU FILE FOR APPROVAL OF THE NEXT DISTRIBUTION, WE'LL TRY TO
5  HAVE THAT SCHEDULED MORE QUICKLY SO THAT WE DON'T HOLD UP THE
6  DISTRIBUTION OF THE FUNDS --
7      MS. MENDOZA: OKAY.
8      THE COURT: -- SINCE THIS SETTLEMENT OCCURRED, YOU
9  KNOW, QUITE SOME TIME AGO AND I DON'T WANT TO DELAY PAYMENT TO
10 THE CLASS ANY MORE.
11     MS. MENDOZA: RIGHT. SO AT THAT POINT WHEN WE ARE
12 FILING OUR MOTION, SHOULD WE CHECK WITH YOUR COURTROOM DEPUTY
13 ON AN APPROPRIATE HEARING DATE THAT MAY BE SOONER THAN IS
14 AVAILABLE?
15     THE COURT: YES. SO I'LL JUST ASK MS. PARKER BROWN
16 THAT WHEN THE NEXT ROUND COMES, THAT WE'LL TRY TO EXPEDITE YOUR
17 HEARING DATE.
18     MS. MENDOZA: OKAY.
19     THE COURT: SO WE WON'T BE THE CAUSE OF FURTHER DELAY
20 OF THE DISTRIBUTIONS.
21     MS. MENDOZA: GREAT.
22     THE COURT: OKAY. SO THEN WE'LL EXPECT TO HEAR FROM
23 YOU MAYBE TOWARDS THE END OF THE YEAR --
24     MS. MENDOZA: RIGHT.
25     THE COURT: -- ON THE SECOND DISTRIBUTION, AND THEN

```
1     WE'LL HEAR FROM YOU AGAIN IF THERE ARE ANY FURTHER
2     DISTRIBUTIONS, AND THEN WE'LL HEAR FROM YOU THE LAST TIME ON
3     ANY CY PRES DONATION AND WHAT THAT ORGANIZATION IS GOING TO BE,
4     ET CETERA, ET CETERA.
5              MS. MENDOZA:  RIGHT.
6              THE COURT:  ALL RIGHT.  WELL, GREAT.  THANK YOU.
7     THANK YOU VERY MUCH.
8              MS. MENDOZA:  THANK YOU.
9              THE COURT:  IS THERE A REASON -- JUST EXPLAIN FOR ME
10    WHY -- I GENERALLY HAVEN'T HAD THESE ALLOCATION APPROVALS IN
11    OTHER, YOU KNOW, SECURITIES CLASS ACTIONS.
12         CAN YOU TELL ME WHY, JUST EDUCATE ME, WHY THIS PARTICULAR
13    CASE?
14             MS. MENDOZA:  WHY THIS DISTRIBUTION REQUEST WAS MADE?
15             THE COURT:  YES.
16             MS. MENDOZA:  OUR PRACTICE IS TO WORK INTO OUR
17    SETTLEMENT AGREEMENTS THAT WE WILL NOTIFY THE DEFENDANTS WHEN
18    WE ARE SEEKING TO ACTUALLY DISTRIBUTE THE FUNDS AND GO TO THE
19    COURT TO ASK FOR APPROVAL TO DISTRIBUTE THE FUNDS.
20         I HAVE SEEN IT IN SOME INSTANCES WHERE THAT'S NOT PART OF
21    THE SETTLEMENT AGREEMENT.  INSTEAD IT'S REPLACED WITH A
22    PROVISION THAT GOES AHEAD AND GIVES LEAD COUNSEL AUTHORITY TO
23    MAKE THAT DISTRIBUTION WITHOUT COMING BACK TO THE COURT.
24             THE COURT:  UM-HUM.
25             MS. MENDOZA:  GENERALLY OUR PRACTICE HAS BEEN TO COME
```

```
 1        BACK TO THE COURT TO SEEK THAT APPROVAL AND GET APPROVAL OF THE
 2        CLAIMS ADMINISTRATOR'S, YOU KNOW, RECOMMENDATION TO ACCEPT OR
 3        DENY CLAIMS, AND ALSO IN THE EVENT THAT THERE IS ANY DISPUTE AS
 4        TO WHETHER A CLAIM SHOULD BE ACCEPTED OR NOT, TO GET THE
 5        COURT'S APPROVAL FOR THAT.
 6                THE COURT:  SO DO YOU THINK THAT'S A BETTER PRACTICE
 7        WHEN THERE'S SO MUCH MONEY AT STAKE AND MAY NOT BE NECESSARY
 8        WHEN THE DISTRIBUTION IS MUCH SMALLER?
 9                MS. MENDOZA:  I BELIEVE IT'S OUR PREFERRED PRACTICE
10        TO HAVE THE COMFORT THAT WE ARE KEEPING THE COURT INFORMED
11        ABOUT WHAT IS OCCURRING WITH SUCH A LARGE SETTLEMENT FUND, YES.
12                THE COURT:  OKAY.  WELL, THANK YOU ALL.  THANK YOU
13        ALL VERY MUCH.
14                MS. MENDOZA:  THANK YOU, YOUR HONOR.
15                MR. FRY:  THANK YOU, YOUR HONOR.
16             (THE PROCEEDINGS WERE CONCLUDED AT 2:01 P.M.)
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED: FEBRUARY 21, 2014